# EXHIBIT A

[Dunkin' Brands, Inc. Letterhead]

Term Sheet
February __ 2010

  Dunkin' Brands, Inc. ("<u>Dunkin'</u>") is pleased to submit this term sheet ("<u>Term Sheet</u>") expressing its intent to acquire a substantial portion of the assets and business operations of Kainos Partners Holding Company LLC and its affiliated debtors in the chapter 11 cases styled *In re Kainos Partners Holding Company LLC, et al.*, Case No. 09-12292 (the "<u>Bankruptcy Case</u>") currently pending in the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") in a sale pursuant to section 363 of the Bankruptcy Code and subject to the terms set forth herein (the "<u>Transaction</u>"). Although this offer is subject to certain contingencies, Dunkin' is prepared to proceed immediately to documentation of the Transaction in a purchase and sale agreement (the "<u>Agreement</u>") in accordance with this Term Sheet.

| | |
|---|---|
| Buyer: | Dunkin' Brands, Inc. or its designee ("<u>Dunkin'</u>" or "<u>Buyer</u>") |
| Seller: | Kainos Partners Holding Company LLC and its affiliated debtors in the Bankruptcy Case ("<u>Seller</u>") |
| Purchased Assets: | Purchased Assets will include all assets of the Seller other than Excluded Assets (as defined below) and other than Released Locations (as defined below), including: |

  i. the Assumed Leases (as defined below);

  ii. the Assumed Executory Contracts (as defined below);

  iii. the Purchased Real Property (as defined below);

  iv. the Purchased Equipment (as defined below);

  v. inventory and other assets located at the Assumed Lease Properties and the Purchased Properties (as defined below) (the "<u>Other Assets</u>"); and

  vi. the Territories (as defined below), including all Assumed Leases, Assumed Executory Contracts, Purchased Real Property, Purchased Equipment, and Other Assets with respect to each such Territory.

| | |
|---|---|
| Assumed Leases: | Seller will assume and assign to Buyer any and all real estate leases designated by Buyer (the "<u>Assumed Leases</u>," and the location of such real estate, the "<u>Assumed Lease Properties</u>"). Seller will bear cure costs related to the assumption and assignment of the Assumed Leases. Buyer's obligations are expressly conditioned upon and subject to the valid and enforceable assignment of the Assumed Leases to Buyer. |

- 1 -

|   |   |
|---|---|
|   | The Assumed Leases will not include leases for the following locations: |
|   | i. 1 Walden Galleria Drive, 783-Space K-14, Cheektowaga, New York (Store # 343123); |
|   | ii. 560 East Windmill Lane, Las Vegas, Nevada (Store # 345930); |
|   | iii. 9265 South Cimarron Road, Las Vegas, Nevada (Store # 346789); |
|   | iv. 2903 N. Pleasantburg Drive, Greenville, South Carolina (Store # 345196); |
|   | v. 159 S. Pine Street, Spartanburg, South Carolina (Store # 345919); |
|   | vi. 7252 Moorefield Memorial Hwy., Liberty, South Carolina (Store #345198); and |
|   | vii. 4350 South Durango Dr., Las Vegas, NV (Store #346050). |
| Assumed Executory Contracts: | Seller will assume and assign to Buyer all executory contracts, franchise agreements, store development agreements, and license rights designated by Buyer (the "Assumed Executory Contracts"). Assumed Executory Contracts shall include, but not be limited to, all franchise agreements for franchises at the Assumed Lease Properties and the Purchased Properties, but shall not include franchise agreements for stores at the Released Locations. Assumed Executory Contracts shall also include all store development agreements; provided, however, a Qualified Franchisee (as defined below) may purchase a store development agreement for or within a Territory if, and only if, the Qualified Franchisee is the successful bidder for such Territory. Buyer will bear cure costs related to the assumption and assignment of the Assumed Executory Contracts designated by Buyer. |
| Purchased Real Property: | Buyer will purchase the real property, including all buildings, fixtures, and improvements thereon, at the following locations (the "Purchased Real Property," and the location of such real estate, the "Purchased Properties"): |
|   | i. 1129 W. Wade Hampton Boulevard, Greer, South Carolina; and |
|   | ii. 3929 Vineyard Drive, Dunkirk, New York. |
| Purchased Equipment: | Buyer will purchase all of Seller's equipment located at the Assumed Lease Properties and the Purchased Properties (the |

