# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>KAINOS PARTNERS HOLDING COMPANY LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-12292 (BLS)<br>(Jointly Administered)<br><br>Requested Hearing Date: March 31, 2010 at a time TBA<br>Requested Objection Deadline: March 26, 2010 at 12:00 p.m. |

## DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105, 364 AND 507: (1) APPROVING POSTPETITION FINANCING; (2) PROVIDING SUPERPRIORITY EXPENSE STATUS; AND (3) SCHEDULING A FINAL HEARING

Kainos Partners Holding Company, LLC ("<u>Parent</u>"), and its affiliated debtors and debtors in possession (each a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>") in the above-captioned cases (the "<u>Cases</u>"), by and through their undersigned counsel, hereby move the Court for entry of an

---

[1] The Kainos entities, along with the last four digits of their respective federal tax identification numbers, are as follows: Kainos Partners Holding Company LLC (2522), Kainos Partners Buffalo RE Holdings LLC (4572), Kainos Partners Greenville SC-RE Holdings LLC (1049), Kainos Partners Las Vegas RE Holdings LLC (4953), Kainos Vineyard Drive RE LLC (4572), Kainos Highway 29 RE LLC (4368), Kainos 1996 East Main RE LLC (4323), Kainos Wade Hampton RE LLC (0258), Kainos Clinton CML RE LLC (3046), Kainos Wilson Road RE LLC (4582), Kainos Partners Columbia SC LLC (0839), Kainos Partners Houston LLC (2322), Kainos Partners Las Vegas LLC (2311), Kainos Partners Las Vegas LLC Operating Series #1 (2311), Kainos Partners Las Vegas LLC Operating Series #2 (2311), Kainos Partners Las Vegas LLC Operating Series #3 (2311), Kainos Partners Las Vegas LLC Operating Series #4 (2311), Kainos Partners Las Vegas LLC Operating Series #5 (2311), Kainos Partners Las Vegas LLC Operating Series #6 (2311), Kainos Partners Las Vegas LLC Operating Series #8 (2311), Kainos Partners Las Vegas LLC Operating Series #10 (2311), Kainos Partners Las Vegas LLC Operating Series #11 (2311), Kainos Partners Las Vegas LLC Operating Series #13 (2311), Kainos Partners Las Vegas LLC Operating Series #14 (2311), Kainos Partners Las Vegas LLC Operating Series #15 (2311), Kainos Partners Las Vegas LLC Operating Series #18 (2311), Kainos Partners Las Vegas LLC Operating Series #20 (2311), Kainos Partners Las Vegas LLC Operating Series #21 (2311), Kainos Partners Las Vegas LLC Operating Series #24 (2311), Kainos Partners Las Vegas LLC Operating Series #25 (2311), Kainos Partners Las Vegas LLC Operating Series #28 (2311), Kainos Partners Las Vegas LLC Operating Series #34 (2311), Kainos Partners LLC (4132), Kainos Partners South Carolina LLC (2847), Kainos Walden-Transit LLC (8183), Kainos Camp-Southwestern LLC (1665), Kainos Main Street Jimtown LLC (2390), Kainos Fairmount LLC (3145), Kainos Crosspoints LLC (5065), Kainos Main-Bailey LLC (2673), Kainos Boulevard Mall LLC (5711), Kainos Union Rd LLC (5397), Kainos Flix-Transit LLC (6538), Kainos Walden LLC (6538), Kainos NF Maple Road LLC (8345), Kainos Union Road Cheektowaga LLC (9508), Kainos Broadway Retail LLC (5605), Kainos Main-Chippewa LLC (3003), Kainos Transit-Genesee LLC (5497), Kainos Broadway CML LLC (5544), Kainos Eggert Road LLC (0880), Kainos Delaware-Hertel LLC (6137), Kainos Vineyard Drive LLC (5721), Kainos Boston State Road LLC (0995), Kainos Walmart LLC (4344), Kainos Tiger Boulevard LLC (8580), Kainos East Main Street LLC (7907), Kainos East Greer Street LLC (4666), Kainos Fairview Road LLC (4557), Kainos Main & Coffee LLC (4231), Kainos Highway 29 LLC (4679), Kainos 1996 East Main LLC (4618), Kainos East Greenville Street LLC (017l), Kainos Boiling Springs LLC (1260), Kainos West Butler LLC (0160), Kainos Main Street Simpsonville LLC (4281), Kainos North Main Street LLC (0885), Kainos 1131 West Wade Hampton Blvd LLC (6055), Kainos 2903 N. Pleasantburg Dr. LLC I6132), Kainos 520 N. US Highway 25 LLC (6429), Kainos 7252 Moorefield Memorial Hwy. LLC (6376), Kainos Woodruff Road LLC (1085), Kainos 411 The Parkway LLC (6203), Kainos 1551 Laurens Rd. LLC (6330), Kainos 6055 White Horse Rd. LLC (6479), Kainos Calhoun Memorial LLC (6264), Kainos South Pine LLC (0164), Kainos Wade Hampton LLC (0993), Kainos WM Central LLC (1210), Kainos Farrow Road LLC (5453), Kainos Main Street Columbia LLC (5500), Kainos 378 & Sunset LLC (1138), Kainos South Lake Drive LLC (4435), Kainos Clemson Road LLC (0253), Kainos Wilson Road ITC (4465), Kainos Ann & Simmons LLC (4868), Kainos Boulder & Racetrack LLC (5070), Kainos Craig & Jones LLC (5145), Kainos Silverado & Bermuda LLC (4948), Kainos Clinton CML (5727), Kainos Lake Mead & Simmons LLC (2311). The mailing address for Kainos is 26 Parkway Commons Drive, Greer, SC 29650.

