**EXHIBIT A**

**DIP FINANCING AGREEMENT**

**DIP FINANCING AGREEMENT**, dated as of March __, 2010 (as amended, restated, supplemented or otherwise modified from time to time, this "Agreement"), by and among **DUNKIN' BRANDS, INC.** (the "Lender") and **KAINOS PARTNERS HOLDING COMPANY, LLC** ("Kainos Holding") **AND ITS SUBSIDIARIES LISTED ON THE SIGNATURE PAGES HERETO OR FROM TIME TO TIME PARTY HERETO** (Kainos Holding and each such subsidiary, individually a "Company" and a "Debtor" and collectively the "Companies" and the "Debtors").

**BACKGROUND**

A.      On July__, 2009, the Companies filed voluntary cases under Chapter 11 of the Bankruptcy Code pending in the Bankruptcy Court (the "Chapter 11 Cases"), and the Companies have retained possession of their assets and are authorized under the Bankruptcy Code to continue the operation of their businesses as debtors-in-possession.

B.      On March __, 2010, the Bankruptcy Court entered an interim financing order (the "Interim Financing Order") pursuant to which the Lender may make post-petition loans and advances, and provide other financial accommodations, to the Companies as set forth in the Interim Financing Order and the DIP Loan Documents.

C.      The Interim Financing Order provides that as a condition to the making of such post-petition loans, advances and other financial accommodations, the Companies shall execute and deliver this Agreement.

**NOW, THEREFORE,** in consideration of the mutual covenants and undertakings herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

**SECTION 1.      Definitions**

**Asset Purchase Agreement** shall mean the Asset Purchase Agreement entered into between Dunkin' Brands, Inc. or its designee and the Companies dated on or about March [3], 2010.

**Availability** shall mean, as at any time of calculation, the amount by which: (a) the Line of Credit exceeds (b) the outstanding aggregate amount of all DIP Loans.

**Bankruptcy Code** shall mean the United States Bankruptcy Code, being Title 11 of the United States Code as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified, or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

**Bankruptcy Court** shall mean the United States Bankruptcy Court or the United States District Court for the District of Delaware.

**Borrowing Agent** shall mean Kainos Holding.

**Business Day** shall mean any day on which banks in Massachusetts are open for business.

**Closing Date** shall mean the date that this Agreement has been duly executed by the parties hereto and delivered to the Lender.

**Company or Debtor** shall have the meaning set forth in the preamble of this Agreement and shall be deemed to include such Company as Debtor and debtor-in-possession, and its successors and assigns (including any trustee or other fiduciary hereafter appointed as its legal representative or with respect to the property of the estate of such Company, whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case and its successor upon conclusion of the Chapter 11 Cases).

**Default** shall mean any event specified in Section 10 hereof, whether or not any requirement for the giving of notice, the lapse of time, or both, or any other condition, event or act, has been satisfied.

**Default Rate of Interest** shall mean a fixed rate of interest per annum on any DIP Loan Obligations hereunder, equal to ten percent (10%) per annum, which the Lender shall be entitled to charge the Companies on all DIP Loan Obligations due the Lender by the Companies.

**DIP Loan Account** shall mean the account on the Lender's books, in Borrowing Agent's name and on behalf of the Companies, in which each Company will be charged with all DIP Loan Obligations.

**DIP Loan Documents** shall mean this Agreement, the Promissory Notes, the other closing documents and any other ancillary loan and security agreements executed from time to time in connection with this Agreement, all as may be renewed, amended, extended, increased or supplemented from time to time.

**DIP Loan Obligations** shall mean all loans, advances and extensions of credit made or to be made by the Lender to the Companies, or any of them, or to others for the Companies' account, pursuant to this Agreement (including, without limitation, all DIP Loans), whether now in existence or incurred by the Companies or any of them from time to time hereafter; whether principal, interest, fees, costs, expenses or otherwise; whether such indebtedness is absolute or contingent, joint or several, matured or unmatured, direct or indirect and whether the Companies are liable to the Lender for such indebtedness as principal, surety, endorser, guarantor or otherwise. DIP Loan Obligations shall also include all indebtedness and obligations owing to the Lender and/or any affiliate thereof by the Companies or any of them under any DIP Loan Document.

**DIP Loans** shall mean the loans made by the Lender to the Companies pursuant to Section 3.1.

**ERISA** shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time and the rules and regulations promulgated thereunder from time to time.

**Event(s) of Default** shall have the meaning provided for in Section 10 of this Agreement.

**Final Financing Order** shall mean a final financing order, entered by the Bankruptcy Court prior to the expiration of the Interim Financing Order, authorizing the financing on terms and conditions set forth in this Agreement, granting to the Lender super-priority administrative expense claims (subject to the Initial Superpriority Claims defined in, and except as otherwise specifically provided in, the Interim Financing Order), and modifying the automatic stay and other provisions required by the Lender and its counsel.

**Financing Order** shall mean the Interim Financing Order, the Final Financing Order and such other orders relating thereto or authorizing the granting of credit by the Lender to Borrower pursuant to this Agreement and as ratified, assumed and adopted by Borrower pursuant to the terms thereof, on an emergency, interim or permanent basis pursuant to Section 364 of the Bankruptcy Code as may be issued or entered by the Bankruptcy Court in the Chapter 11 Cases.

**First DIP Agreement** shall mean the Amended And Restated DIP Financing, Ratification And Intercreditor Agreement, dated on or about July 7, 2009 (as amended, restated, supplemented or otherwise modified from time to time, by and among The CIT Group/Equipment Financing, Inc., Dunkin' Brands, Inc., Kainos Investment Partners II, LLC, The CIT Group/Equipment Financing, Inc. as agent for itself and the other Lenders thereunder, and Kainos Partners Holding Company, LLC and its subsidiaries listed on the signature pages thereto or from time to time party thereto.

**GAAP** shall mean generally accepted accounting principles in the United States of America as in effect from time to time and for the period as to which such accounting principles are to apply, provided that in the event the Companies modify their accounting principles and procedures as applied as of the Closing Date, the Companies shall provide to the Lender such statements of reconciliation as shall be in form and substance acceptable to the Lender.

**Indebtedness** shall mean, without duplication, all liabilities, contingent or otherwise, which are any of the following: (a) obligations in respect of borrowed money or for the deferred purchase price of property, services or assets, other than Inventory, or (b) lease obligations which, in accordance with GAAP, have been, or which should be capitalized.

