UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

---------------------------------------------------------X
In re:                                            Chapter 11

KAINOS PARTNERS HOLDING                           Case No. 09-12292 (BLS)
COMPANY, LLC, *et al.*,                           Jointly Administered

             Debtors.                             **Re: Docket No. 457 and 475**
---------------------------------------------------------X

## AMENDED[1] INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 364 AND 507: (1) APPROVING POSTPETITION FINANCING; (2) PROVIDING SUPERPRIORITY EXPENSE STATUS; AND (3) SCHEDULING A FINAL HEARING

THIS MATTER having come before the Court upon the motion (the "Motion")[2] of Kainos Partners Holding Company, LLC, and its affiliated debtors and debtors-in-possession (each a "Debtor" and collectively the "Debtors") in the above captioned cases (the "Cases") requesting an interim order authorizing (A) the Debtors to enter into a debtor-in-possession financing facility with Dunkin' Brands, Inc. ("Dunkin'"); (B) providing superpriority administrative expense status in connection with a second debtor-in-possession financing pursuant to 11 U.S.C. § 364(c) (the "Second DIP Loan"); and (C) scheduling a final hearing with respect to the relief requested herein pursuant to Federal Rule of Bankruptcy Procedure 4001 seeking entry of the Final Order.

## THE COURT HEREBY FINDS BASED ON THE RECORD MADE AT THE INTERIM HEARING, THAT:[3]

---

[1] This Amended Interim Order Pursuant to 11 U.S.C. §§ 105, 364 and 507: (1) Approving PostPetition Financing; (2) Providing Superpriority Expense Status; and (3) Scheduling a Final Hearing replaces Docket Item 475, the Interim Order Pursuant to 11 U.S.C. §§ 105, 364 and 507: (1) Approving PostPetition Financing; (2) Providing Superpriority Expense Status; and (3) Scheduling a Final Hearing.

[2] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

A.   On July 6, 2009 (the "Petition Date") the Debtors filed voluntary petitions for reorganization pursuant to Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") and the Cases have been consolidated procedurally for administrative purposes, and the Debtors have continued in possession of their assets and in the management of their businesses pursuant to sections 1107 and 1108 of the Bankruptcy Code, and no trustee or examiner has been appointed in these cases.

B.   The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. §157(b)(2). The statutory predicates for the relief sought herein are sections 105, 364 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002 and 4001 and the Local Bankruptcy Rules. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.   On July 17, 2009, the Office of the United States Trustee for the District of Delaware (the "US Trustee") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "Committee").

D.   The Debtors have applied to the Court for authority pursuant to Bankruptcy Code sections 364(c), to obtain debtor-in-possession financing from Dunkin' pursuant to the terms and conditions of (a) the proposed Second DIP Loan Agreement annexed as Exhibit "A" to this Order, (b) the budget annexed as Exhibit "B" to this Order and all extensions thereof agreed to in furtherance thereof (as modified and/or extended from time to time by agreement of the Debtors and Dunkin', the "Budget") and (c) this Order (collectively, the Second DIP Loan Agreement, the Budget and this Order shall be referred to hereinafter as the "Second DIP Loan Financing Documents").

E. An immediate need exists for the Debtors to obtain funds and financial accommodations with which to continue their ordinary course operations, meet their payroll and other necessary, ordinary course business expenditures, acquire goods and services, and administer and preserve the value of the estates. The ability of the Debtors to finance their operations requires the availability of additional working capital, the absence of which would immediately and irreparably harm the Debtors, their estates and their creditors. It is vital that the Debtors maintain the ability to finance their operations in order to preserve and maintain their going concern value.

F. The Debtors are unable to obtain unsecured credit under sections 503(b)(1), 364(a) and (b) of the Bankruptcy Code and are only able to obtain unsecured credit under section 364(c) of the Bankruptcy Code under the terms and conditions set forth in this Order and in the Second DIP Loan Financing Documents.

G. The interim relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of their properties.

H. It is in the best interest of the Debtors' estates to be authorized to borrow under the Second DIP Loan contemplated by the Second DIP Loan Financing Documents on an interim basis.

I. The terms and conditions of the Second DIP Loan are fair and reasonable and the best available under the circumstances and reflect the Debtors' prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

J. The Second DIP Loan Financing Documents were negotiated in good faith and at arm's length between the Debtors, on the one hand, and Dunkin' on the other hand. Credit to be extended under the Second DIP Loan will be so extended in good faith, in consequence of which Dunkin' is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

K. The Debtors have admitted, represented and stipulated to the Court, the following (collectively, the "Admissions"):

(a) Dunkin' is willing to make loans, advances and other financial accommodations to the Debtors pursuant to the terms of the Second DIP Loan Financing Documents only upon the conditions contained in this Order;

(b) the Debtors are unable to obtain sufficient levels of unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense necessary to maintain and conduct their businesses; and

(c) the Debtors reasonably and in good faith believe that the loans, advances and financial accommodations to be obtained from Dunkin' pursuant to this Order and the final order sought by the Debtors in furtherance of this Order (the "Final Order") are sufficient to fund all projected legitimate and allowable expenses of their Chapter 11 Cases from March 1, 2010 through the Closing Date.

