## Exhibit A

## BIDDING PROCEDURES FOR
## AUCTION OF THE STORES AND RELATED ASSETS

The following bidding procedures shall apply in connection with counteroffers for certain assets of Kainos Partners Holding Company LLC (the "Purchased Assets"), including certain leases (the "Assumed Leases") and executory contracts (the "Assumed Executory Contracts"), as described in the Term Sheet dated February 24, 2010 among the Debtors, Dunkin' Brands, Inc., Kainos Investment Partners II, LLC, PCEP II KPHC Holdings, Inc., and CIT Group/Equipment Financing, Inc. (the "Term Sheet"), and other specifications which shall be reflected in an Asset Purchase Agreement between the Debtors and Dunkin' Brands, Inc. or its designee ("Buyer") to be filed with the Court no later than March 8, 2010:[1]

1. Any counteroffer or bid for any of the Purchased Assets (a "Competing Agreement") shall comply with the following requirements, which may not be waived by the Debtors:

    1.1. Any Competing Agreement shall:

        1.1.1. constitute an offer to purchase substantially all of the Purchased Assets, including but not limited to an offer to have assumed and assigned to the bidder substantially all of the Assumed Leases and Assumed Executory Contracts (other than any store development agreement, except as specified herein); provided that a Competing Agreement may be, in the case of a franchisee of Buyer that is in good standing and currently approved by Buyer for expansion (a "Qualified Franchisee"), for less than all or substantially all of the Purchased Assets and instead may be for the purchase of one or more stores located in each of the South Carolina, Buffalo, New York, and Las Vegas, Nevada markets (each a "Territory"), at a purchase price equal to or greater than a price that Buyer will specify to the Debtors for each individual store located within a Territory, in aggregate amount not to exceed $5,000,000; provided further, that a Qualified Franchisee may purchase a store development agreement for or within a Territory if, and only if, the Qualified Franchisee is the successful bidder for such Territory; provided further, that to the extent a Qualified Franchisee is a successful bidder, Dunkin' or its affiliates will enter into a new franchise agreement with such Qualified Franchisee covering such store or Territory and any existing franchise agreement with the Debtors for such store or Territory will be deemed rejected as of the Closing; provided further, that Qualified Franchisees may acquire certain stores only if the Competing Agreement constitutes an offer to purchase the entire Territory within which the store is located, such list of stores to be

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the order approving these bidding procedures.

available upon request to counsel to Buyer, Ropes & Gray LLP, One International Place, Boston, MA 02110-2624, Attn: Don S. De Amicis.

    1.1.2. provide for a purchase price with a minimum cash component payable at closing of at least $3,510,000;

    1.1.3. specify that it is not contingent upon financing or the completion of any due diligence;

    1.1.4. provide for a closing on or prior to April 1, 2010;

    1.1.5. be in writing and be served on counsel to the Debtors, Reed Smith LLP, 1201 Market Street Suite 1500, Wilmington, DE 19801, Attn: Kathleen A. Murphy; and (ii) counsel to Buyer, Ropes & Gray LLP, One International Place, Boston, MA 02110-2624, Attn: Don S. De Amicis, <u>so as to be received</u> on or before 12:00 noon (Prevailing Eastern Time) on March 26, 2010 (the "<u>Bid Deadline</u>"); and

    1.1.6. be accompanied by (i) a deposit in the amount of 10% of the initial purchase price, delivered to Reed Smith LLP, by certified or cashier's check or wire transfer, so as to be received on or before March 26, 2010; (ii) an executed asset purchase agreement (the "<u>Competing Agreement</u>") in the form of the Dunkin' Purchase Agreement and executed copies of all other transaction documents necessary to effect the proposed transaction (including all schedules) and a copy of the Dunkin' Purchase Agreement marked to show all changes requested by the bidder (including those related to purchase price); (iii) an executed confidentiality agreement; and (iv) written evidence of a commitment for financing or other evidence of the party's ability to consummate the transaction, pay the purchase price in cash at the Closing, and provide adequate assurance of future performance of any executory contracts and unexpired leases to be assumed and assigned by such bidder.

1.2. The entity submitting a Competing Agreement shall enter into joint escrow instructions with the Debtors and Reed Smith LLP regarding the deposit delivered in connection with such Competing Agreement.

1.3. The Competing Agreement must contain substantially all of the material terms and conditions of the Dunkin' Purchase Agreement; <u>provided</u> that any variation in such terms must be, in the aggregate, not materially more burdensome to the Debtors than the terms and conditions contained in the Dunkin' Purchase Agreement.

1.4. Any entity submitting a Competing Agreement shall demonstrate to the Debtors' satisfaction, in the Debtors' sole discretion exercised in good faith, that such entity is able to consummate the transaction on the date and on the terms contemplated by the Competing Agreement.

2. An auction (the "Auction") for the Purchased Assets will be conducted by the Debtors at the offices of their counsel, Reed Smith LLP, 599 Lexington Avenue, New York, New York 10022, on March 30, 2010, at 10:00 a.m. (Prevailing Eastern Time), or at such other date and time as determined by the Debtors in their sole discretion. The Debtors will send notice by electronic mail to the Core Notice Parties and counsel to any entity that has submitted a Competing Agreement if the date, time, or place of the Auction changes.

   2.1. The Debtors and their professionals will direct and preside over the Auction.

   2.2. The Debtors shall maintain a transcript of all bids made and announced at the Auction.

   2.3. Each bidder participating at the Auction will certify on record at the commencement of the Auction that it has not and will not engage in any collusion with respect to the bidding or the sale.

   2.4. The Debtors will continue the Auction until there is only one bid that the Debtors determine in their sole discretion, exercised in good faith and after consultation with CIT and PCEP, is the highest or otherwise best bid for the Purchased Assets.

   2.5. Each bid at the Auction subsequent to the opening bid of Buyer pursuant to the Dunkin' Purchase Agreement must comply with the requirements for a Competing Agreement set forth herein and have a purchase price in an amount at least $10,000 greater than the preceding bid.

3. A hearing to consider approval of the sale to Buyer pursuant to the Dunkin' Purchase Agreement or another bidder submitting a higher and better offer at the Auction and any objections to such sale will be held on March 31, 2010, at 9:00 a.m. (Prevailing Eastern Time) at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, Sixth Floor, Courtroom 1.

24336693_5.DOC