UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | |
| | | Chapter 11 |
| KAINOS PARTNERS | : | |
| HOLDING COMPANY LLC, *et al.*, | | |
| | : | Case Number 09-12292 (BLS) |
| Debtors. | | (Jointly Administered) |
| | : | |

**OBJECTION OF THE UNITED STATES TRUSTEE TO (I) THE
DEBTORS' MOTION FOR AN ORDER APPROVING AND AUTHORIZING SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS TO THE HIGHEST AND BEST
BIDDER(S) FREE AND CLEAR OF ALL LIENS, INTERESTS, CLAIMS AND
ENCUMBRANCES PURSUANT TO SECTIONS 105, 363 AND 365 OF THE
BANKRUPTCY CODE AND (II) THE JOINT MOTION OF THE OFFICIAL
COMMITTEE OF THE UNSECURED CREDITORS AND THE DEBTORS PURSUANT
TO 11 U.S.C. § 105(a) AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019
FOR AN ORDER APPROVING THE GLOBAL SETTLEMENT BETWEEN AND
AMONG THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, THE
DEBTORS, DUNKIN' BRANDS, INC., DUNKIN' DONUTS FRANCHISING, INC., DBI
STORES LLC, DUNKIN' DONUTS FRANCHISED RESTAURANTS, LLC, CIT
GROUP/EQUIPMENT FINANCING, INC., KAINOS INVESTMENT PARTNERS I,
LLC, KAINOS INVESTMENT PARTNERS II, LLC,
AND PCEP II KPHC HOLDINGS, INC.
(DOCKET ENTRY #s 455, 516)**

In support of her objection to (i) the Debtors' motion for an order approving and authorizing

the sale of substantially all of the Debtors' assets to the highest and best bidder(s) free and clear of

all liens, interests, claims and encumbrances pursuant to sections 105, 363 and 365 of the

Bankruptcy Code and (ii) the joint motion of the Official Committee of Unsecured Creditors and the

Debtors pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 9019 for an order

approving the global settlement between and among the Official Committee of Unsecured Creditors,

the Debtors, Dunkin' Brands, Inc., Dunkin' Donuts Franchising, Inc., DBI Stores LLC, Dunkin'

Donuts Franchised Restaurants, LLC, CIT Group/Equipment Financing, Inc., Kainos Investment Partners I, LLC, Kainos Investment Partners II, LLC, and PCEP II KPHC Holdings, Inc. (together, the "Motions"), Roberta A. DeAngelis, Acting United States Trustee for Region 3 ("U.S. Trustee"), by and through her counsel, avers:

## PRELIMINARY STATEMENT[1]

Approval of the Motions should be conditioned upon claimants and creditors senior in priority to the Committee's constituency (general unsecured creditors) receiving the treatment provided for their respective claims pursuant to 11 U.S.C. § 1129.

The Term Sheet provides, *inter alia*, that if Dunkin' Brands, Inc. or its designee ("Dunkin'") is the successful bidder for one or more stores and the Official Committee of Unsecured Creditors (the "Committee") supports the transaction, Dunkin' will assign to the estate for the benefit of (i) non-lender general unsecured creditors and (ii) unpaid fees and expenses of Committee professionals in excess of $125,000, its right to repayment of $250,000 of the CML Subsidy Loans and CML Subsidy Loan Obligations (as such terms are defined in that certain Amended and Restated DIP Financing, Ratification and Intercreditor Agreement) (the "Carve-Out").

The Committee cannot sell its procedural right to challenge the sale and/or the right(s) to assert claims and causes of action owned by the Debtors' estates against Dunkin' or any non-Debtor party for the payment of cash or other consideration to general unsecured creditors that may be inconsistent with the treatment that a plan proponent is obligated to give to claimants and creditors senior in priority to the Committee's constituency. The rights of the Committee and other parties

---

[1]

Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion and relevant accompanying documents.

in interest to object to asset sales under section 363 of the Bankruptcy Code on, *inter alia*, good faith grounds are designed to protect the estates' interests in the integrity of the sale process. Such rights were not intended to be used by creditors to obtain cash payments from purchasers and/or debtors in exchange for the withdrawal of sale objections. Similarly, the Committee has no right to liquidate estate property (specifically, claims and causes of action owned by the Debtors' estates against Dunkin' or any other non-Debtor party) for the benefit of its constituency at the expense of claimants and creditors senior in priority.

