UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------------X
In re:                                                       Chapter 11

KAINOS PARTNERS HOLDING                                      Case No. 09-12292 (BLS)
COMPANY, LLC, et al.,
                                                             Jointly Administered
            Debtors.
------------------------------------------------------------X   Re: Docket Nos. 457, 475 & 481

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 364 AND 507 (1) APPROVING POSTPETITION FINANCING; (2) PROVIDING SUPERPRIORITY EXPENSE STATUS; AND (3) SCHEDULING A FINAL HEARING

THIS MATTER having come before the Court upon the motion (the "Motion")[1] of Kainos Partners Holding Company, LLC, and its affiliated debtors and debtors-in-possession (each a "Debtor" and collectively the "Debtors") in the above captioned cases (the "Cases") requesting an interim order authorizing (A) the Debtors to enter into a debtor-in-possession financing facility with Dunkin' Brands, Inc. ("Dunkin'" or "Second DIP Loan Lender"); (B) providing super priority administrative expense status in connection with a second debtor-in-possession loan pursuant to 11 U.S.C. § 364(c) (the "Second DIP Loan"); and (C) scheduling a final hearing with respect to the relief requested herein pursuant to Federal Rule of Bankruptcy Procedure 4001 seeking entry of the Final Order.

### THE COURT HEREBY BY FINDS AND DETERMINES THAT:[2]

A.    On July 6, 2009 (the "Petition Date") the Debtors filed voluntary petitions for reorganization pursuant to Chapter 11 of Title 11, United States Code (the "Bankruptcy Code")

---

[1] All capitalized terms used and not defined herein shall have the meanings ascribed to them in the Motion.

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

and the Cases have been consolidated procedurally for administrative purposes, and the Debtors have continued in possession of their assets and in the management of their businesses pursuant to sections 1107 and 1108 of the Bankruptcy Code, and no trustee or examiner has been appointed in these Cases.

B.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. §157(b)(2), The statutory predicates for the relief sought herein are sections 105, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002 and 4001 and the Local Bankruptcy Rules. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  On July 17, 2009, the Office of the United States Trustee for the District of Delaware (the "US Trustee") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "Committee").

D.  An interim hearing was held before the Court on March 2, 2010, following which the Court entered an order dated March 2, 2010 (the "Interim Order") granting the relief sought by the Motion on an interim basis, as modified to address certain concerns raised by the United States Trustee.

E.  The Debtors have applied to the Court for authority pursuant to Bankruptcy Code sections 363 and 364(c), to obtain debtor-in-possession financing from the Second DIP Loan Lender pursuant to the terms and conditions of (a) the proposed Second DIP Loan Agreement annexed as Exhibit "A" to this Order (the "Second DIP Loan Agreement"), (b) a budget annexed as Exhibit "B" to this Order and all extensions thereof agreed to in furtherance thereof (as modified and/or extended from time to time by agreement of the Debtors and the Second DIP Loan Lender, the "Budget") and (c) this Order (collectively, the Second DIP Loan Agreement,

the Budget and this Order shall be referred to hereinafter as the "<u>Second DIP Loan Financing Documents</u>").

F. Need exists for the Debtors to obtain funds and financial accommodations with which to continue their ordinary course operations, meet their payroll and other necessary, ordinary course business expenditures, acquire goods and services, and administer and preserve the value of the estates. The ability of the Debtors to finance their operations requires the availability of additional working capital, the absence of which would harm the Debtors, their estates and their creditors. It is vital that the Debtors maintain the ability to finance their operations in order to preserve and maintain their going concern value.

G. The Debtors are unable to obtain unsecured credit under sections 503(b)(1) and 364(a) and (b) of the Bankruptcy Code and are only able to obtain unsecured credit under section 364(c) of the Bankruptcy Code under the terms and conditions set forth in this Order and in the Second DIP Loan Financing Documents.

H. The relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of their properties.

I. Authorized to borrow under the Second DIP Loan contemplated by the Second DIP Loan Financing Documents is in the best interest of the Debtors' estates.

J. The terms and conditions of the Second DIP Loan are fair and reasonable and the best available under the circumstances and reflect the Debtors' prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.