|                              | "Purchased Equipment"). Purchased Equipment will not include equipment currently located in storage or at any property other than the Assumed Lease Properties and the Purchased Properties. |
|---|---|
| Excluded Assets: | The Purchased Assets shall not include (i) cash and receivables; (ii) claims, causes of action and recoveries (A) based on avoidance actions under chapter 5 of the Bankruptcy Code, and/or (B) against former officers and directors of the Debtors or otherwise relating to D&O policy recoveries (including specifically any recoveries from Christopher Cortese) ("A" and "B" collectively, the "Estate Actions"); (iii) any real estate leases other than the Assumed Leases designated by Buyer; (iv) any executory contracts other than the Assumed Executory Contracts designated by Buyer; (v) any real property other than the Purchased Real Property; (vi) any equipment other than the Purchased Equipment; and (vii) any interest or the proceeds available from the sale of the leases, assets or equipment of the Debtors located at (x) Store No. 343434 Flix Transit; and (y) Store No. 343875 Transit Genesee.. |
| Purchase Price: | $3,500,000 (the "Purchase Price") to be paid in cash upon Closing (as defined below); provided, however, the Purchase Price shall be reduced by the aggregate amount of the Release Prices (as defined below) for the Released Locations. |
| Carve-Out: | If Dunkin' is the successful bidder for one or more stores and the Official Committee of Unsecured Creditors (the "Committee") supports the Transaction, Dunkin' will at Closing assign to the estate for the benefit of (i) non-lender general unsecured creditors and (ii) unpaid fees and expenses of Committee professionals in excess of $125,000, its right to repayment of $250,000 of the CML Subsidy Loans and CML Subsidy Loan Obligations (as such terms are defined in that certain Amended and Restated DIP Financing, Ratification and Intercreditor Agreement) (the "Carve-Out"); If Dunkin' is the successful bidder for one or more stores, Dunkin' will also: (i) waive its right to repayment of the remaining $238,693 of the CML Subsidy Loans and CML Subsidy Loan Obligations; (ii) waive its right to repayment of obligations under that certain Amended and Restated DIP Financing, Ratification and Intercreditor Agreement, including but not limited to, the Dunkin' Debt (as defined therein); (iii) release the Debtors from any obligations with respect to pre-petition mortgages granted to Dunkin'; and (iv) waive its right to assert any claim against the Purchase Price, the Carve-Out and/or the Excluded Assets. |
| Further Post-Petition Loan: | Dunkin' will loan to the Seller up to $500,000 (the "Further Post-Petition Loan") to fund expenses incurred by the Seller through the |

Closing Date (as defined below). Dunkin's obligation to fund all but the first $100,000 of the Further Post Petition Loan shall be conditioned on the execution and delivery of an Agreement that is satisfactory in all respects to Dunkin'. Proceeds of the Further Post-Petition Loan will be dispensed on a weekly basis pursuant to a budget acceptable to Dunkin'. Dunkin's right to repayment of the Further Post-Petition Loan will be a superpriority administrative expense claim only (and not a lien), but shall be subordinate to the Superpriority Claims (as defined in the DIP Financing Order). Dunkin' will at Closing waive its right to repayment of the entirety of this Further Post-Petition Loan if Dunkin' is the successful bidder for one or more stores. Documentation regarding the Further Post-Petition Loan, including Bankruptcy Court approval, must be in form and substance satisfactory to Buyer.