interim order (the "Order") authorizing (A) the Debtors to enter into a second debtor-in-possession financing loan ("Second DIP Loan") with Dunkin' Brands, Inc. ("Dunkin'"); (B) providing superpriority administrative expense status in connection with the Second DIP Loan; and (C) scheduling a final hearing with respect to the relief requested herein pursuant to Federal Rule of Bankruptcy Procedure 4001 seeking entry of a final order (the "Final Order"). In support of this motion ("Motion"), the Debtors respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction to hear this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105, 364, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 4001-1, and 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

3. On July 6, 2009 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and the Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On July 17, 2009, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

    **A.    The Debtors' Businesses**

4. Kainos Partners LLC, the predecessor to Kainos, was formed in May 2006 to

create a long term alliance with Dunkin Brands, Inc. The Debtors are one of the largest 'large area' developers of Dunkin' Donuts restaurants. As of the Petition Date, the Debtors owned and operated fifty-six (56) Dunkin' Donuts franchise stores in the states of New York, South Carolina and Nevada. In addition, eight new stores were under construction. The Debtors currently own and operate forty-three (43) stores. The Debtors also operate a central manufacturing location (the "CML") that produces made-fresh-daily donuts and bakes goods to all of the Dunkin' Donuts retail stores in the Buffalo market.

### B. Capitalization

5. As of the Petition Date, a number of investors had provided a total of approximately $31 million of equity investment capital to the Debtors. Of this amount, PCEP II KPHC Holdings, Inc. ("PCEP") provided approximately $14 million.

6. The Debtors' funded debt capitalization as of the Petition Date was approximately $30 million, of which $24.9 million was owed to The CIT Group/Equipment Financing, Inc. ("CIT"), $4.2 million to Dunkin', and $530,000 to PCEP. In addition, on June 4, 2009, CIT and PCEP jointly made an additional $660,000 loan to the Debtors.

### C. The Initial DIP Facility

7. On July 6, 2009, the Debtors filed the Debtors' Motion for an Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 365 and 507 (1) Approving Postpetition Financing; (2) Granting Liens and Providing Superpriority Expense Status; (3) Authorizing the Use of Cash Collateral; (4) Granting Adequate Protection; (5) Modifying the Automatic Stay; and (6) Scheduling a Final Hearing (the "Initial DIP Motion"; D.I. 12).