**Interim Financing Order** shall have the meaning provided for in the recitals of this Agreement.

**Inventory** shall mean all of each of the Companies' present and hereafter acquired inventory (as defined in the UCC) and including, without limitation, all merchandise, inventory and goods, and all additions, substitutions and replacements thereof, wherever located, together with all goods and materials used or usable in manufacturing, processing, packaging or shipping same in all stages of production from raw materials through work-in-process to finished goods and all proceeds thereof of whatever sort.

**Line of Credit** shall mean the obligation of the Lender to make DIP Loans pursuant to Section 3 of this Agreement in the principal amount equal to $500,000; provided that the Lender's obligation to fund all but the first $100,000 of the DIP Loans shall be conditioned on the execution and delivery of an Asset Purchase Agreement that is satisfactory in all respects to the Lender.

**Maturity Date** shall mean April 1, 2010.

**Permitted Encumbrances** shall mean liens permitted under the First DIP Agreement, and shall further include (to the extent not already included) the encumbrances set forth on <u>Schedule 2</u> hereto.

**Permitted Indebtedness** shall mean Indebtedness permitted under the First DIP Agreement.

**Person** shall mean any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership, governmental authority or other entity.

**Promissory Notes** shall mean the notes, if any, in the form of Exhibit A attached hereto, delivered by any Company to the Lender to evidence the DIP Loans pursuant to, and repayable in accordance with, the provisions of Section 3 and Section 4 of this Agreement.

**Successful Bidder** shall mean the Person submitting the highest and best offer for any of the stores included in the assets to be purchased and sold under the Asset Purchase Agreement.

**Taxes** shall mean all federal, state, municipal and other governmental taxes, levies, charges, claims and assessments which are or may be due by the Companies with respect to their business, operations, or otherwise.

**UCC** shall mean the Uniform Commercial Code as the same may be amended and in effect from time to time in the Commonwealth of Massachusetts or any other applicable jurisdiction.

**SECTION 2.**      **[Intentionally Omitted]**

**SECTION 3.**      **DIP Loans**

**3.0**      [Intentionally Omitted]

**3.1**      (a) The Lender may, subject to the terms and conditions of this Agreement, from time to time, and within (x) Availability, (y) the Line of Credit, and (z) the budget of projected operating expenses of the Debtors and DIP Loans to be made set forth on <u>Schedule 2</u>, make DIP Loans at the request of Borrowing Agent; <u>provided</u>, <u>however</u> that the aggregate outstanding principal amount of such DIP Loans shall not exceed the Line of Credit.  Requests for DIP Loans must be made on a weekly basis, and each request must be received by an officer of the Lender no later than 1:00 p.m., New York time, two (2) Business Day prior to the day on which any such DIP Loans are required.

**(b)**      Whenever the Companies desire the Lender to make a DIP Loan pursuant to this Section 3, Borrowing Agent shall give the Lender notice in writing or irrevocable telephonic notice confirmed promptly in writing, substantially in the form of borrowing notice attached hereto as <u>Exhibit B</u> (the "Borrowing Notice") specifying (A) the amount to be borrowed, (B) the requested borrowing date (which shall be a Business Day and shall be prior to the Maturity Date, and prior to any effective termination date of this Agreement, all as further set forth herein), and (C) the other matters set forth in the Borrowing Notice.  All Borrowing Notices must be received by an officer of the Lender no later than 1:00 P.M.  New York time two (2) Business Day prior to the borrowing date.  The procedure for DIP Loans to be made on a requested borrowing date may be such other procedure as is mutually satisfactory to the Borrowing Agent and the Lender.

So long as the amount of the DIP Loan requested by the Borrowing Agent is in accordance with the projected budget and DIP Loans to be made on such date set forth on Schedule 2 and no Event of Default has occurred and is continuing, the Lender shall be deemed to have approved such request. With respect to all other DIP Loans requested by the Borrowing Agent, the Lender shall determine in its sole and absolute discretion whether the Lender shall make available to the Companies all or any portion of such requested DIP Loans. The Lender shall make loans and advances to such account as shall be notified by the Borrowing Agent to the Lender in writing.

(c)    [Intentionally Omitted]

(d)    Upon the request of the Lender, the Companies' DIP Loan Obligations hereunder shall be evidenced by a Promissory Note in the form of Exhibit A attached hereto.

(e)    Notwithstanding any provision of this Agreement to the contrary, all payments due by the Companies under this Agreement, whether for principal, interest, fees, costs, indemnities, expenses or otherwise, shall be payable in United States dollars at the Lender's office specified in Section 12.6 of this Agreement without setoff, counterclaim or other deduction of any kind.

3.2    [Intentionally Omitted]

3.3    The Companies agree to maintain such books and records as the Lender may reasonably require. All of the books and records of the Companies will be available to the Lender at normal business hours, including any records handled or maintained for the Companies or any of them by any other company or entity.

3.4    [Intentionally Omitted]

3.5    [Intentionally Omitted]

3.6    (a) Subject to the provisions of paragraph (b) below, the Lender shall maintain a DIP Loan Account on its books in which each of the Companies will be charged with all loans and advances made by the Lender to such Company to it or for its account, and with any other DIP Loan Obligations. The Companies will be credited with all amounts received by the Lender from the Companies.

(b)    In order to utilize the collective borrowing powers of the Companies (collectively the "Collective Borrowers") in the most efficient and economical manner, and in order to facilitate the handling of the accounts of the Collective Borrowers on the Lender's books, the Collective Borrowers have requested, and the Lender has agreed to handle accounts of the Collective Borrowers on the Lender's books on a combined basis, all in accordance with the following provisions: (i) in lieu of maintaining separate accounts on the Lender's books in the name of each of the Collective Borrowers, the Lender shall maintain one account under the name: Kainos Partners Holding Co., LLC (herein the "Collective Account"). Each of the Collective Borrowers hereby appoints the Borrowing Agent as its agent with respect to actions to be taken by the Collective Borrowers and hereby ratifies and confirms any and all such actions taken by the Borrowing Agent on behalf of the Collective Borrowers. All DIP Loan Obligations shall be the joint and several liability of each Company notwithstanding that the Borrowing