L. Due and appropriate notice of relief sought by the Motion and the hearings with respect to this Order, was given by electronic mail, facsimile and/or overnight delivery to the following parties, or, in lieu thereof, their counsel: (i) the Office of the United States Trustee; (ii) the Counsel to the Committee; (iii) Counsel to CIT; (iv) Counsel to KIP II; (v) Counsel to PCEP; (vi) Counsel to Dunkin'; and (vii) those parties requesting notice pursuant to Bankruptcy Rule 2002. Such notice constitutes good and sufficient notice of the Motion and hearings under

the circumstances in accordance with Bankruptcy Rules 4001(b), 4001(c), the Local Bankruptcy Rules and section 102(1) of the Bankruptcy Code as required by section 364(c) of the Bankruptcy Code in light of the emergency nature of the relief requested in the Motion.

NOW THEREFORE, the Court having considered the Second DIP Loan Financing Documents, the Motion and the evidence submitted at the interim hearing with respect to the Motion on March 1, 2010 (the "Interim Hearing"); and in accordance with Rules 2002, 4001(b), (c), and (d), and Rule 9014 of the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, due and proper notice of the Motion and Interim Hearing having been held and concluded on March 1, 2010; and it appearing that approval of the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Order and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and their creditors, and is essential for the continued operation of the Debtors' businesses; and all objections, if any, to the entry of this Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefore,

IT IS ORDERED that:

1. The Motion and the terms and conditions of the Second DIP Loan Financing Documents are hereby approved on an interim basis and the Debtors are authorized to (a) borrow funds and obtain extensions of credit up to $500,000 from Dunkin' pursuant to the terms and conditions of the Second DIP Loan Financing Documents pending the Final Order, (b) enter into the Second DIP Loan; (c) execute and deliver each of the Second DIP Loan Financing Documents; and (d) use the proceeds of the Second DIP Loan in a manner consistent with the Second DIP Loan Financing Documents for (I) working capital; (II) other general corporate

purposes of the Debtors; (III) payment of any related transaction costs, fees and expenses; and (IV) the costs associated with the administration of the Cases; provided however, nothing contained in this Order or the Second DIP Loan Financing Documents shall permit the use of the proceeds of the Second DIP Loan to fund amounts other than in accordance with the Budget (all borrowings and extensions of credit collectively, the "Second DIP Loan Obligations").

2. The Debtors are hereby authorized and directed to do and perform all acts and to make, execute and deliver all instruments and documents that may be required or necessary for the performance by the Debtors under the Second DIP Loan Financing Documents.

3. Dunkin' is hereby granted jointly and severally against each of the Debtors' estates, an allowed superpriority administrative claim, which shall have priority in payment over all administrative expenses or charges against property arising under 503(b) or 507(b), subordinate only to the Initial Superpriority Claims (as defined in the Motion).

4. The Debtors shall be permitted to pay compensation and make reimbursement of expenses, allowed pursuant to Bankruptcy Code §§ 330 and 331 and incurred prior to the occurrence of an Event of Default or the occurrence of the Expiration Date as defined in the Second DIP Loan Financing Documents, to the Debtors' Professionals and the Committee's Professionals, to the extent set forth in the Budget.

5. Effective, *nunc pro tunc* to the date of this Interim Order, upon the entry of a Final Order providing for such relief (if authorized), no entity shall be permitted to assert against Dunkin' any claim with respect to any unpaid administrative expense of the Debtors' bankruptcy cases, whether or not the Debtors' payment of such administrative claim was contemplated by or included in the Budget and otherwise consistent with the Initial DIP Loan Final Order (as defined in the Motion).

6. So long as there are any outstanding indebtedness owed to Dunkin' under the terms of the Second DIP Loan Financing Documents, unless Dunkin' shall have given its prior written consent, or the Court enters an order, upon proper notice to Dunkin' and after a hearing, requiring that all of the Second DIP Loan Obligations be immediately satisfied in full, there shall not at any time be entered in the Debtors' Chapter 11 cases any further orders which authorize the obtaining of credit or the incurring of indebtedness pursuant to Bankruptcy Code sections 364(c) or 364(d), or any other grant of rights against the Debtors and/or their estates, entitled to priority administrative status which is equal or superior to that granted to Dunkin' pursuant to this Order and the Final Order.