Unless the Court conditions approval of the settlement upon claimants and creditors senior to general unsecured creditors being made whole, the proposed settlement should be rejected per *Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996). Under *Martin*, a proposed settlement under Federal Rule of Bankruptcy Procedure 9019 which unfairly favors one creditor constituency over another should be denied. If the Committee successfully litigated the rights, claims or challenges that are being compromised, such litigation would have resulted in either (i) this Court's rejection of the sale, (ii) an increase in the purchase price payable to the Debtors' estates, and/or (iii) judgment in favor of Dunkin', another non-Debtor party, or the Debtors' estates. Under no circumstances would the Committee be entitled to a cash payment for the benefit of general unsecured creditors as a remedy. Therefore, the Committee should not be permitted to accomplish by means of settlement what it cannot do by litigating the matter at issue and/or by proposing a chapter 11 plan – that is, move its constituency ahead of allowed administrative and unsecured priority creditors in priority of distribution.

## INTRODUCTION

1.      Under (i) 28 U.S.C. § 1334, (ii) (an) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motions and this objection.

2.      Under 28 U.S.C. § 586(a)(3), the U.S. Trustee is generally charged with enforcing the laws as written by Congress and interpreted by the courts.   *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the UST as a "watchdog").

3.      Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Motions and the issues raised in this objection.

## GROUNDS/BASES FOR RELIEF

4.      The Term Sheet embodying the proposed sale terms provides, *inter alia*, that if Dunkin' is the successful bidder for one or more stores and the Committee supports the transaction, Dunkin' will assign the Carve-Out to the estate for the benefit of (i) non-lender general unsecured creditors and (ii) unpaid fees and expenses of Committee professionals in excess of $125,000.

5.      Based upon information and belief, the U.S. Trustee avers that there may be unpaid administrative and unsecured priority claims on the date the sale is projected to close.  Further, the Debtors' intentions with respect to prosecuting and confirming a chapter 11 plan are unclear.

*The Committee Cannot Monetize Its Sale Objection or Estate Claims/Causes of Action for the Benefit of General Unsecured Creditors at the Expense of Priority Claimants/Creditors*

6. 11 U.S.C. § 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1). In considering a proposed sale under 11 U.S.C. § 363(b)(1), this Court "is required to make a finding with respect to the 'good faith' of the purchaser." *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149-50 (3d Cir. 1986). The "good faith" finding requirement ". . . ensures that section 363(b)(1) will not be employed to circumvent the creditor protections of Chapter 11 and, as such, it mirrors the requirement of section 1129 that the bankruptcy court independently scrutinize the debtor's reorganization plan and make a finding that it 'has been proposed in good faith and not by any means forbidden by law.'" *Id.* at 150 (internal citations omitted). If the bankruptcy court is unable to make the "good faith" finding, it must determine whether the purchaser paid "value" for the assets. *See id.* at 151. If the purchaser did not pay "value," the sale should be disapproved. *See id.*

7. The movants' settlement is premised upon the misguided argument that the Committee is entitled to trade its sale objection for a cash payment to general unsecured creditors. The Committee's procedural, Bankruptcy Code-granted right(s) to challenge a proposed sale under 11 U.S.C. § 363(b) is/are not the Committee's personal property and, accordingly, such right(s) may not be liquidated for its own benefit. Rather, the Committee's right(s) to challenge a sale under section 363(b) inure to the benefit of the Debtors' estates and, as such, are essentially analogous to estate property (if such rights are not, in fact, estate property). Therefore, it is presumptively unreasonable for the Committee's constituency to receive a cash payment in exchange for the settlement of rights that belong to, and are exercised for the benefit of, the Debtors' estates.

8.     At bottom, adoption of the movants' position opens the door to unwieldy, costly sale processes where each and every party in interest, regardless of whether it is out of the money, is entitled to exact its price for silence. Landlords, equity security holders, and others will step forward and demand to be paid in exchange for backing off. Additionally, bankrupt estates will undoubtedly suffer as a result, as purchasers and other entities will profit from paying certain "well-heeled" parties in interest to insulate questionable deals from scrutiny.

9.     With regard to estate claims and causes of action against Dunkin', the Committee's constituency has no independent right to claim property of the Debtors' estates under 11 U.S.C. § 541(a) as its own. Rather, unpaid administrative claimants and priority unsecured creditors have a superior right to general unsecured creditors to the proceeds from liquidation of estate property.