K. The Second DIP Loan Financing Documents were negotiated in good faith and at arm's length between the Debtors, on the one hand, and the Second DIP Loan Lender on the other hand. Credit to be extended under the Second DIP Loan will be so extended in good faith, in consequence of which the Second DIP Loan Lender is entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

L. The Debtors have admitted, represented and stipulated to the Court the following (collectively, the "Admissions"):

(a) the Second DIP Loan Lender is willing to make loans, advances, and other financial accommodations to the Debtors pursuant to the terms of the Second DIP Loan Financing Documents;

(b) the Debtors are unable to obtain sufficient levels of unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense necessary to maintain and conduct their businesses; and

(c) the Debtors reasonably and in good faith believe that the loans, advances and financial accommodations to be obtained from the Second DIP Loan Lender pursuant to the Interim Order and this order (the "Final Order") are sufficient to fund all projected legitimate and allowable expenses of their Chapter 11 Cases from March 1, 2010 through the Expiration Date (as defined below).

M. Due and appropriate notice of relief sought by the Motion and the hearings with respect to the Interim Order and this Final Order, was given by electronic mail, facsimile and/or overnight delivery to the following parties, or, in lieu thereof, their counsel: (i) the Office of the US Trustee; (ii) counsel to the Committee; (iii) the Internal Revenue Service; (iv) Counsel to CIT; (v) Counsel to KIP II; (vi) Counsel to PCEP; (vii) Counsel to Dunkin'; and (viii) the parties

requesting notice pursuant to Bankruptcy Rule 2002. Such notice constitutes good and sufficient notice of the Motion and hearings under the circumstances in accordance with Bankruptcy Rules 4001(b), 4001(c), the Local Bankruptcy Rules and section 102(1) of the Bankruptcy Code as required by section 364(c) of the Bankruptcy Code in light of the nature of the relief requested in the Motion.

N. There were no formal objections raised to the Motion.

NOW THEREFORE, the Court having considered the Second DIP Loan Financing Documents, the Motion, and the evidence submitted at the interim hearing with respect to the Motion on March 2, 2010, and the final hearing with respect to the Motion on March 31, 2010 (collectively, the "Hearings"); and in accordance with Rules 2002, 4001(b), (c), and (d), and Rule 9014 of the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, due and proper notice of the Motion and Hearings having been held and concluded on March 31, 2010; and it appearing that approval of the relief requested in the Motion is otherwise is fair and reasonable and in the best interests of the Debtors, their estates and their creditors, and is essential for the continued operation of the Debtors' businesses; and all objections, if any, to the entry of this Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefore,

IT IS ORDERED that:

1. The Motion and the terms and conditions of the Second DIP Loan Financing Documents are hereby approved and the Debtors are authorized to (a) borrow funds and obtain extensions of credit up to $500,000 from the Second DIP Loan Lender pursuant to the terms and conditions of the Second DIP Loan Financing Documents, (b) enter into the Second DIP Loan; (c) execute and deliver each of the Second DIP Loan Financing Documents; and (d) use the

proceeds of the Second DIP Loan in a manner consistent with the Second DIP Loan Financing Documents for (I) working capital; (II) other general corporate purposes of the Debtors; (III) payment of any related transaction costs, fees and expenses; and (IV) the costs associated with the administration of the Cases; *provided however*, nothing contained in this Order or the Second DIP Loan Financing Documents shall permit the use of the proceeds of the Second DIP Loan to fund amounts other than in accordance with the Budget (all borrowings and extensions of credit collectively, the "Second DIP Loan Obligations").

2. The Debtors are hereby authorized and directed to do and perform all acts and to make, execute and deliver all instruments and documents that may be required or necessary for the performance by the Debtors under the Second DIP Loan Financing Documents.

3. The Second DIP Loan Lender is hereby granted jointly and severally against each of the Debtors' estates, an allowed super-priority administrative claim, which shall have priority in payment over all administrative expenses or charges against property arising under sections 503(b) or 507(b), subject only to the Initial Superpriority Claims (as defined in the Motion).

4. The Debtors shall be permitted to pay compensation and make reimbursement of expenses allowed pursuant to Bankruptcy Code § 330 and 331 and incurred prior to the occurrence of an Event of Default or the occurrence of the Expiration Date, to the Debtors' Professionals and the Committee's Professionals, to the extent set forth in the Budget.