| | |
|---|---|
| Mutual Release: | In consideration of the Carve-Out, Further Post-Petition Loan and other consideration to be provided by Dunkin' pursuant to this Term Sheet, the Debtors, CIT Group/Equipment Financing, Inc. ("CIT"), Kainos Investment Partners I, LLC ("KIP I"), Kainos Investment Partners II, LLC ("KIP II"), and PCEP II KPHC Holdings, Inc. ("Palisade"), on the one hand, and Dunkin' on the other, will provide a mutual release of each other, and all of their respective officers, directors, affiliates, stockholders, employees, agents, and representatives, from all claims, causes of action, rights, and remedies with respect to all matters relating to the Debtors other than and excepting claims, causes of action, rights, and remedies that arise under the UNL Agreement and the Alliance Agreement, as Dunkin' and CIT understand such agreements to be, and the Agreement (the "Mutual Release"). |
| Other Terms Relating to Unsecured Creditors: | In further consideration of the Carve-Out and the support of the Committee for the Transaction, the Committee on behalf of the Debtors' estates and the unsecured creditors, shall release CIT, Palisade, KIP I, KIP II, and Dunkin' and their respective officers, directors, affiliates, stockholders, employees, agents and representatives from all claims, causes of action, rights and remedies with respect to all matters relating to the Debtors. The Committee, on behalf of the Debtors' estates and unsecured creditors, shall further release any interest in or right to recovery from the proceeds of the Excluded Assets other than the Estate Actions until such time as the allowed claims of CIT and Palisade have been paid in full. In the event that the allowed claims of CIT and Palisade are paid in full, unsecured creditors shall be entitled to |

the proceeds of the Excluded Assets in accordance with the Bankruptcy Code.

CIT, Palisade and KIP II agree to waive the assertion of their respective unsecured deficiency claims against the Carve-Out. CIT further agrees to limit its assertion of its unsecured deficiency claims against Estate Actions to the same amount as the total remaining unsecured creditor body (i.e. so that the CIT unsecured deficiency claim will receive no more than 50% of any net amount available to creditors from Estate Actions) until such time as the CIT unsecured deficiency claim has been paid in full. In the event that the CIT unsecured deficiency claim is paid in full, unsecured creditors shall be entitled to the proceeds of the Estate Actions in accordance with the Bankruptcy Code.

| | |
|---|---|
| Contingencies: | Buyer's obligations are subject to: (i) entry of a sale procedures order as described below in form acceptable to Buyer; (ii) entry of a sale order in form acceptable to Buyer; and (iii) no material adverse change shall have occurred in the business or assets, including without limitation that the Seller's stores shall have continued to operate in the ordinary course and shall not have ceased operations or gone dark, other than stores that are Excluded Assets hereunder. |

This proposal is not subject to any financing contingencies.

| | |
|---|---|
| § 363 Sale Process: | Seller shall use commercially reasonable efforts to consummate the Transaction by seeking, through an appropriate motion or motions, entry of an appropriate order or orders of the Bankruptcy Court (both the motions and orders shall be in form and substance satisfactory to Buyer in all respects) approving (the "Bankruptcy Court Approval") the Transaction and the sale and assignment of the Purchased Assets free and clear of all liens, claims, and encumbrances, including without limitation mortgages, mechanics liens, and liens of taxing authorities, and other interests in such property pursuant to § 363(b), (f), (l), and (m) and § 365 of the Bankruptcy Code; provided, however, Buyer shall bear the costs of the mechanic liens on Purchased Real Property and Assumed Leases in the amounts set forth on Exhibit A hereto plus interest and fees payable as part of such mechanic liens. |

Seller shall use commercially reasonable efforts to obtain (i) prompt entry of an order (as such may be amended or extended from time to time with the consent of the Buyer and Seller, the "Procedures Order") approving bidding procedures and approving the form of the notice of the bidding procedures and sale (the "Sale Notice") no later than March 1, 2010 and (ii) entry on or before March 31, 2010 of an order, following notice to creditors and

parties in interest in accordance with the Bankruptcy Code and applicable rules of bankruptcy procedure, granting the Bankruptcy Court Approval (the "Sale Order"). Such motion(s) shall include this Term Sheet as an exhibit.