8. On July 9, 2009 following the Debtors' first day hearing, this Court entered the Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 365 and 507 (1) Approving

Postpetition Financing; (2) Granting Liens and Providing Superpriority Expense Status; (3) Authorizing the Use of Cash Collateral; (4) Granting Adequate Protection; (5) Modifying the Automatic Stay; and (6) Scheduling a Final Hearing in connection with the interim relief requested in the DIP Motion (the "Initial DIP Loan Interim Order"; D.I. 34).

9. On August 30, 2009, this Court held a final hearing on the DIP Motion and entered the Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 365 and 507 (1) Approving Postpetition Financing; (2) Granting Liens and Providing Super Priority Expense Status; (3) Authorizing the Use of Cash Collateral; (4) Granting Adequate Protection; and (5) Modifying the Automatic Stay; as entered by this Court on August 31, 200 (the "Initial DIP Loan Final Order"; D.I. 137).

10. Pursuant to the Initial DIP Loan Final Order, the Debtors were authorized to obtain the DIP Facility[2] in the maximum amount of $1,500,000 on a post-petition basis. The DIP Lenders were granted DIP Liens in the DIP Collateral, senior to, and priming of, the liens in favor of the Pre-Petition Lenders, but subject to (i) the Senior Third Party Liens; and (ii) the Carve-Out. To further secure the DIP Obligations, the Debtors were granted a DIP Superpriority Claim over all administrative expenses or charges, subject only to the Carve-Out. Additionally, the Debtors provided adequate protection to their Pre-Petition Lenders in the form of Adequate Protections Liens and an Adequate Protection Superpriority Claim pursuant to section 507(b) of the Bankruptcy Code. The Adequate Protection Superpriority Claim together with the DIP Superpriority Claim are hereinafter referred to as the "Initial Superpriority Claims".

11. The Initial DIP Facility has been extended three times by Consent Orders and

---

[2] Capitalized terms not otherwise defined in this paragraph shall have the meaning provided to them in the Initial DIP Motion.

currently expires on March 1, 2010. See Consent Orders of Court entered at D.I. 304, D.I. 361, and D.I. 421.

### D. Sale of Substantially All Of The Debtors' Assets

12. On or around February 12, 2010, the Debtors' initial DIP Lenders and the Debtors agreed that the contemplated restructuring effort was no longer feasible and that further extension of the Initial DIP Facility premised on such restructuring efforts was untenable.

13. Since that point in time, the Debtors, CIT, Dunkin', PCEP, and the Committee have been in negotiations to resolve the Debtors' liquidity issues and reach a resolution that would maximize the value of the Debtors' businesses and recovery for creditors of the Debtors' bankruptcy estates.

14. Those negotiations resulted in a term sheet dated February 24, 2010 (the "Term Sheet") among Dunkin', the Debtors, CIT Group/Equipment Financing, Inc., Kainos Investment Partners I, LLC, Kainos Investment Partners II, LLC, PCEP II KPHC Holdings, Inc., and the Official Committee of Unsecured Creditors that sets forth the terms and conditions under which Dunkin' would agree to purchase substantially all of the assets of the Debtors as a going concern.

15. Consequently, contemporaneous with the filing of this Motion, the Debtors have filed their Motion for An Order (I) Approving Bidding Procedures for the Sale of Substantially All of Their Assets; (II) Approving The Form And Manner Of Notice Of The Sale And Assumption And Assignment Of Executory Contracts And Leases; (III) Approving The Form Of Asset Purchase Agreement, (IV) Approving And Authorizing Sale Of Substantially All Of The Debtors Assets To The Highest And Best Bidder Free And Clear Of All Liens, Interests, Claims And Encumbrances Pursuant To Sections 105, 363, And 365 Of The Bankruptcy Code, (V) Waiving The Requirements Of Federal Rules Of Bankruptcy Procedure 6004(g) And 6006(d),

(VI) Setting Auction And Hearing Dates; And (VII) Granting Related Relief (the "Sale Motion").

16. Pursuant to the Sale Motion, the Debtors are seeking authorization to sell substantially all of their assets as a going concern to the highest bidder under the terms and conditions set forth in the Term Sheet (the "Sale"). Among other things, the Term Sheet contemplates obtaining Court approval of certain bidding procedures by March 1, 2010 and setting a hearing on the Sale on or before March 31, 2010 (the "Sale Hearing"), with the closing on the Sale to occur on or before April 1, 2010 (the "Closing Date").