Agent incurred such DIP Loan Obligation on behalf of any one or more Company or the Collective Borrower. DIP Loans and advances made by the Lender to any of the Collective Borrowers will be charged to the Collective Account indicated above, along with any charges and expenses under this Agreement. The Collective Account will be credited with all amounts received by the Lender from any of the Collective Borrowers; **(ii)** each month the Lender will render to the Borrowing Agent one extract of the combined Collective Account, which shall be deemed to be an account stated as to each of the Collective Borrowers and which will be deemed correct and accepted by all of the Collective Borrowers unless the Lender receives a written statement of exceptions from Borrowing Agent within thirty (30) days after such extract has been rendered by the Lender. It is expressly understood and agreed by each of the Collective Borrowers that the Lender shall have no obligation to account separately to any of the Collective Borrowers; **(iii)** requests for loans and advances may be made by Borrowing Agent as agent for the Collective Borrowers and the Lender is hereby authorized and directed to accept, honor and rely on such instructions and requests, subject to the limitation and provisions set forth in this Agreement. It is expressly understood and agreed by each of the Collective Borrowers that the Lender shall have no responsibility to inquire into the correctness of the apportionment, allocation, or disposition of (x) any loans and advances made to any of the Collective Borrowers or (y) any of the Lender's expenses and charges relating thereto. All loans and advances are made for the Collective Account; **(iv)** the Collective Borrowers jointly and severally unconditionally guarantee to the Lender the prompt payment in full of all loans and advances made and to be made by the Lender to any of them under this Agreement; **(v)** it is understood that the handling of the accounts of the Collective Borrowers in a combined fashion, as more fully set forth herein, is done solely as an accommodation to the Collective Borrowers and at their request, and that the Lender shall incur no liability to the Collective Borrowers as a result hereof. To induce the Lender to do so, and in consideration thereof, each of the Collective Borrowers hereby agrees to indemnify the Lender and hold the Lender harmless against any and all liability, expense, loss or claim of damage or injury, made against the Lender by any of the Collective Borrowers or by any third party whosoever, arising from or incurred by reason of (1) the method of handling the accounts of the Collective Borrowers as herein provided, (2) the Lender relying on any instructions of the Borrowing Agent, or (3) any other action taken by the Lender in accordance with this subparagraph (b), but in each case excluding any such liability, expense, loss or claim determined by the final nonappealable determination of a court of competent jurisdiction to be caused solely by the gross negligence of the Lender; and **(vi)** the foregoing request was made because the Collective Borrowers are engaged in an integrated operation that requires financing on a basis permitting the availability of credit from time to time to each of the Collective Borrowers as required for the continued successful operation of each of the Collective Borrowers. Each of the Collective Borrowers expects to derive benefit, directly or indirectly, from such availability since the successful operation of each of the Collective Borrowers is dependent on the continued successful performance of the functions of the integrated group. In addition, the Companies have informed the Lender that:

> (A) Borrowing Agent, in order to increase the efficiency and productivity of each of the other Collective Borrowers, has centralized in itself a cash management system which entails, in part, central disbursement and operating accounts in which it provides the working capital needs of each of the other Collective

Borrowers and manages and timely pays the accounts payable of each of the other Collective Borrowers;

(B) Borrowing Agent is further enhancing the operating efficiencies of the other Collective Borrowers by purchasing, or causing to be purchased, in its name for its account all materials, supplies, inventory and services required by the other Collective Borrower which will result in reducing the operating costs of the other Collective Borrowers; and

(C) Since all of the Collective Borrowers are now engaged in an integrated operation that requires financing on an integrated basis and since each Collective Borrower expects to benefit from the continued successful performance of such integrated operations and in order to best utilize the collective borrowing powers of each Collective Borrower in the most effective and cost efficient manner and to avoid adverse effects on the operating efficiencies of each Collective Borrower and the existing back-office practices of the Collective Borrowers, each Collective Borrower has requested that all DIP Loans be disbursed solely upon the request of Borrowing Agent and to bank accounts managed solely by Borrowing Agent and that Borrowing Agent will manage for the benefit of each Collective Borrower the expenditure and usage of such funds.

**3.7**     [Intentionally Omitted]

**SECTION 4.     [Intentionally Omitted]**

**SECTION 5.     [Intentionally Omitted]**

**SECTION 6.     [Intentionally Omitted]**

**SECTION 7.     Representations, Warranties and Covenants**

**7.1**     [Intentionally Omitted]

**7.2**     [Intentionally Omitted]

**7.3**     [Intentionally Omitted]

**7.4**     [Intentionally Omitted]

**7.5**     [Intentionally Omitted]

**7.6**     Each of the Companies has filed all federal, state and local tax or information returns and other reports each is required by law to file and has paid all taxes, assessments, fees and other governmental charges that are due and payable, except for repayment of certain

employment and social security tax payments received from the Internal Revenue Service in the amount of $143,814.55. Each of the Companies agrees to pay, when due, all Taxes, including sales taxes, assessments, claims and other charges lawfully levied or assessed upon the Companies unless such Taxes are being diligently contested in good faith by the applicable Companies by appropriate proceedings and adequate reserves are established in accordance with GAAP. Notwithstanding the foregoing, if any lien shall be filed or claimed thereunder for Taxes due the to United States of America, such lien shall not be deemed to be a Permitted Encumbrance hereunder and the Companies shall immediately pay such tax and remove the lien of record. If the Companies or any of them fails to do so, then at the Lender's election, the Lender may within three (3) Business Days following receipt of written notice from Lender create a reserve in such amount as it may deem appropriate in its business judgment.

**7.7** Each of the Companies: (a) represents that it is in compliance with, and agrees to comply with, all acts, rules, regulations and orders of any legislative, administrative or judicial body or official, which the failure to comply with would have a material and adverse impact on the business or operations of the Companies, taken as a whole, <u>provided</u> that the Companies may contest any acts, rules, regulations, orders and directions of such bodies or officials in any reasonable manner, in the Lender's reasonable opinion, materially and adversely affect the Lender's rights hereunder; and (b) represents that it is in compliance with, and agrees to comply with, all environmental statutes, acts, rules, regulations or orders as presently existing or as adopted or amended in the future, applicable to operation of the business of the Companies, which the failure to comply with would have a material and adverse impact on the operation of the business of the Companies, taken as a whole.

**7.8** Until termination of this Agreement and payment and satisfaction of all DIP Loan Obligations, the Borrowing Agent, on behalf of the Companies, will furnish to the Lender not later than Tuesday of each week, a certificate prepared as of the close of business of the last Business Day of the immediately preceding week setting forth the cash flow of each of the Companies for such preceding week and the projected cash flow for such week, in such detail as shall be reasonably satisfactory to the Lender.