7. Each of the following shall constitute an "Event of Default" for purposes of this Order:

(a) the Court enters an order granting relief from the automatic stay to a third party with respect to material assets of the Debtors' estates;

(b) the Debtors cease operations of their present businesses or take any material action for the purpose of effecting the foregoing without the prior written consent of Dunkin', except to the extent contemplated by the Budget;

(c) this Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of Dunkin', materially and adversely affect the rights of Dunkin' hereunder or shall materially and adversely affect the priority of any or all of the Second DIP Loan Obligations;

(d) the occurrence of an Event of Default under the Second DIP Loan Financing Documents;

(e)   (1) the Debtors expend any funds or monies for any purpose other than those set forth on the Budget, (2) the Debtors expend any funds or monies in excess of the amounts authorized in the Budget, provided that for the cumulative Budget periods which have occurred the Debtors' actual cash disbursements may be up to five percent (5%) more than the cumulative budgeted amount for cash disbursements through the conclusion of such Budget periods without such expenditures constituting an Event of Default, and/or (3) the Debtors fail to achieve revenues of at least ninety-five percent (95%) of the revenue projections set forth in the Budget for the cumulative Budget periods which have occurred, tested weekly thereafter on a four week trailing basis;

(f)   the occurrence of a material adverse change, including without limitation any such occurrence resulting from the entry of any order of the Court, in each case as determined by Dunkin' in its sole and absolute discretion, in (1) the condition (financial or otherwise), operations, assets, business or business prospects of the Debtors, and/or (2) the Debtors' ability to repay the Second DIP Loan Obligations;

(g)   any material and/or intentional misrepresentation by the Debtors in any financial reporting or certifications to be provided by the Debtors to Dunkin' in connection with the Second DIP Loan Financing Documents; and

(h)   non-compliance or default by the Debtors with any of the terms and provisions of this Order; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtors within three (3) business days after notice of such non-compliance or default is given to the Debtors by Dunkin'.

8. Upon the occurrence of an Event of Default and the expiration of the Remedy Notice Period (defined below) after written notice of an Event of Default has been given by Dunkin' to the Noticed Parties (which notice may be given facsimile or e-mail transmission, the automatic stay being deemed lifted for such purpose) (the "Default Notice"), or upon the occurrence of the Expiration Date:

(a) Dunkin' shall have no obligation to make any further loans, advances and/or other financial accommodations to the Debtors;

(b) with respect to an Event of Default as to which a Default Notice has been given, the Noticed Parties shall have three (3) business days from the receipt of the Default Notice (the "Remedy Notice Period") to obtain an order of the Court on notice to Dunkin' enjoining or restraining Dunkin' from exercising rights and remedies based upon the Event of Default specified in the Default Notice ("Restraint on Remedies") and/or other appropriate relief from the Court; and

(c) (i) with respect to an Event of Default as to which a Default Notice has been given, immediately upon expiration of the Remedy Notice Period, unless a Restraint on Remedies has timely been obtained from the Court, or (ii) immediately upon the occurrence of the Expiration Date (defined below), the payment of any and all Second DIP Loan Obligations of the Debtors to Dunkin' shall be due and payable, and Dunkin' shall have the right, free of the restrictions of Bankruptcy Code section 362 or under any other section of the Bankruptcy Code, to exercise contractual, legal and equitable rights and remedies as to impose an "administrative freeze" with respect to, and thereafter set off, the Debtors' cash on deposit at or within their control, against the Debtors' Second DIP Loan Obligations.

9. The Debtors shall provide Dunkin' with such written reports as are required under the Second DIP Loan Financing Documents. In addition, the Debtor shall provide Dunkin' with such additional written reports as Dunkin' in its reasonable discretion shall require. All written reports provided by the Debtors to Dunkin' shall be certified by an officer of the Debtors acceptable to Dunkin' to be accurate to the best of such officer's knowledge, information and belief.

10. Nothing in this Order shall preclude the Court from entering a final order containing provisions inconsistent with or contrary to the provisions of this Order; provided however, that Dunkin' shall be entitled to the benefits and protections of this Order, including the protections afforded pursuant to Bankruptcy Code section 364(e), with respect to all loans, advances and/or financial accommodations made by Dunkin' to or for the benefit of the Debtors pursuant to this Order. Pursuant to the provisions of Bankruptcy Code § 364(e), the superpriority claim in favor of Dunkin on account of the Second DIP Loan Obligations shall be binding on the Debtors or any successor trustee or trustees to the extent of monies advanced consistent with its terms unless a stay is obtained, even if this Order is reversed or modified on appeal.