Martin *Dictates That the Proposed Settlement Should Be Rejected*

10.     If this Court evaluates the settlement memorialized in the term sheet as a settlement under Federal Rule of Bankruptcy Procedure 9019(a), the proposed settlement should be rejected absent the conditions proposed by the U.S. Trustee. In *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996), the United States Court of Appeals for the Third Circuit identified four criteria that this Court should consider in evaluating a proposed settlement of estate claims: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." The *Martin* criteria are "designed to achieve the objective of having the trustee or debtor in possession act in the best interests of the estate." *In re Nationwide Sports Distribs., Inc.*, 227 B.R. 455, 460 (Bankr. E.D. Pa. 1998) (citation omitted). The trustee or debtor in possession bears the burden of persuasion to prove that the settlement is in the estate's best

interests. *See id.* (citations omitted).

11. In considering the fourth *Martin* factor – the "paramount interest of the creditors" – courts in the Third Circuit have taken the practical approach of (i) identifying the parties affected by the proposed settlement and (ii) assessing what effect the settlement has on their interests. *See In re Louise's, Inc.*, 211 B.R. 790, 801 (D. Del. 1997) (rejecting proposed compromise under Rule 9019 as a "disguised" plan of reorganization); *In re Key3Media Group, Inc.*, 336 B.R. 87, 98 (Bankr. D. Del. 2005) (noting the position of secured creditors with regard to compromise of estate claims subject to liens); *see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002) (noting that, on remand, bankruptcy court should consider proposed settlement's impact on equity security holders, given that unsecured creditors were paid in full). In fulfilling its gatekeeping role under *Martin*, this Court is obligated to reject settlements which favor one creditor constituency at the expense of another creditor group. *See Tindall v. Mavrode (In re Mavrode)*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997) ("A proposed settlement will necessarily fail where one creditor benefits at the other creditors' expense"). If "the rights of others who are not party to the settlement are unduly prejudiced," this Court should reject the settlement, as "'no one [should be] set apart for unfair treatment.'" *See In re Medical Asset Management, Inc.*, 249 B.R. 659, 663 (Bankr. W.D. Pa. 2000) (citation omitted).

12. Absent conditioning approval of the settlement upon payment of claimants and creditors senior in priority to general unsecured creditors, the proposed settlement is unreasonable because the cash payments to the Committee for the exclusive benefit of general unsecured creditors fall outside of the range of possible remedies if the Committee had successfully litigated its objection to the sale and/or claims and causes of action against non-Debtor parties. As noted

previously, if the Committee had challenged, *inter alia*, the exercise of the Debtors' business judgment in pursuing a sale, the adequacy of the purchase price, and/or the purchaser's good faith, and if this Court was persuaded by the Committee's position, one of two results would have occurred: this Court would have denied the sale motion or the purchaser would have increased the purchase price payable to the Debtors' estates. In short, if the Committee contested the sale and prevailed, it would not have been able to obtain a cash payment for the exclusive benefit of general unsecured creditors. The same can be said if the Committee obtained standing to pursue estate claims or causes of action against Dunkin' or any non-Debtor party – any proceeds flowing from the prosecution of such claims or causes of action would inure to the benefit of those claimants and creditors superior in priority to general unsecured creditors in the first instance.

13. The Bankruptcy Code arranges claims in order of priority of distribution.

> U.S. bankruptcy law imposes a hierarchy on claims referred to as the "absolute priority rule." Under this rule, unless the senior creditors agree otherwise, priority claims are required to be satisfied in full before junior claims are entitled to any distribution from the debtor's estate. Secured claims have the highest priority under the absolute priority rule, inasmuch as no portion of the value of a secured creditor's collateral may be distributed to any other claimant unless the lien on such property is discharged or "adequately protected." Creditors whose claims arose postpetition (known as "administrative claimants"), certain prepetition claims and certain prepetition taxes are all "priority claims." General unsecured prepetition claims are junior to such priority claims and senior only to subordinated unsecured prepetition debt (to the extent provided in the instruments governing such subordinated debt) and the interests of equity holders. Section 507 of the Bankruptcy Code establishes the relative priorities of the priority claims against the debtor's estate.

James E. Millstein & Shari Siegel, *Strategic Investments and Acquisitions in the Chapter 11 Context*, 754 PLI/CORP 353, 368 (1991). This priority scheme applies regardless of whether the case is in chapter 11 or chapter 7. *See* 11 U.S.C. §§ 507 (describing Code priorities), 726 (explaining

distribution scheme in chapter 7), and 1129(a)(9) (detailing required treatment of priority claims under chapter 11 plan).