5. Effective, *nunc pro tunc* to the date of the Interim Order, no entity in the course of the Cases (whether Chapter 11 or subsequent Chapter 7), shall be permitted to assert against the Second DIP Loan Lender, any claim with respect to any unpaid administrative expense of the Debtors' bankruptcy cases, whether or not the Debtors' payment of such administrative claim

was contemplated by or included in the Budget and otherwise consistent with the Initial DIP Loan Final Order (as defined in the Motion).

6. So long as any Second DIP Loan Obligations remain outstanding, unless the Second DIP Loan Lender shall have given its prior written consent, or the Court enters an order, upon proper notice to the Second DIP Loan Lender and after a hearing, requiring that all of the Second DIP Loan Obligations be immediately satisfied in full, there shall not at any time be entered in the Debtors' Chapter 11 Cases any further orders which authorize the obtaining of credit or the incurring of indebtedness pursuant to Bankruptcy Code sections 364(c) or 364(d), or any other grant of rights against the Debtors and/or their estates, entitled to priority administrative status which is equal or superior to that granted to the Second DIP Loan Lender pursuant to this Order.

7. Each of the following shall constitute an "Event of Default" for purposes of this Order:

(a) the Court enters an order granting relief from the automatic stay to a third party with respect to material assets of the Debtors' estates;

(b) the Debtors cease operations of their present businesses or take any material action for the purpose of effecting the foregoing without the prior written consent of the Second DIP Loan Lender, except to the extent contemplated by the Budget;

(c) this Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of the Second DIP Loan Lender, materially and adversely affect the rights of the Second DIP Loan Lender

hereunder or shall materially and adversely affect the priority of any or all of the Second DIP Loan Obligations;

(d) the occurrence of an Event of Default under the Second DIP Loan Financing Documents;

(e) (1) the Debtors expend any funds or monies for any purpose other than those set forth on the Budget, and/or (2) the Debtors expend any funds or monies in excess of the amounts authorized in the Budget, provided that for the cumulative Budget periods which have occurred the Debtors' actual cash disbursements may be up to ten percent (10%) more than the cumulative budgeted amount for cash disbursements through the conclusion of such Budget periods without such expenditures constituting an Event of Default;

(f) the occurrence of a material adverse change, including without limitation any such occurrence resulting from the entry of any order of the Court, in each case as determined by the Second DIP Loan Lender in its sole and absolute discretion, in (1) the condition (financial or otherwise), operations, assets, business or business prospects of the Debtors, and/or (2) the Debtors' ability to repay the Obligations;

(g) any material and/or intentional misrepresentation by the Debtors in any financial reporting or certifications to be provided by the Debtors to the Second DIP Loan Lender in connection with the Second DIP Loan Financing Documents; and

(h) non-compliance or default by the Debtors with any of the terms and provisions of this Order; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtors within three (3)

business days after notice of such non-compliance or default is given to the Debtors by the Second DIP Loan Lender.

8. Upon the occurrence of an Event of Default and the expiration of the Remedy Notice Period (defined below) after written notice of an Event of Default has been given by the Second DIP Loan Lender to the Noticed Parties (which notice may be given facsimile ore-mail transmission, the automatic stay being deemed lifted for such purpose) (the "Default Notice"), or upon the occurrence of the Expiration Date:

(a) the Second DIP Loan Lender shall have no obligation to make any further loans, advances and/or other financial accommodations to the Debtors;

(b) with respect to an Event of Default as to which a Default Notice has been given, the Noticed Parties shall have three (3) business days from the receipt of the Default Notice (the "Remedy Notice Period") to obtain an order of the Court on notice to the Second DIP Loan Lender enjoining or restraining the Second DIP Loan Lender from exercising rights and remedies based upon the Event of Default specified in the Default Notice ("Restraint on Remedies") and/or other appropriate relief from the Court; and

(c) (i) with respect to an Event of Default as to which a Default Notice has been given, immediately upon expiration of the Remedy Notice Period, unless a Restraint on Remedies has timely been obtained from the Court, or (ii) immediately upon the occurrence of the Expiration Date, the payment of any and all Second DIP Loan Obligations of the Debtors to the Second DIP Loan Lender shall be due and payable, and the Second DIP Loan Lender shall have the right, free of the restrictions of Bankruptcy Code section 362 or under any other section of the Bankruptcy Code, to exercise contractual, legal and equitable rights and remedies as the Second DIP Loan Lender shall

elect, including to impose an "administrative freeze" with respect to, and thereafter set off, the Debtors' cash on deposit at or within the Second DIP Loan Lender's control against the Debtors' Second DIP Loan Obligations.