The Procedures Order will provide, among other things:

i. the hearing to consider entry of the Sale Order (the "Sale Hearing") shall be held not later than March 31, 2010;

ii. competing bids shall include consideration of not less than the Purchase Price plus $10,000, and any successive overbids shall be made in increments not less than $10,000 consideration in excess of the last submitted, highest qualified bid for the Purchased Assets;

iii. for a maximum competitive bidding period of 20 calendar days for higher and better offers;

iv. a proposal for a competing bid (a "Competing Agreement") must be in writing and such proposal must utilize the Agreement as a form;

v. a Competing Agreement shall be for the purchase of substantially all of the Purchased Assets and the assumption of substantially all of the Assumed Leases and shall contain substantially all of the material terms and conditions contained in the Agreement (provided, however, that any variations from one or more material terms must, in the aggregate, constitute an improvement upon such term or terms as set forth in the Agreement) and must be marked to show changes from the Agreement, provided, however, a Competing Agreement may only in the case of a Qualified Franchisee be for less than all or substantially all of the Purchased Assets and instead may be for the purchase of a Territory (including all stores in the Territory) and/or one or more individual stores, in each such case at a purchase price equal to or greater than the respective Release Price; provided further, however, that Dunkin' may designate certain stores within each Territory for which Qualified Franchisees may acquire only if the

|     |     |
| --- | --- |
|     | Competing Agreement is for the purchase of the entire Territory within which the store is located; |
| vi. | in order for any competing bid to be considered, (x) the person submitting such bid must be deemed "financially qualified" by the Seller, (y) such bid may not be contingent upon financing or the completion of any due diligence, and (z) must be scheduled to close on the Closing Date; |
| vii. | for any person submitting a competing bid to provide an earnest money cash deposit in accordance with the bidding procedures of not less than ten (10) percent of the amount of the bid; |
| viii. | subject to the foregoing provisions, that the bidding procedures shall govern the terms and conditions of competing bids and of the sale and the auction; and |
| ix. | in the event of any competing bid, Buyer shall be entitled to submit successive overbids. |

During the competitive bidding period, and subject to the terms of the Procedures Order, Seller shall have the responsibility and obligation to solicit Competing Agreements and respond to any inquiries or offers to acquire the Purchased Assets and Assumed Leases and to perform any and all other acts reasonably related thereto which are required under the Bankruptcy Code or other applicable law, including without limitation supplying information relating to the business of the Seller, the Purchased Assets, and the Assumed Leases to any prospective purchasers; <u>provided, however,</u> the Seller shall first have obtained from the persons or entities to whom disclosure is proposed to be made a confidentiality agreement satisfactory to Dunkin' and for which Dunkin' is a third party beneficiary.

**Release Prices:** Dunkin' shall provide release prices (the "<u>Release Prices</u>") for each Territory and individual store for all stores located in each of the Buffalo, New York, Las Vegas, Nevada, and South Carolina markets (each, a "<u>Territory</u>") for which any Dunkin' franchisee that is in good standing and currently approved by Dunkin' for expansion ("<u>Qualified Franchisees</u>") may purchase such stores and/or Territories pursuant to a Competing Agreement if the Competing Agreement is a successful bid (the "<u>Released Locations</u>"), in which event Dunkin' or its affiliates will enter into a new franchise agreement with such Qualified Franchisee covering such stores or Territory and any existing franchise agreement with the Debtors for such store or territory will be deemed rejected as of the closing. Nothing herein shall constitute a consent by Dunkin' or

|  |  |
|---|---|
|  | its affiliates or a waiver of rights under any existing franchise agreement as to any existing or proposed new franchisee other than and excepting only as provided above with respect to Qualified Franchisees. The aggregate amount of the Release Prices, whether by store or by Territory, will not exceed $5,000,000. The list of Release Prices shall be filed with the Bankruptcy Court under seal and be provided to the Debtors, CIT, and Palisade pursuant to a confidentiality agreement satisfactory to Dunkin'. |
| Assumed Liabilities: | The Buyer will not assume, or be responsible for, any liabilities related to the Seller, the former shareholders of the Seller, or affiliated persons or entities, including without limitation taxes, ordinary course liabilities (including trade accounts payable, accrued operating expenses, leases, agreement and contracts), funded indebtedness (including accrued interest thereon and fees, expenses, indemnities and other amounts in respect thereof), litigation or other contingent claims relating to circumstances extant prior to Closing, deferred compensation obligations, post-retirement employee life insurance or healthcare benefit obligations, environmental liabilities and tax liabilities; <u>provided, however</u>, that the Buyer will assume obligations under the Assumed Leases and the Assumed Executory Contracts which first arise from and after the Closing Date. |
|  | The Buyer will establish its own lines of credit with the relevant utility companies as of the Closing and will assume future property tax obligations associated with the Purchased Assets accruing after the Closing Date. The Buyer will not assume or be responsible for any liabilities pertaining to the Seller's real estate, including, but not limited to, any unpaid utility and property tax obligations that arose or accrued prior to the Closing Date. |
| Consent: | By executing this Term Sheet, each of CIT, Dunkin', Palisade, KPI, KIP II and the Committee consents to the Transaction contemplated herein, including without limitation the Further Post-Petition Loan, Mutual Release, and the terms of the Procedures Order described above. |
| Covenants: | The Agreement will contain covenants, including that the Seller will continue to operate in the ordinary course of business and maintain its work force. |