17. The Debtors, however, have insufficient liquidity to fund operations through the Closing Date and the Debtors' DIP Lenders do not consent to any further extension of the Initial DIP Facility or use of their cash collateral. Therefore, to ensure the Debtors' uninterrupted operations through the Closing Date, the Term Sheet contemplates funding a second debtor-in-possession facility by Dunkin' to preserve the going concern value of the Debtors' businesses.

### E. The Second DIP Loan

18. Pursuant to the terms of (a) the proposed Second DIP Loan Agreement annexed hereto as Exhibit "A"; (b) the budget annexed hereto as Exhibit "B" (the "Budget"); and (c) the Order authorizing the Second DIP Loan, Dunkin' will loan to the Debtors up to $500,000 to fund expenses incurred by the Debtors through the Closing Date consistent with the Budget.

19. A summary of the material terms of the Second DIP Loan include, but are not limited to:

(a) Proceeds of the Second DIP Loan will be dispensed on a weekly basis pursuant to a Budget.

(b) Dunkin's right to repayment of the Second DIP Loan will be a superpriority administrative expense claim, but shall be subordinate to the Initial Superpriority Claims; and

(c) In the event Dunkin' is the successful bidder for one or more stores at the Sale Hearing, Dunkin' agrees to waive its right to repayment of the entirety of this Second DIP Loan.

20. Finally, as of the filing of this Motion, an asset purchase agreement has not been finalized or executed by Dunkin' and the Debtors. Consequently, Dunkin's obligation to fund all but the first $100,000 of the Second DIP Loan is conditioned on the execution and delivery of an asset purchase agreement that is satisfactory in all respects to Dunkin' and consistent with the terms of the Term Sheet.

## BASIS FOR RELIEF REQUESTED

21. The Debtors propose to obtain further postpetition financing under the Second DIP Loan by providing Dunkin', in its capacity as the Second DIP Loan lender, with a claim having priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code, subordinate only to the Initial Superpriority Claims.

22. The statutory requirement for obtaining postpetition credit on a superpriority basis under section 364(c) of the Bankruptcy Code is a finding, made after notice and a hearing: (a) that the Debtors are not able to obtain unsecured credit under Section 364(b) by granting a lender an administrative expense claim; (b) the credit transaction is necessary to preserve the assets of the estate; and (c) the terms of the transaction are fair, reasonable and adequate, given the circumstances of the debtor-borrower and the proposed lender. In re Aqua Assocs., 123 B.R. 192, 195-6 (Bankr. E.D. Pa. 1991); In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987); In re Ames Dept. Stores, Inc., 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990).

23. Since substantially all of the Debtors' assets are already encumbered and given the Debtors' current liquidity condition, it was not possible to obtain credit in the usual course of business or having the priority of a general administrative expense claim under section 503(b) of

the Bankruptcy Code. The Debtors believe that the terms set forth in the Second DIP Loan Agreement provide the best financial resolution currently available to the Debtors.

24. The Debtors submit that during the negotiations with Dunkin', the Debtors engaged in a reasonable process to identify other potential lending sources and that no further search is required. See Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co., Inc.), 789 F.2d 1085, 1088 (4th Cir. 1986); In re Plabell Rubber Prods., Inc., 137 B.R. 897, 899-900 (Bankr. N.D. Ohio 1982); In re Reading Tube Indus., 72 B.R. 329, 332 (E.D. Pa. 1987). Where there are few lenders likely to be able and/or willing to extend necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom Anchor Sav. Bank FSB v. Sky Valley, Inc., 99 B.R. 117. 120 n.4 (N.D. Ga 1989); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

25. Based on the current capital market conditions, postpetition credit on an unsecured basis with a general administrative claim priority is unobtainable. The Debtors conducted substantial negotiations in connection with meeting their current liquidity needs to preserve the going concern value of their businesses through the Closing Date and the Second DIP Loan represents the best financing proposal with the least amount of risks.