**7.9** Until termination of this Agreement and payment and satisfaction of all DIP Loan Obligations, each of the Companies agrees that, without the prior written consent of the Lender, except as otherwise herein provided, the Companies or any of them will not:

**(a)** [Intentionally Omitted]

**(b)** Incur or create any Indebtedness other than the Permitted Indebtedness;

**(c)** Sell, lease, assign, transfer or otherwise dispose of any Company's assets except as otherwise specifically permitted by this Agreement;

**(d)** Merge, consolidate, amalgamate or otherwise alter or modify their respective organizational names, principal places of business, structure, or existence, reincorporate or re-organize, or enter into or engage in any operation or activity materially different from that presently being conducted by the Companies or any of them;

**(e)** Assume, guarantee, endorse, or otherwise become liable upon the obligations of any Person, except for (i) obligations of another Company permitted under this Agreement and (ii) the endorsement of negotiable instruments for deposit or collection or similar transactions in the ordinary course of business;

**(f)** Declare or pay any dividend or distributions of any kind on, or purchase, acquire, redeem or retire, any of the capital stock of or equity interest in, any Company, of any class whatsoever, whether now or hereafter outstanding;

**(g)** Make any advance or loan to, or any investment in, any Person (other than another Company) or purchase or acquire all or substantially all of the stock or other equity interests in or assets of any Person (other than another Company); or

**(h)** Take any actions that are inconsistent with their respective obligations under the Asset Purchase Agreement.

**(i)** [Intentionally Omitted]

**(j)** [Intentionally Omitted]

**(k)** [Intentionally Omitted]

**7.10** Each of the Companies shall promptly provide to the Lender such due diligence information regarding the Companies (including, without limitation, access to the Companies' offices, personnel and files during regular business hours) as the Lender shall request in connection with the consummation of the transactions contemplated by the Asset Purchase Agreement.

**7.11** Each of the Companies agrees to advise the Lender in writing of any notices received from any local, state or federal authority advising of any environmental liability (real or potential) stemming from any of the Companies' operations, their premises, their waste disposal practices, or waste disposal sites used by any of the Companies and to provide the Lender with copies of all such notices if so required.

**7.12** Each of the Companies hereby agrees to indemnify and hold harmless the Lender and the officers, directors, members, managers, employees, attorneys and agents of the Lender (each an "Indemnified Party") from, and holds each of them harmless against, any and all losses, liabilities, obligations, claims, actions, damages, costs and expenses (including attorney's fees) and any payments made by any Indemnified Party pursuant to any indemnity provided by an Indemnified Party with respect to or to which any Indemnified Party could be subject insofar as such losses, liabilities, obligations, claims, actions, damages, costs, fees or expenses with respect to the DIP Loan Documents, except and to the extent that the same results solely and directly from the gross negligence or willful misconduct of such Indemnified Party as finally determined by a court of competent jurisdiction. The Companies hereby agree that this indemnity shall survive termination of this Agreement.

**7.13** Without the prior written consent of the Lender, the Companies agree that they will not enter into any transaction, including, without limitation, any purchase, sale, lease, loan

or exchange of property with any subsidiary or affiliate of Kainos Holding or the other Companies that is not a Company, provided that, except as otherwise set forth in this Agreement, the Companies or any of them may enter into sale and service transactions in the ordinary course of their business and pursuant to the reasonable requirements of any such Company, and upon standard terms and conditions and fair and reasonable terms, no less favorable to such Company than such Company could obtain in a comparable arms length transaction with an unrelated third party, provided further that no Default or Event of Default exists or will occur hereunder prior to and after giving effect to any such transaction.

**7.14**    Each of the Companies agrees to pay, when due, all rent and other amounts due under each lease that is to be assigned to the Buyer (as such term is defined in the Asset Purchase Agreement) under the Asset Purchase Agreement.

**7.15**    [Intentionally Omitted]

**7.16**    Each of the Companies hereby represents and warrants to the Lender that:

**(a)**    Each of the Companies and each of its subsidiaries is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, has all requisite power and authority to carry on its business as now conducted and, except where the failure to do so, individually or in the aggregate, could not reasonably be expected to result in a material adverse effect in the financial condition, business, prospects, profitability assets or operations of the Companies taken as a whole, is qualified to do business in, and is in good standing in, every jurisdiction where such qualification is required.

**(b)**    The transactions contemplated by this Agreement (including, without limitation, the borrowing agency designation set forth in Section 3.6) and the other DIP Loan Documents are within each Company's organizational powers and have been duly authorized by all necessary organizational actions.

**(c)**    The transactions contemplated by this Agreement and the other DIP Loan Documents (a) do not require any consent or approval of, registration or filing with, or any other action by, any governmental authority, except such as have been obtained or made and are in full force and effect, (b) will not violate any applicable requirement of law or any governmental authority applicable to any Company or any of its subsidiaries, and (c) will not violate or result in a default under any indenture, agreement or other instrument binding upon any Company or any of its subsidiaries or its assets, or give rise to a right thereunder to require any payment to be made by any Company or any of its subsidiaries.

**(d)**    There is no reasonable likelihood of an adverse determination with respect to any action, suit or proceeding that could reasonably be expected, individually or in the aggregate, to result in a material adverse effect in the financial condition, business, prospects, profitability assets or operations of the Companies taken as a whole, and no such action, suit or proceeding involves this Agreement or the transactions contemplated hereby or by any of the other DIP Loan Documents.

**SECTION 8.        Interest, Fees and Expenses**

**8.1**      Interest on the DIP Loans shall be payable at the Maturity Date.  DIP Loans shall bear interest at a fixed rate per annum equal to eight percent (8%).  The rate hereunder for DIP Loans shall be calculated based on a 360-day year.  The Lender shall be entitled to charge the Collective Account at the rate provided for herein when due until all DIP Loan Obligations have been paid in full.  Upon the occurrence and during the continuance of an Event of Default and the giving of any required notice by the Lender in accordance with the provisions of Section 10, Paragraph 10.2 hereof, all DIP Loan Obligations shall bear interest at the Default Rate of Interest.

**SECTION 9.        Releases**

**9.1**      [Intentionally Omitted]

**9.2**      Upon (a) the receipt by the Lender of payment in full of all DIP Loan Obligations in cash or other immediately available funds, and (b) the termination of this Agreement and the other DIP Loan Documents, in consideration of the agreement of the Lender contained herein and the making of any DIP Loan by the Lender, the Debtors, jointly and severally, hereby covenants and agrees to execute and deliver in favor of the Lender a valid and binding termination and release agreement, in form and substance satisfactory to the Lender.  If any Debtor violates such covenant, the Debtors, jointly and severally, agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

**9.3**      (a) Each Debtor understands, acknowledges and agrees that the releases set forth above in Section 9.2 hereof may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such releases.

**(b)**      Each Debtor agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final and unconditional nature of the releases set forth, when made, in Section 9.2 hereof.