11. This Order shall be binding upon and inure to the benefit of Dunkin', the Debtors and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code.

12. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order. Specifically, pursuant to this Order, the fourteen-day automatic stay period of Bankruptcy Rule

6004 is expressly inapplicable to this Order and the transactions, including, without limitation, transfers contemplated hereby, and accordingly, this Order shall become operative immediately upon entry on the docket.

13. The provisions of this Order and any actions taken pursuant to this Order shall, to the extent permitted by applicable law, survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting this bankruptcy case from Chapter 11 to Chapter 7 of the Bankruptcy Code. The terms and provisions of this Order, as well as the claims granted by this Order, shall (to the extent permitted by applicable law) continue in these or any successor case under the Bankruptcy Code and shall continue notwithstanding any dismissal of the Debtors' Cases, and such claims shall maintain their priority as provided by this Order until the Second DIP Loan Obligations are satisfied in full.

14. To the extent that any of the provisions of this Order shall conflict with any of the provisions of the Second DIP Loan Financing Documents, this Order is deemed to control and shall supersede the conflicting provision(s). To the extent that any of the provisions of this Order shall conflict with any order of the Court authorizing the Debtors to continue the use of pre-petition bank accounts, cash management systems and/or business forms, or any similar orders, then this Order is deemed to control and supersede the conflicting provision(s) in said orders.

15. Notwithstanding any other provision of this Order or the Second DIP Loan Financing Documents, nothing in this Order alters, amends, or otherwise modifies the parties' rights and obligations under the Initial DIP Loan Final Order or Dunkin's rights or obligations as an Initial DIP Lender thereunder.

16. Dunkin' and the Debtors may amend, modify or supplement any of the provisions of the Second DIP Loan Financing Documents (collectively, a "Modification") without further order of the Court, provided that (a) such Modification is not material, and (b) notice of such Modification is filed with the Court and given to the Committee's, the DIP Lenders', and the US Trustee's counsel at least two (2) business days prior to the proposed effective date thereof, except that filing with the Court shall not be required with respect to any Modification that in addition to being non-material is also technical and/or ministerial. The foregoing provisions shall not apply to any forbearance or waiver by Dunkin' with respect to any Events of Default which may have occurred (and the foregoing provisions shall not limit or impair Dunkin's absolute discretion to agree to such forbearance or waiver), provided that such forbearance or waiver is not itself conditioned upon the Debtors' agreeing to any Modification that is material.

17. The Debtors' authorization to obtain loans, advances and/or other financial accommodations from Dunkin' shall be in effect for the period commencing March 1, 2010 through and including April 1, 2010 (the "Expiration Date"). Notwithstanding anything to the contrary set forth in the preceding sentence, if a final order approving the Motion, accompanied by a Budget, both acceptable to Dunkin' in its sole and absolute discretion, has not been entered by the Court by the third business day following the date of this Interim Order or such later date as is acceptable to Dunkin' in its sole and absolute discretion (the "Interim Expiration Date"), then the Expiration Date shall be the Interim Expiration Date.

18. A final hearing with respect to the Motion is scheduled for March 31, 2010 at 9:00 a.m. (the "Final Hearing"). The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with the Court and

to Counsel for the Committee. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Reed Smith LLP, 1201 North Market Street, Suite 1500, Wilmington, DE 19801 attn: Kathleen A. Murphy, Esq. counsel to the Debtors; (b) Reed Smith LLP, 599 Lexington Avenue, New York, NY 10022, attn: Andrew Rahl, Jr. Esq., counsel to the Debtors; (c) Hahn & Hessen LLP, 488 Madison Avenue, 141" Floor, New York, New York 10022, attn: Rosanne Thomas Matzat, Esq. counsel for CIT; (d) Morris James LLP, 500 Delaware, Ste. 1500, Wilmington, Delaware 19801, attn: Stephen M. Miller, Esq. , co-counsel to CIT, (e) Ropes & Gray, LLP, One International Plaza, Boston, Massachusetts 02110, attn: Don S. De Amicis, Esq. counsel for Dunkin'; (f) PCEP II Kainos Investment Partners II, LLC, One Bridge Plaza, Suite 695, Fort Lee, New Jersey 07024, attn: Bradley R. Goldman, Esq., counsel for PCEP; and (g) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, attn: Joseph J. McMahon, Jr. and which objections shall be filed with the Clerk of the Court, in each case so as to be received no later than 12:00 p.m. (Eastern Time) on March 26, 2010.

SO ORDERED by the Court this 4th day of March, 2010

_____
UNITED STATES BANKRUPTCY JUDGE