14.     In *In re Armstrong World Industries, Inc.*, 432 F.3d 507 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit affirmed the United States District Court for the District of Delaware's rejection of a proposed chapter 11 plan of reorganization on grounds that it violated the absolute priority rule, codified at 11 U.S.C. § 1129(b)(2)(B). The rule provides that "the holder of any claim or interest that is junior to the claims of [an impaired dissenting] class [of creditors under a plan] will not receive or retain under the plan on account of such junior claim or interest any property." 11 U.S.C. § 1129(b)(2)(B). In *Armstrong*, the proposed plan provided for the distribution of warrants to Armstrong's direct/indirect parent companies and equity interest holders (Class 12) through a class of asbestos personal injury claimants (Class 7) if unsecured creditors (Class 6) rejected the plan. *See Armstrong*, 432 F.3d at 509. In other words, if Class 6 rejected the plan, Class 7 would get the warrants, but would immediately waive receipt of the warrants, and the warrants would issue to Class 12. *See id.* Classes 6 and 7 shared the same priority under the Bankruptcy Code, and both classes were senior in priority to Class 12. *See id.* Class 6 voted to reject the plan. *See id.* at 510.

15.     The official committee of unsecured creditors objected to the plan on grounds that it violated the absolute priority rule. *Armstrong*, 432 F.3d at 510. This Court confirmed the plan and found that Class 7's hand-off of the warrants to Class 12 was permissible. *See id.* The official committee of unsecured creditors filed objections to the proposed findings of fact and conclusions of law with the District Court. *See id.* On *de novo* review, the District Court denied confirmation of the proposed plan. *See In re Armstrong World Indus., Inc.*, 320 B.R. 523 (D. Del.) (Robreno, J.),

*aff'd*, 432 F.3d 507 (3d Cir. 2005).

16.     In *Armstrong*, the District Court traced the history of the absolute priority rule and reviewed (among other authorities) two of the cases cited by the Committee in support of the proposed settlement – *Official, Unsecured Creditors' Committee v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305 (1st Cir. 1993) and *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001). In a subpart of its opinion titled "Cases that Do Not Strictly Apply Section 1129(b)(2)(B)(ii) Are Distinguishable or Wrongly Decided," the District Court discussed the *SPM* decision at length and distinguished it on three grounds. First, *SPM* involved a chapter 7 proceeding "where the sweep of [the absolute priority rule] does not reach." *Armstrong*, 320 B.R. at 538. Second, due to the secured lender's liens, the property at issue in *SPM* was not subject to distribution under bankruptcy's priority scheme; the same could not be said for the warrants at issue in *Armstrong*. *See id.* Third, unlike the debtor in *Armstrong*, the secured lender in *SPM* had a substantive right to dispose of its property. *See id.* at 538-39. The District Court also reviewed *Genesis*, where this Court found that the transfer of property subject to the lenders' liens to management on account of its equity interest did not violate the absolute priority rule. *See id.* at 539.

17.     The District Court ultimately found that the proposed transfer of the warrants from Class 7 to Class 12 violated the absolute priority rule. *Armstrong*, 320 B.R. at 539-40. In arriving at its conclusion, the District Court concluded that

> in any event, to the extent that *In re WorldCom*, *In re Genesis Health Ventures*, and *In re MCorp Financial* read *SPM* to stand for the unconditional proposition that 'creditors are generally free to do whatever they wish with the bankruptcy dividends they receive, including sharing them with other creditors, so long as recoveries received under the [p]lan by other creditors are not impacted,' without adherence to the strictures of 11 U.S.C. § 1129(b)(2)(B)(ii), that contention is flatly rejected here. Id. (emphasis (underline)

added).

The Third Circuit affirmed the District Court's ruling and, in doing so,

> adopt[ed] the District Court's reading of [the *SPM* line of cases] and agree[d] that they do not stand for the unconditional proposition that creditors are generally free to do whatever they wish with the bankruptcy proceeds they receive. Creditors must also be guided by the statutory prohibitions of the absolute priority rule, as codified in 11 U.S.C. § 1129(b)(2)(B). *Armstrong*, 432 F.3d at 514.