9. The Debtors shall provide the Second DIP Loan Lender with such written reports as are required under the Second DIP Loan Financing Documents. In addition, the Debtor shall provide the Second DIP Loan Lender with such additional written reports as the Second DIP Loan Lender in its reasonable discretion shall require. All written reports provided by the Debtors to the Second DIP Loan Lender shall be certified by an officer of the Debtors acceptable to the Second DIP Loan Lender to be accurate to the best of such officer's knowledge, information and belief.

10. The Second DIP Loan Lender shall be entitled to the benefits and protections of this Order, including the protections afforded pursuant to Bankruptcy Code section 364(e), with respect to all loans, advances and/or financial accommodations made by the Second DIP Loan Lender to or for the benefit of the Debtors pursuant to the Interim Order or this Final Order. Pursuant to the provisions of Bankruptcy Code § 364(e), the superpriority administrative expense status shall be binding on the Debtors or any successor trustee or trustees even if this Order is reversed or modified on appeal.

11. This Order shall be binding upon and inure to the benefit of the Second DIP Loan Lender, the Debtors and their respective successors and assigns, including, without limitation, any trustee, responsible officer, examiner, estate administrator or representative, or similar person appointed in a case for the Debtors under any chapter of the Bankruptcy Code.

12. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

Specifically, pursuant to this Order, the fourteen (14) day automatic stay period of Bankruptcy Rule 6004 is expressly inapplicable to this Order and the transactions, including, without limitation, transfers contemplated hereby, and accordingly, this Order shall become operative immediately upon entry on the docket.

13. The provisions of this Order and any actions taken pursuant to this Order shall, to the extent permitted by applicable law, survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting this bankruptcy case from Chapter 11 to Chapter 7 of the Bankruptcy Code. The terms and provisions of this Order, as well as the superpriority claims granted by this Order, shall (to the extent permitted by applicable law) continue in these or any successor case under the Bankruptcy Code and shall continue notwithstanding any dismissal of the Debtors' Cases, and such claims shall maintain their priority as provided by this Order until the Second DIP Loan Obligations are satisfied in full.

14. To the extent that any of the provisions of this Order shall conflict with any of the provisions of the Second DIP Loan Financing Documents, this Order is deemed to control and shall supersede the conflicting provision(s). To the extent that any of the provisions of this Order shall conflict with any order of the Court authorizing the Debtors to continue the use of pre-petition bank accounts, cash management systems and/or business forms, or any similar orders, then this Order is deemed to control and supersede the conflicting provision(s) in said orders.

15. Notwithstanding any other provision of this Order or the Second DIP Loan Financing Documents, nothing in this Order alters, amends, or otherwise modifies the parties'

rights and obligations under the Initial DIP Loan Final Order or Dunkin's rights or obligations as an Initial DIP Lender thereunder.

16. The Second DIP Loan Lender and the Debtors may amend, modify or supplement any of the provisions of the Second DIP Loan Financing Documents (collectively, a "<u>Modification</u>") without further order of the Court, provided that (a) such Modification is not material, and (b) notice of such Modification is filed with the Court and given to the Committee's, the Initial DIP Lenders' and the US Trustee's counsel at least two (2) business days prior to the proposed effective date thereof, except that filing with the Court shall not be required with respect to any Modification that in addition to being non-material is also technical and/or ministerial. The foregoing provisions shall not apply to any forbearance or waiver by the Second DIP Loan Lender with respect to any Events of Default which may have occurred (and the foregoing provisions shall not limit or impair the Lender's absolute discretion to agree to such forbearance or waiver), provided that such forbearance or waiver is not itself conditioned upon the Debtors' agreeing to any Modification that is material.

17. The Debtors' authorization to obtain loans, advances and/or other financial accommodations from the Second DIP Loan Lender pursuant to this Order shall be in effect for the period commencing with the March 1, 2010 through and including April 1, 2010 (the "<u>Expiration Date</u>").

SO ORDERED by the Court this 31st day of March 2010.

UNITED STATES BANKRUPTCY JUDGE