| | |
|---|---|
| Definitive Documentation: | The offer is subject to definition documentation, including the Agreement, the Sale Procedures Order, and the Sale Order, all being in form and substance satisfactory to Buyer. Dunkin', the Debtors, CIT, KIP I, KIP II, and the Committee, as applicable, agree to negotiate the terms of the Agreement, the Sale Procedures Order, and the Sale Order in good faith. |
| Conditions to Closing: | The Buyer's obligation to close the Transaction is conditioned upon each of the Procedures Order and Sale Order (i) not having been reversed, vacated, modified or amended (other than as modified or amended with the consent of Buyer), and (ii) not having been stayed and remaining in full force and effect. |
| Closing Date: | The closing of the Transaction (the "Closing") will occur not later than April 1, 2010 (the "Closing Date") unless extended by Buyer in its sole discretion. |
| Nature of Term Sheet: | It is understood that this Term Sheet represents the present understanding of the Buyer and Seller with respect to the proposed Transaction as described herein and is not binding upon and creates no rights, either expressed or implied, in favor of any party. |
| Expiration Date: | This proposal expires if not accepted by 9:00 p.m. on Tuesday, February 23, 2010. |

This Term Sheet shall be governed by and construed in accordance with the laws of the State of New York. This Term Sheet may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same agreement. Transmission by facsimile, email, or other form of electronic transmission of an executed counterpart of this Term Sheet shall be deemed to constitute due and sufficient delivery of such counterpart.

**AGREED AND ACCEPTED:**

DUNKIN' BRANDS, INC.

By: _____
    Name:
    Title:
    Date:

KAINOS INVESTMENT PARTNERS I, LLC
By: PCEP I KPHC HOLDINGS, INC., ITS MANAGING MEMBER

By: *James T. Jahnke*
    Name: James T. Jahnke
    Title: President
    Date:

KAINOS PARTNERS HOLDING COMPANY LLC,
on behalf of itself and its affiliated debtors,

By: *[signature]*
    Name: Jim Balis
    Title: CEO
    Date: 2-24-10

KAINOS INVESTMENT PARTNERS II, LLC
By: PCEP II KPHC HOLDINGS, INC., its Managing Member

By: *James T. Jahnke*
    Name: James T. Jahnke
    Title: President
    Date:

CIT GROUP/EQUIPMENT FINANCING, INC.

By: _____
    Name:
    Title:
    Date:

PCEP II KPHC HOLDINGS, INC.

By: *James T. Jahnke*
    Name: James T. Jahnke
    Title: President
    Date:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____
    Name:
    Title:
    Date:

This Term Sheet shall be governed by and construed in accordance with the laws of the State of New York. This Term Sheet may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same agreement. Transmission by facsimile, email, or other form of electronic transmission of an executed counterpart of this Term Sheet shall be deemed to constitute due and sufficient delivery of such counterpart.

**AGREED AND ACCEPTED:**

DUNKIN' BRANDS, INC.

By: /s/ Kate Lavelle
Name: Kate Lavelle
Title: Chief Financial Officer
Date: February 24, 2010

KAINOS INVESTMENT PARTNERS I, LLC

By: _____
Name:
Title:
Date:

KAINOS PARTNERS HOLDING COMPANY LLC,
on behalf of itself and its affiliated debtors,

By: _____
Name:
Title:
Date:

KAINOS INVESTMENT PARTNERS II, LLC

By: _____
Name:
Title:
Date:

CIT GROUP/EQUIPMENT FINANCING, INC.