26. Additionally, the Second DIP Loan is an unsecured facility. Accordingly, the Debtors need not show adequate protection for the rights of existing lienholders. Moreover, the superiority administrative claim granted on account of the Second DIP Loan are expressly made subject to the Initial Superpriority Claims. Consequently, the rights and interests of the DIP Lenders are not prejudiced by the Second DIP Loan.

27. Finally, if Dunkin' is the successful bidder at the Sale Hearing for one or more

stores, the Debtors' estates are not obligated to repay the Second DIP Loan. Therefore, the Second DIP Loan potentially preserves the going concern value of the Debtors' businesses without burdening the Debtors' estates with an additional administrative claim.

28. Without the Second DIP Loan, the Debtors will be unable to operate their businesses as a going concern through the Closing Date, forcing the Debtors to cease operations and liquidate their assets. Such piecemeal liquidation would significantly impair the value of the Debtors' assets and the recovery by the creditors of the Debtors' bankruptcy estates.

29. Based on the foregoing, the Debtors believe that, in the exercise of their business judgment, the terms set forth in the Second DIP Loan are appropriate and reasonable, and are in the best interests of the Debtors, their estates, and their creditors. See In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del 1994) (noting that bankruptcy courts typically defer to debtors' business judgment on most matters, including the decision to borrow money unless such decision is arbitrary and capricious.).

30. Accordingly, the Debtors respectfully request that this Court authorize the Debtors to obtain postpetition financing in accordance with the terms and conditions of the Second DIP Loan Agreement.

**REQUEST FOR INTERIM RELIEF**

31. Bankruptcy Rule 4001(c) permits a court to approve a debtor's request for authority to obtain financing during the fourteen (14) day period following the filing of a motion for authority to obtain postpetition financing "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(c)(2).

32. In examining requests under Bankruptcy Rule 4001, courts apply the same business judgment standard as is applicable to other business decisions. See e.g., Ames Dept.

Stores, Inc., 115 B.R. at 38.  The Debtors submit that, for the reasons set forth herein, authority to obtain postpetition financing on an interim basis as requested in the Motion is necessary to avoid the immediate cessation of the Debtors' operations and corresponding irreparable damages to the Debtors, their estates, and their creditors.

33. To the extent Bankruptcy Rule 6004(h) is applicable to the Motion, the Debtors also seek a waiver of the 14-day stay under Bankruptcy Rule 6004(h).

34. Therefore, the Debtors request that, pending a final hearing, the Court schedule an interim hearing on March 1, 2010 to consider the Debtors' application for authorization to obtain interim financing under the Second DIP Loan Agreement.

**REQUEST FOR FINAL HEARING**

35. Pursuant to Rule 4001(c)(2) of the Bankruptcy Rules, the Debtors request the Court set a date for final hearing ("Final Hearing") on or before March 31, 2010.

**NOTICE**

51. The Debtors will serve notice of this Motion upon: (i) the Office of the United States Trustee; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) counsel to CIT; (iv) counsel to Dunkin'; (v) counsel to the other DIP Lenders; and (v) those parties requesting notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

**NO PRIOR REQUEST**

52. No previous request for the relief sought in this Motion has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request the entry of order substantially in the form attached hereto authorizing (a) the Debtors to enter into Second DIP Loan with Dunkin' Brands, Inc.; (b) providing superpriority administrative expense status in connection with the

Second DIP Loan; (c) scheduling a final hearing with respect to the relief requested herein pursuant to Federal Rule of Bankruptcy Procedure 4001 seeking entry of a final order; and (d) granting such other and further relief as is just and proper.

| | |
|---|---|
| Dated: February 24, 2010<br>Wilmington, Delaware | Respectfully submitted,<br><br>REED SMITH LLP<br><br>By: */s/ Kathleen A. Murphy*<br>Mark W. Eckard (Bar No. 4542)<br>Kathleen A. Murphy (Bar No. 5215)<br>1201 North Market Street, Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 778-7500<br>Facsimile: (302) 778-7575<br><br>and<br><br>J. Andrew Rahl, Jr., Esquire<br>599 Lexington Avenue<br>New York, NY 10022<br>Telephone: (212) 521-5400<br>Facsimile: (212) 521-5450<br><br>Counsel to the Debtors and<br>Debtors-in-Possession |