**SECTION 10.      Events of Default and Remedies**

**10.1**    Notwithstanding anything hereinabove to the contrary, each of the following shall constitute an "Event of Default":

**(a)**      [Intentionally Omitted];

**(b)**      [Intentionally Omitted];

**(c)**      [Intentionally Omitted];

**(d)**      breach by any Company of any warranty, representation or covenant contained herein (other than those referred to in sub-paragraph (e) below); provided that such Default by such Company of any of the warranties, representations or covenants referred in this clause (d)

shall not be deemed to be an Event of Default unless and until such Default shall remain unremedied to the Lender's satisfaction for a period of fifteen (15) days from the date of such breach;

(e)     breach by any Company of any warranty, representation or covenant of Paragraphs 7.6 and 7.8 through 7.16 of Section 7 hereof;

(f)     failure of the Companies or any of them to pay any of the DIP Loan Obligations on the Maturity Date or any other date of termination of this Agreement, or otherwise within one (1) Business Day of the due date thereof;

(g)     [Intentionally Omitted];

(h)     [Intentionally Omitted];

(i)     the occurrence of any default or event of default (after giving effect to any applicable grace or cure periods) by any Company under any instrument or agreement evidencing any Indebtedness of the Companies or any of them having a principal amount in excess of $25,000;

(j)     any action by the Agent or the Lenders under the First DIP Agreement that conflicts with the Asset Purchase Agreement;

(k)     [Intentionally Omitted];

(l)     the exercise by the Agent or the Lenders under the First DIP Agreement of any of the remedies set forth in the order authorizing and approving the First DIP Agreement, including, without limitation, any "Event of Default" (as defined in such order);

(m)     any Debtor suspends or discontinues or is enjoined by any court or governmental agency from continuing to conduct all or any material part of its business, or a trustee, receiver or custodian is appointed for any Debtor, or any of their respective properties;

(n)     conversion of any Chapter 11 Case to a Chapter 7 case under the Bankruptcy Code;

(o)     dismissal of any Chapter 11 Case or any subsequent Chapter 7 case either voluntarily or involuntarily;

(p)     [Intentionally Omitted];

(q)     the Financing Order shall be modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written consent of the Lender (and no such consent shall be implied from any other authorization or acquiescence by the Lender);

(r)     the appointment of a trustee pursuant to Sections 1104(a)(1) or 1104(a)(2) of the Bankruptcy Code; or

**(s)** the appointment of an examiner with special powers pursuant to Section 1104(a) of the Bankruptcy Code.

**10.2** Upon the occurrence and during the continuance of an Event of Default which has not been waived by the Lender, the Lender may declare to Borrowing Agent by written notice that the Lender shall make no further DIP Loans unless such Default or Event of Default is waived in writing by Lender or cured to the satisfaction of the Lender. Upon the occurrence of an Event of Default, the Lender may (a) declare that all DIP Loan Obligations are immediately due and payable; and (b) immediately terminate this Agreement upon notice to the Companies. Upon the occurrence of an Event of Default, the Lender may charge the Companies the Default Rate of Interest on all then outstanding or thereafter incurred DIP Loan Obligations, in lieu of the interest provided for in Section 8 of this Agreement, provided that the Lender has given the Companies written notice of the Event of Default. The exercise of any option is not exclusive of any other option, which may be exercised at any time by the Lender in its discretion, and is in addition to any other rights granted to the Lender under any other agreement.

## SECTION 11. Termination

**11.1** Notwithstanding any other provision herein to the contrary, the Lender may terminate this Agreement (a) immediately upon the occurrence of an Event of Default, (b) on the Maturity Date, or (c) if the Lender is a Successful Bidder, upon the consummation of the transactions contemplated in the Asset Purchase Agreement.

**11.2** [Intentionally Omitted]

**11.3** [Intentionally Omitted]

**11.4** All DIP Loan Obligations shall become due and payable as of any termination of this Agreement, whether under this Section 11 or under Section 10 hereof; provided that, if the Lender is the Successful Bidder, the Lender shall waive all right to repayment of the DIP Loan Obligations and shall release the Companies from any repayment obligation with respect to the DIP Loan Obligations upon the consummation of the transactions contemplated in the Asset Purchase Agreement.

## SECTION 12. Miscellaneous

**12.1** The Companies hereby waive diligence, notice of intent to accelerate, notice of acceleration, demand, presentment and protest and any notices thereof as well as notice of nonpayment. No delay or omission of the Lender to exercise any right or remedy hereunder, whether before or after the happening of any Event of Default, shall impair any such right or shall operate as a waiver thereof or as a waiver of any such Event of Default. No single or partial exercise by the Lender of any right or remedy precludes any other or further exercise thereof, or precludes any other right or remedy.

**12.2** This Agreement and the DIP Loan Documents executed and delivered in connection therewith can be waived or changed only by a writing signed by each party hereto or thereto, and shall bind and benefit each party hereto or thereto and their respective successors

and assigns, and any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**12.3**    In no event shall the Companies, upon demand by the Lender for payment of any DIP Loan Obligations, by acceleration of the maturity thereof, or otherwise, be obligated to pay interest and fees in excess of the amount permitted by law.  Regardless of any provision herein or in any agreement made in connection herewith, the Lender shall never be entitled to receive, charge or apply, as interest on any DIP Loan Obligations, any amount in excess of the maximum amount of interest permissible under applicable law.  If the Lender ever receives, collects or applies any such excess, it shall be deemed a partial repayment of principal and treated as such; and if principal is paid in full, any remaining excess shall be refunded to the Companies.  This paragraph shall control every other provision hereof, the DIP Loan Documents and of any other agreement made in connection with the DIP Loans.

**12.4**    If any provision hereof or of any other agreement made in connection herewith is held to be illegal or unenforceable, such provision shall be fully severable, and the remaining provisions of the applicable agreement shall remain in full force and effect and shall not be affected by such provision's severance.  Furthermore, in lieu of any such provision, there shall be added automatically as a part of the applicable agreement a legal and enforceable provision as similar in terms to the severed provision as may be possible.