18.    Like the plan that was rejected in *Armstrong*, the proposed settlement should be rejected absent adoption of the condition regarding payment of claimants and creditors senior in priority requested by the U.S. Trustee. The Third Circuit's decision in *Armstrong* unequivocally counsels that creditors are not free to use their distributions – their own property – in contravention of the absolute priority rule. In other words, whether the consideration to be received by the Committee is properly characterized as the purchaser's property, "carve out" of a secured lender's collateral, or estate property is of no ultimate significance; Dunkin' – a creditor, the proposed acquirer of the Debtors' most valuable assets, and a party with a vested interest in approval of the sale – should not be held to a less stringent standard than the rule which the Third Circuit has set out for creditors in chapter 11. Further, as noted previously, the Third Circuit in *Abbotts Dairies* clearly indicated that it will not tolerate use of section 363(b)(1) to evade creditor protections contained in section 1129. In these cases, the Debtors' ability to pay allowed administrative and unsecured priority claims has yet to be determined. Accordingly, general unsecured creditors should not receive value at the expense of allowed administrative and/or unsecured priority claimants in contravention of 11 U.S.C. § 1129, by means of a settlement motion filed pursuant to Rule 9019(a)

or by other means.[2]

19.     The recent case of *On-Site Sourcing, Inc.*, 412 B.R. 817 (Bankr. E.D. Va. 2009)

supports the U.S. Trustee's position.  In *On-Site Sourcing*, the debtor sought approval of a sale of

substantially all of its assets.  The primary secured lender/purchaser was "underwater;" the primary

secured lender/purchaser proposed to pay $28 million, while its debt was $35 million.  *See id.* at

821-22.  The official committee of unsecured creditors proposed to resolve its sale objection by,

*inter alia*, establishing a trust for the benefit of general unsecured creditors that would be funded

with certain consideration by the primary secured lender/purchaser.  *See id.* at 822.  Approval of the

trust provision was denied:

> There is a greater problem with the general unsecured creditors trust:
> the effect on the chapter 11 process.  The provision effectively
> predetermines, in significant part, the structure of an as yet to be
> drafted plan of reorganization and effectively evades the "carefully
> crafted scheme" of the chapter 11 confirmation process.
>
> The general unsecured creditors trust provision is contrary to the
> scheme of distribution envisioned in both a chapter 7 and chapter 11
> liquidation.  It would assure that the general creditors are paid in
> advance of the administrative and priority claims.  At oral argument,
> the Committee's counsel candidly admitted that the purpose was to
> assure that the general unsecured creditors received a distribution.
> He admitted that if there were insufficient funds to pay all
> administrative expenses and priority claims, some administrative or
> priority claimants would go unpaid while the unsecured creditors

---

[2]

The same concerns which the U.S. Trustee raised in *In re World Health Alternatives, Inc.*, 344 B.R. 291 (Bankr.
D. Del. 2006) relating to the administration and disposition of settlement funds which are not estate property apply here.
If the Debtors' cases are converted to chapter 7 cases, is a chapter 7 trustee authorized to distribute the settlement funds
given that, if this Court approves the settlement and the order becomes non-appealable, the trust funds will either (i) not
be property of the Debtors' estates or (ii) be reserved for the exclusive benefit of general unsecured creditors and
Committee professionals?  Presumably, to the extent that there are settlement funds remaining for distribution, the
Committee intends for the trust to distribute such funds pro rata on account of allowed unsecured claims.  To the extent
that there is a dispute regarding use of the settlement funds, does this Court have jurisdiction to resolve the dispute?
Does an unsecured creditor's acceptance of settlement funds satisfy (in whole or in part) the liability of the Debtors'
estates to the creditor?  What authority, if any, does the Committee have to establish rules governing use and distribution
of the funds?

> received a distribution . . . .

*Id.* at 826.

20. Similarly, 11 U.S.C. § 105(a) does not provide an independent basis for approving the settlement. Section 105(a) of the Bankruptcy Code is an "enabling" section designed to authorize bankruptcy courts to give effect to and/or enforce the Code; section 105(a) does not, by itself, provide authority for this Court to act. *See In re G-I Holdings, Inc.*, 327 B.R. 730, 740 (Bankr. D.N.J. 2005) ("Section 105(a) of the Code does not 'elevate a bankruptcy court to 'super court' status; a bankruptcy court's equitable powers are available to serve any constituency involved in any particular case, but may be exercised only within the confines of the Code'" (citation omitted)). As noted above, adoption of the movants' position may contravene 11 U.S.C. § 1129. Use of section 105(a) to undercut Code protections afforded administrative and unsecured priority claimants is impermissible.

**[Continued on next page – space intentionally left blank]**

## CONCLUSION

WHEREFORE the U.S. Trustee requests that this Court issue an order conditioning approval of the Motions as described in this objection or, alternatively, denying the Motions.

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**ACTING UNITED STATES TRUSTEE**


**BY:**  /s/ Joseph J. McMahon, Jr.
Joseph J. McMahon, Jr., Esquire (# 4819)
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)

Date: March 26, 2010