By: _____
Name:
Title:
Date:

PCEP II KPHC HOLDINGS, INC.

By: _____
Name:
Title:
Date:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____
Name:
Title:
Date:

This Term Sheet shall be governed by and construed in accordance with the laws of the State of New York. This Term Sheet may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same agreement. Transmission by facsimile, email, or other form of electronic transmission of an executed counterpart of this Term Sheet shall be deemed to constitute due and sufficient delivery of such counterpart.

**AGREED AND ACCEPTED:**

DUNKIN' BRANDS, INC.

By: _____
    Name:
    Title:
    Date:

KAINOS INVESTMENT PARTNERS I, LLC

By: _____
    Name:
    Title:
    Date:

KAINOS PARTNERS HOLDING COMPANY LLC,
on behalf of itself and its affiliated debtors,

By: _____
    Name:
    Title:
    Date:

KAINOS INVESTMENT PARTNERS II, LLC

By: _____
    Name:
    Title:
    Date:

CIT GROUP/EQUIPMENT FINANCING, INC.

By: _____
    Name:
    Title:
    Date:

PCEP II KPHC HOLDINGS, INC.

By: _____
    Name:
    Title:
    Date:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____[signature]_____
    Name: STEVE ZDACUH
    Title: CHAIR PERSON
    Date: FEB 24, '10

This Term Sheet shall be governed by and construed in accordance with the laws of the State of New York. This Term Sheet may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same agreement. Transmission by facsimile, email, or other form of electronic transmission of an executed counterpart of this Term Sheet shall be deemed to constitute due and sufficient delivery of such counterpart.

**AGREED AND ACCEPTED:**

DUNKIN' BRANDS, INC.

By: _____
   Name:
   Title:
   Date:

KAINOS INVESTMENT PARTNERS I, LLC

By: _____
   Name:
   Title:
   Date:

KAINOS PARTNERS HOLDING COMPANY LLC,
on behalf of itself and its affiliated debtors,

By: _____
   Name:
   Title:
   Date:

KAINOS INVESTMENT PARTNERS II, LLC

By: _____
   Name:
   Title:
   Date:

THE CIT GROUP/EQUIPMENT FINANCING, INC.

By: *[signature]*
   Name: Brian R. St. James
   Title: Sr. Vice President
   Date: February 24, 2010

PCEP II KPHC HOLDINGS, INC.

By: _____
   Name:
   Title:
   Date:

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____
   Name:
   Title:
   Date:

# EXHIBIT A

| PC# | Address | City | ST | Claimant/Creditor | Date Entered | Case or Court # | Lien Amount |
|---|---|---|---|---|---|---|---|
| 346571 | 11710 W. Charleston Blvd. | Las Vegas | NV | Tile Masters Inc./KWM Construction | 1/2/09 | 20090102-0000306 | $6,500.00 |
| 347434 | 7430 Las Vegas Blvd S. | Las Vegas | NV | Garrett Master Probuild | | | $1,090.92 |
| 346516 | 1068 Tiger Boulevard | Clemson | SC | Hilton Displays, Inc. | 4/20/09 | | $3,763.50 |
| 345679 | 1827 E. Greenville St. | Anderson | SC | Progressive Builders, Inc. | 5/12/09 | 2009-CP-04-01951 | $214,749.00 |
| 346538 | 697 Fairview Rd. | Simpsonville | SC | Progressive Builders, Inc. | 5/12/09 | 2009-CP-23-4083 | $78,002.00 |
| 345717 | 5073 Camp Road | Hamburg | NY | Kulback's Construction, Inc./Lutz Brothers, Inc. | 2/12/09 | | $64,902.00 |
| 345717 | 5073 Camp Road | Hamburg | NY | Lutz Brothers, Inc. | 5/27/09 | Notice of Mechanic Lien | see above |
| 346342 | 2930 North Main St. | Jamestown | NY | Kulback's Construction, Inc./Lutz Brothers, Inc. | 2/18/09 | | $15,961.00 |
| | | | | | | Total: | $384,968.42 |