**12.5    EACH OF THE COMPANIES AND THE LENDER EACH HEREBY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF THE DIP LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED THEREUNDER.    EACH OF THE COMPANIES HEREBY IRREVOCABLY WAIVES PERSONAL SERVICE OF PROCESS AND CONSENTS TO SERVICE OF PROCESS BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED.  IN NO EVENT WILL THE LENDER BE LIABLE FOR LOST PROFITS OR OTHER SPECIAL OR CONSEQUENTIAL DAMAGES.  EACH OF THE COMPANIES AND THE LENDER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES PERTAINING DIRECTLY OR INDIRECTLY TO THIS AGREEMENT OR THE DIP LOAN DOCUMENTS OR TO ANY MATTER ARISING THEREFROM.    EACH COMPANY HERETO EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING COMMENCED IN SUCH COURT.**

**12.6**    Except as otherwise herein provided, any notice or other communication required hereunder shall be in writing (provided that, any electronic communications from any of the Companies with respect to any request, transmission, document, electronic signature, electronic mail or facsimile transmission shall be deemed binding on the Companies for purposes of this Agreement, provided further that any such transmission shall not relieve the Companies from any other obligation hereunder to communicate further in writing), and shall be deemed to have been validly served, given or delivered when hand delivered or one (1) Business Day after deposit with a nationally recognized overnight delivery service , or three (3) Business Days after deposit in the United States mails, with proper first class postage prepaid, return receipt

requested, and addressed to the party to be notified or to such other address as any party hereto may designate for itself by like notice, as follows:

(A) if to the Companies, c/o Borrowing Agent at:

26 Parkway Commons Drive
Greer, South Carolina 29650
Attn: Bart D. Thome

With a copy to:

Joseph J. Bodner
2101 North Harrison Street, Suite 101
Wilmington, Delaware 19802

(B) if to the Lender, at:

Dunkin' Brands, Inc.
130 Royall Street
Canton, MA 02021
Attn: Kate Lavelle

With a copy to:

Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
Attn: Don S. De Amicis

provided, however, that notices to the Lender shall not be deemed given until received.

**12.7   THE VALIDITY, INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT AND THE OTHER DIP LOAN DOCUMENTS SHALL BE GOVERNED BY THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS, EXCEPT TO THE EXTENT THAT ANY OTHER DIP LOAN DOCUMENT INCLUDES AN EXPRESS ELECTION TO BE GOVERNED BY THE LAWS OF ANOTHER JURISDICTION, AND EXCEPT TO THE EXTENT THAT THE PROVISIONS OF THE BANKRUPTCY CODE ARE APPLICABLE AND SPECIFICALLY CONFLICT WITH THE FOREGOING.**

**12.8**   In the event of any inconsistency between the terms of the Financing Orders, on the one hand, and this Agreement and the other DIP Loan Documents, on the other hand, the terms of the Financing Orders shall control.

**12.9**   The Lender acknowledges that its right to repayment shall be junior and subordinate to the payment in full of the obligations under the First DIP Agreement.

[SIGNATURE PAGES FOLLOW]

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be effective, executed, accepted and delivered by their proper and duly authorized officers as of the date set forth above.

## COMPANIES

Kainos Partners Holding Company, LLC
Kainos Partners Buffalo RE Holdings, LLC
Kainos Partners Greenville SC-RE Holdings, LLC
Kainos Partners Las Vegas RE Holdings, LLC
Kainos Vineyard Drive RE, LLC
Kainos Highway 29 RE, LLC
Kainos 1996 East Main RE, LLC
Kainos Wade Hampton RE, LLC
Kainos Clinton CML RE, LLC
Kainos Wilson Road RE, LLC
Kainos Partners Columbia SC, LLC
Kainos Partners Houston, LLC
Kainos Partners Las Vegas, LLC
Kainos Partners Las Vegas, LLC Operating Series -#1
Kainos Partners Las Vegas, LLC Operating Series - #2
Kainos Partners Las Vegas, LLC Operating Series - #3
Kainos Partners Las Vegas, LLC Operating Series - #4
Kainos Partners Las Vegas, LLC Operating Series - #5
Kainos Partners Las Vegas, LLC Operating Series-#6
Kainos Partners Las Vegas, LLC Operating Series - #7
Kainos Partners Las Vegas, LLC Operating Series - #8
Kainos Partners Las Vegas, LLC Operating Series - #9
Kainos Partners Las Vegas, LLC Operating Series-#10
Kainos Partners Las Vegas, LLC Operating Series #11
Kainos Partners Las Vegas, LLC Operating Series - #12
Kainos Partners Las Vegas, LLC Operating Series #13

Kainos Partners Las Vegas, LLC Operating Series #14
Kainos Partners Las Vegas, LLC Operating Series #15
Kainos Partners Las Vegas, LLC Operating Series-#16
Kainos Partners Las Vegas, LLC Operating Series #18
Kainos Partners Las Vegas, LLC Operating Series - #20
Kainos Partners Las Vegas, LLC Operating Series #21
Kainos Partners Las Vegas, LLC Operating Series #24
Kainos Partners Las Vegas, LLC Operating Series - #25
Kainos Partners Las Vegas, LLC Operating Series #28
Kainos Partners Las Vegas, LLC Operating Series #34
Kainos Partners, LLC
Kainos Partners South Carolina, LLC
Kainos Walden-Transit, LLC
Kainos Camp-Southwestern, LLC
Kainos Main Street Jamestown, LLC
Kainos Fairmount, LLC
Kainos Crosspoints LLC
Kainos Main-Bailey, LLC
Kainos Boulevard Mall, LLC
Kainos Union Rd, LLC
Kainos Flix-Transit, LLC
Kainos Walden, LLC
Kainos NF Maple Road, LLC
Kainos Union Road Cheektowaga, LLC
Kainos Broadway Retail, LLC
Kainos Main-Chippewa, LLC
Kainos Transit-Genesee, LLC
Kainos Broadway CML, LLCLLC
Kainos Eggert Road, LLC
Kainos Delaware-Hertel, LLC
Kainos Vineyard Drive, LLC

Kainos Boston State Road, LLC
Kainos Walmart, LLC
Kainos Tiger Boulevard, LLC
Kainos East Main Street, LLC
Kainos East Greer Street, LLC
Kainos Fairview Road, LLC
Kainos Main & Coffee, LLC
Kainos Highway 29, LLC
Kainos 1996 East Main, LLC
Kainos East Greenville Street, LLC
Kainos Boiling Springs, LLC
Kainos West Butler, LLC
Kainos Main Street Simpsonville, LLC
Kainos North Main Street, LLC
Kainos 1131 West Wade Hampton Blvd,
LLC
Kainos 2903 N. Pleasantburg Dr., LLC
Kainos 520 N, US Highway 25, LLC
Kainos 7252 Moorefield Memorial Hwy.,
LLC
Kainos Woodruff Road, LLC

Kainos 411 The Parkway, LLC
Kainos 1551 Laurens Rd., LLC
Kainos 6055 White Horse Rd., LLC
Kainos Calhoun Memorial, LLC
Kainos South Pine, LLC
Kainos Wade Hampton, LLC
Kainos WM Central, LLC
Kainos Farrow Road, LLC
Kainos Main Street Columbia, LLC
Kainos 378 & Sunset LLC
Kainos South Lake Drive, LLC
Kainos Clemson Road, LLC
Kainos Wilson Road, LLC
Kainos Ann & Simmons, LLC
Kainos Boulder & Racetrack, LLC
Kainos Craig & Jones, LLC
Kainos Silverado & Bermuda, LLC
Kainos Clinton CML, LLC
Kainos Lake Mead & Simmons, LLC

By: _____.
    Name:
    Title: _____of each of the
    foregoing entities

**DUNKIN' BRANDS, INC.**

By: _____
Title:

# EXHIBIT A

# DIP LOAN NOTE

Dated as of
March __, 2010

[$_____]

FOR VALUE RECEIVED, the undersigned, and all other parties that become "Companies" from time to time pursuant to the terms of the DIP Financing Agreement (each herein individually a "Company" and collectively, the "Companies"), hereby, jointly and severally, absolutely and unconditionally promise to pay to the order of _____ and its registered assigns (hereinafter "Payee") at the offices of Lender located at 130 Royall Street, Canton, MA 02021 in lawful money of the United States of America and in immediately available funds, the principal amount of [_____Dollars ($_____)], or if different from such amount, the unpaid principal balance of DIP Loans advanced by Payee pursuant to Section 3.1 of the DIP Financing Agreement (as herein defined) as may be due and owing from time to time under the DIP Financing Agreement. A final balloon payment in an amount equal to the outstanding aggregate balance of principal arid interest remaining unpaid, if any, under this Note as shown on the books and records of the Lender shall be due and payable on the termination of the DIP Financing Agreement, as set forth in Section 11 thereof. If Lender submits the highest and best offer for any of the stores included in the assets to be purchased and sold under the Asset Purchase Agreement (as defined in the DIP Financing Agreement), then, upon the consummation of the transactions contemplated in the Asset Purchase Agreement, the Lender shall waive all right to repayment under this Note and shall release the Companies from any repayment obligation with respect to this Note.

The Companies, jointly and severally, further absolutely and unconditionally promise to pay to the order of the Payee and its registered assigns at said office of the Lender, interest, in like money, on the unpaid principal amount owing hereunder from time to time from the date hereof on the dates and at the rates specified in Section 8 of the DIP Financing Agreement.

If any payment on this Note becomes due and payable on a day other than a business day, the maturity thereof shall be extended to the next succeeding business day, and with respect to payments of principal, interest thereon shall be payable at the then applicable rate during such extension. All payments hereunder shall be made without setoff, counterclaim or deduction of any kind.

This Note is one of the Promissory Notes referred to in the DIP Financing Agreement, dated as of March __, 2010, as the same may be amended, restated, supplemented or otherwise modified and in effect from time to time, among the Companies and the Lender (the "DIP Financing Agreement"), and is subject to, and entitled to, all of the terms, provisions and benefits thereof and is subject to optional and mandatory prepayment, in whole or in part, as provided therein. All capitalized terms used herein shall have the meaning provided therefor in the DIP Financing Agreement, unless otherwise defined herein.

The date and amount of the advance(s) made hereunder may be recorded on the grid page or pages which are attached hereto and hereby made part of this Note or the separate ledgers maintained by the Lender.   The aggregate unpaid principal amount of all advances made pursuant hereto may be set forth in the balance column on said grid page or such ledgers maintained by the Lender.   All such advances, whether or not so recorded, shall be due as part of this Note.

The Companies confirm that any amount received by or paid to the Lender in connection with the DIP Financing Agreement and/or any balances standing to its credit on any of its or their accounts on the Lender's books under the DIP Financing Agreement may in accordance with the terms of the DIP Financing Agreement be applied in reduction of this Note, but no balance or amounts shall be deemed to effect payment in whole or in part of this Note unless the Lender shall have actually charged such account or accounts for the purposes of such reduction or payment of this Note.

Upon the occurrence of any one or more of the Events of Default specified in the DIP Financing Agreement or upon termination of the DIP Financing Agreement, all amounts then remaining unpaid on this Note may become, or be declared to be, immediately due and payable as provided in the DIP Financing Agreement.

Kainos Partners Holding Company, LLC
Kainos Partners Buffalo RE Holdings, LLC
Kainos Partners Greenville SC-RE Holdings, LLC
Kainos Partners Las Vegas RE Holdings, LLC
Kainos Vineyard Drive RE, LLC
Kainos Highway 29 RE, LLC
Kainos 1996 East Main RE, LLC
Kainos Wade Hampton RE, LLC
Kainos Clinton CML RE, LLC
Kainos Wilson Road RE, LLC
Kainos Partners Columbia SC, LLC
Kainos Partners Houston, LLC
Kainos Partners Las Vegas, LLC
Kainos Partners Las Vegas, LLC Operating Series -#1
Kainos Partners Las Vegas, LLC Operating Series - #2
Kainos Partners Las Vegas, LLC Operating Series - #3
Kainos Partners Las Vegas, LLC Operating Series - #4
Kainos Partners Las Vegas, LLC Operating Series - #5
Kainos Partners Las Vegas, LLC Operating Series - #6
Kainos Partners Las Vegas, LLC Operating Series - #7
Kainos Partners Las Vegas, LLC Operating Series - #8
Kainos Partners Las Vegas, LLC Operating Series - #9
Kainos Partners Las Vegas, LLC Operating Series-#10
Kainps Partners Las Vegas, LLC Operating Series #11
Kainos Partners Las Vegas, LLC Operating Series-#12
Kainos Partners Las Vegas, LLC Operating Series #13

Kainos Partners Las Vegas, LLC Operating Series #14
Kainos Partners Las Vegas, LLC Operating Series #15
Kainos Partners Las Vegas, LLC Operating Series-#16
Kainos Partners Las Vegas, LLC Operating Series #18
Kainos Partners Las Vegas, LLC Operating Series - #20
Kainos Partners Las Vegas, LLC Operating Series #21
Kainos Partners Las Vegas, LLC Operating Series #24
Kainos Partners Las Vegas, LLC Operating Series - #25
Kainos Partners Las Vegas, LLC Operating Series #28
Kainos Partners Las Vegas, LLC Operating Series #34
Kainos Partners, LLC
Kainos Partners South Carolina, LLC
Kainos Walden-Transit, LLC
Kainos Camp-Southwestern, LLC
Kainos Main Street Jamestown, LLC
Kainos Fairmount, LLC
Kainos Crosspoints LLC
Kainos Main-Bailey, LLC
Kainos Boulevard Mall, LLC
Kainos Union Rd, LLC
Kainos Flix-Transit, LLC
Kainos Walden, LLC
Kainos NF Maple Road, LLC
Kainos Union Road Cheektowaga, LLC
Kainos Broadway Retail,LLC
Kainos Main-Chippewa, LLC
Kainos Transit-Genesee, LLC
Kainos Broadway CML, LLC
Kainos Eggert Road, LLC
Kainos Delaware-Hertel, LLC
Kainos Vineyard Drive, LLC
Kainos Boston State Road, LLC

Kainos Walmart, LLC
Kainos Tiger Boulevard, LLC
Kainos East Main Street, LLC
Kainos East Greer Street, LLC
Kainos Fairview Road, LLC
Kainos Main & Coffee, LLC
Kainos Highway 29, LLC
Kainos 1996 East Main, LLC
Kainos East Greenville Street, LLC
Kainos Boiling Springs, LLC
Kainos West Butler, LLC
Kainos Main Street Simpsonville, LLC
Kainos North Main Street, LLC
Kainos 1131 West Wade Hampton Blvd, LLC
Kainos 2903 N. Pleasantburg Dr., LLC
Kainos 520 N. US Highway 25, LLC
Kainos 7252 Moorefieid Memorial Hwy., LLC
Kainos Woodruff Road, LLC

Kainos 411 The Parkway, LLC
Kainos 1551 Laurens Rd., LLC
Kainos 6055 White Horse Rd., LLC
Kainos Calhoun Memorial, LLC
Kainos South Pine, LLC
Kainos Wade Hampton, LLC
Kainos WM Central, LLC
Kainos Farrow Road, LLC
Kainos Main Street Columbia, LLC
Kainos 378 & Sunset LLC
Kainos South Lake Drive, LLC
Kainos Clemson Road, LLC
Kainos Wilson Road, LLC
Kainos Ann & Simmons, LLC
Kainos Boulder & Racetrack, LLC
Kainos Craig & Jones, LLC
Kainos Silverado & Bermuda, LLC
Kainos Clinton CML, LLC
Kainos Lake Mead & Simmons, LLC

By: _____.
    Name:
    Title: _____of each of the
    foregoing entities

**SCHEDULE TO GRID**

| Date | Loan | Payment | Balance |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| ' |  |  |  |

# **EXHIBIT B**

## Form of Borrowing Notice

<u>**Exhibit B**</u>

<u>Form of Borrowing Notice</u>

_____, 2010

Dunkin' Brands, Inc.
130 Royall Street
Canton, MA 02021
Attn: Kate Lavelle

Ladies and Gentlemen:

      The undersigned Kainos Partners Holding Company, LLC (the "<u>Borrowing Agent</u>"), refers to the DIP Financing Agreement dated as of March ___, 2010 (as amended, supplemented or otherwise modified from time to time, the "<u>DIP Financing Agreement</u>"; capitalized terms used and not otherwise defined herein shall have the meanings given such terms in the Bridge Financing Agreement) among Dunkin' Brands, Inc., as Lender, and the Borrowing Agent and its subsidiaries from time to time party thereto (collectively, the "Companies"), and, on behalf of the Companies, hereby gives you irrevocable notice, pursuant to Section 3.1 of the DIP Financing Agreement, that the Borrowing Agent hereby requests a DIP Loan as set forth below.

      1.    <u>Requested DIP Loan</u>.

      (a)    The undersigned Borrowing Agent requests that the requested DIP Loan be in the aggregate amount of $ _____.

      (b)    The undersigned Borrowing Agent requests that the requested DIP Loan be made on the following Business Day:_____, 2010 which day is at least two (2) Business Days following the date of this notice.

      2.    <u>Certifications</u>.  The undersigned Borrowing Agent hereby certifies to the Lender that the following statements will be true and correct on the date that the requested DIP Loan is made:

      (a)    All DIP Loans previously requested by the Borrowing Agent on behalf of the Companies have been applied in accordance with the budget and uses for such DIP Loans previously presented to the Lender.

      (b)    The DIP Loans requested in this Borrowing Notice shall be used in accordance with the budget and uses set forth on the attached Schedule 1.

      (c)    The representations and warranties contained in the DIP Financing Agreement and the other DIP Loan Documents are true and correct in all material respects, other than representations and warranties that expressly relate solely to an earlier date (in which case they were true and correct on and as of such earlier date).

(d)     No Default or Event of Default has occurred and is continuing or would result from the requested DIP Loan.

The undersigned understands that the Lender is relying on the foregoing certification in making the requested DIP Loan to the Borrowing Agent on behalf of the Companies and to induce the Lender to make the requested DIP Loan.  In addition, the undersigned understands that the Lender has sole discretion in deciding whether to make all or any portion of the requested DIP Loan as set forth in the DIP Financing Agreement, and the making of the request and certification above by the Borrowing Agent does not obligate the Lender to make the requested DIP Loan.

KAINOS PARTNERS HOLDING COMPANY, LLC

By:_____
    Name:
    Title:

## SCHEDULE 1 TO BORROWING NOTICE

### Budget and Uses for Requested DIP Loan

Funding 1

| Kainos Entity/ Store Name | PC# | Vendor/Payee | Invoice # | Amount to Pay | Use |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

Funding 2

| Kainos Entity/ Store Name | PC# | Vendor/Payee | Invoice # | Amount to Pay | Use |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

Funding 3

| Kainos Entity/Store Name | PC# | Vendor/Payee | Invoice # | Amount to Pay | Use |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

## Schedule 1

## Permitted Encumbrances

| PC# | Address | City | ST | Claimant/Creditor | Date Entered | Case or Court # | Lien Amount |
|---|---|---|---|---|---|---|---|
| 346571 | 11710 W. Charleston Blvd. | Las Vegas | NV | Tile Masters Inc./KWM Construction | 1/2/09 | 20090102-0000306 | $6,500.00 |
| 347434 | 7430 Las Vegas Blvd S. | Las Vegas | NV | Garrett Master Probuild | | | $1,090.92 |
| 346516 | 1068 Tiger Boulevard | Clemson | SC | Hilton Displays, Inc. | 4/20/09 | | $3,763.50 |
| 345679 | 1827 E. Greenville St. | Anderson | SC | Progressive Builders, Inc. | 5/12/09 | 2009-CP-04-01951 | $214,749.00 |
| 346538 | 697 Fairview Rd. | Simpsonville | SC | Progressive Builders, Inc. | 5/12/09 | 2009-CP-23-4083 | $78,002.00 |
| 345717 | 5073 Camp Road | Hamburg | NY | Kulback's Construction, Inc./Lutz Brothers, Inc. | 2/12/09 | | $64,902.00 |
| 345717 | 5073 Camp Road | Hamburg | NY | Lutz Brothers, Inc. | 5/27/09 | Notice of Mechanic Lien | see above |
| 346342 | 2930 North Main St. | Jamestown | NY | Kulback's Construction, Inc./Lutz Brothers, Inc. | 2/18/09 | | $15,961.00 |

Total: **$384,968.42**

## Schedule 2

**Projected Operating Budget and DIP Loans**