# EXHIBIT A

**Asset Purchase Agreement**

ASSET PURCHASE AGREEMENT

dated as of March 25, 2010

between

DBI Stores LLC

(as "Buyer")

and

Kainos Partners Holding Company LLC and its affiliated debtors

identified on the signature pages hereto

as Debtor in Possession

(as "Seller")

TABLE OF CONTENTS

ARTICLE I DEFINITIONS ................................................................................................. 1
    Section 1.1    Defined Terms ...................................................................................1
    Section 1.2    Other Definitional Provisions...........................................................11

ARTICLE II TRANSFER OF ASSETS AND LIABILITIES ..................................................... 12
    Section 2.1    Assets to be Acquired.......................................................................12
    Section 2.2    Excluded Assets................................................................................15
    Section 2.3    Liabilities to be Assumed by Buyer ...................................................16
    Section 2.4    Excluded Liabilities...........................................................................17
    Section 2.5    Changes in Lists of Assumed Real Property Leases, Assumed ..................
    Equipment Leases and Assumed Contracts. ....................................................19

ARTICLE III CLOSING AND PURCHASE PRICE ..................................................... 20
    Section 3.1    Closing; Transfer of Possession; Certain Deliveries. ...............................20
    Section 3.2    Calculation of Purchase Price; Adjustment for Released Locations ........22
    Section 3.3    Allocation of Purchase Price .............................................................22

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF SELLER................................. 23
    Section 4.1    Organization and Good Standing .............................................................23
    Section 4.2    Execution and Effect of Agreement .........................................................23
    Section 4.3    No Contravention ..................................................................................24
    Section 4.4    Third Party Approvals ...........................................................................24
    Section 4.5    Subsidiaries...........................................................................................24
    Section 4.6    Title to Purchased Assets.......................................................................24
    Section 4.7    Inventory...............................................................................................24
    Section 4.8    Compliance with Law............................................................................24
    Section 4.9    Governmental Permits ...........................................................................25
    Section 4.10    Litigation ............................................................................................25
    Section 4.11    Real Estate; Real Property Leases. ........................................................25
    Section 4.12    Contracts..............................................................................................26
    Section 4.13    Intellectual Property ............................................................................27
    Section 4.14    Labor Matters. .....................................................................................27
    Section 4.15    Brokers and Finders..............................................................................27
    Section 4.16    No Material Adverse Effect; Ordinary Course.........................................28
    Section 4.17    Affiliated Transactions..........................................................................28
    Section 4.18    Environmental and Health and Safety Matters.........................................28
    Section 4.19    Transfer of Assets.................................................................................28

ARTICLE V REPRESENTATIONS AND WARRANTIES OF BUYER ................................... 28
    Section 5.1    Organization and Good Standing .............................................................28
    Section 5.2    Execution and Effect of Agreement .........................................................29
    Section 5.3    No Contravention ..................................................................................29
    Section 5.4    Third Party Approvals ...........................................................................29

| | | |
|---|---|---|
| Section 5.5 | Brokers and Finders | 29 |
| Section 5.6 | Funds | 29 |

**ARTICLE VI COVENANTS OF THE PARTIES** .................................................... **29**

| | | |
|---|---|---|
| Section 6.1 | Conduct of Business Pending the Closing | 29 |
| Section 6.2 | Bankruptcy Court Order. | 32 |
| Section 6.3 | Released Locations; Competitive Bidding. | 32 |
| Section 6.4 | Notification of Certain Matters | 33 |
| Section 6.5 | Access. | 33 |
| Section 6.6 | Confidentiality; Privacy. | 34 |
| Section 6.7 | Public Announcements | 34 |
| Section 6.8 | Cure of Defaults | 35 |
| Section 6.9 | Employment Matters | 35 |
| Section 6.10 | Further Agreements | 35 |
| Section 6.11 | Payment of Transfer Taxes and Tax Filings | 36 |
| Section 6.12 | Utilities | 36 |
| Section 6.13 | Proration of Taxes and Certain Charges. | 36 |
| Section 6.14 | Commercially Reasonable Efforts; Notification. | 37 |
| Section 6.15 | Rejected Contracts | 37 |
| Section 6.16 | Adequate Assurances | 37 |
| Section 6.17 | Further Assurances | 38 |
| Section 6.18 | Regulatory Approval. | 38 |
| Section 6.19 | [reserved] | 38 |
| Section 6.20 | Post-Closing Reconciliation | 38 |
| Section 6.21 | Carve-Out | 38 |
| Section 6.22 | Equipment Handling | 39 |
| Section 6.23 | Mutual Releases | 39 |
| Section 6.24 | Seller Cure Amounts | 39 |

**ARTICLE VII CONDITIONS TO OBLIGATIONS OF THE BUYER** ....................... **39**

| | | |
|---|---|---|
| Section 7.1 | Conditions Precedent to Obligations of Buyer | 39 |

**ARTICLE VIII CONDITIONS TO OBLIGATIONS OF THE SELLER** .................... **41**

| | | |
|---|---|---|
| Section 8.1 | Conditions Precedent to the Obligations of Seller | 41 |

**ARTICLE IX TERMINATION** ................................................................................. **43**

| | | |
|---|---|---|
| Section 9.1 | Termination of Agreement | 43 |
| Section 9.2 | Consequences of Termination | 44 |

**ARTICLE X MISCELLANEOUS** .............................................................................. **44**

| | | |
|---|---|---|
| Section 10.1 | Expenses | 44 |
| Section 10.2 | Assignment | 44 |
| Section 10.3 | Parties in Interest | 45 |
| Section 10.4 | Risk of Loss. | 45 |
| Section 10.5 | Notices | 46 |
| Section 10.6 | Choice of Law | 47 |

| | | |
|---|---|---|
| Section 10.7 | Entire Agreement; Amendments and Waivers | 47 |
| Section 10.8 | Counterparts | 47 |
| Section 10.9 | Invalidity | 47 |
| Section 10.10 | Headings | 47 |
| Section 10.11 | Exclusive Jurisdiction | 47 |
| Section 10.12 | WAIVER OF RIGHT TO TRIAL BY JURY | 48 |
| Section 10.13 | Beneficiaries | 48 |
| Section 10.14 | Counting | 48 |
| Section 10.15 | Preparation of this Agreement | 48 |
| Section 10.16 | Termination of Representations, Warranties and Covenants | 48 |

**Exhibits:**

A - Bill of Sale and Assignment

B – Form of Real Property Lease Assumption and Assignment Agreement

C - Assumption Agreement

**Schedules:**

1.1(a) - Permitted Liens

1.1(b) – Stores

2.1(a) - Assumed Real Property Leases

2.1(b) - Acquired Owned Properties

2.1(c) - Assumed Equipment Leases

2.1(d) - Excluded Equipment

2.1(e) - Acquired Intellectual Property

2.1(f) - Acquired Permits

2.1(g) - Assumed Contracts

2.1(j) - Vehicles

2.2(n) - Excluded Inventory

4.3 – Contravention

4.4 - Required Third-Party Approvals

4.6 - Additional Assets Necessary to Conduct Business

4.10 - Pending or Threatened Proceedings and Cases

4.11(d) – Acquired Owned Property

4.11(e) – Real Estate; Real Property Leases

4.12(a) - Material Contracts

4.12(b) - Breaches/Defaults

4.14 – Labor Matters

4.17 - Affiliated Transactions

4.18 - Environmental and Health and Safety Matters

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (the "Agreement") is made and entered into as of this 25th day of March, 2010, by and between DBI Stores LLC, a Delaware limited liability company (the "Buyer") and Kainos Partners Holding Company LLC, a Delaware limited liability company (the "Company", and collectively with its affiliated debtors under the Bankruptcy Case (as defined below) identified on the signature pages hereto, the "Seller" and each, a "Seller").

### WITNESSETH:

WHEREAS, Seller is in the business of operating Dunkin' Donuts franchises, which business is operated and conducted at the Acquired Leased Properties and Acquired Owned Properties in the Territories, as such terms are defined below (the "Business");

WHEREAS, Seller has commenced a case (collectively, the "Case") under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. Sections 101 et seq. (the "Bankruptcy Code") on July 6, 2009 (the "Petition Date") by filing a voluntary petition with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court");

WHEREAS, Seller wishes to sell to Buyer certain of the assets of the Business as specified herein, and Buyer wishes to purchase such assets and to assume those liabilities relating to the Business specified herein, all on and subject to the terms and conditions set forth in this Agreement and pursuant to sections 363 and 365 of the Bankruptcy Code; and

WHEREAS, Seller and Buyer have determined that it is in their respective best interests to consummate the foregoing transaction, and in furtherance thereof, have approved this Agreement and the transactions contemplated hereby.

NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms and conditions hereof, the parties, intending to be legally bound, hereby agree as follows:

### ARTICLE I

### DEFINITIONS

Section 1.1    Defined Terms.  As used herein, the terms below shall have the following respective meanings:

"Acquired Equipment" shall have the meaning ascribed to such term in Section 2.1(d).

"Acquired Inventory" shall have the meaning ascribed to such term in Section 2.1(h).

"Acquired Leased Properties" shall have the meaning ascribed to such term in Section 2.1(a).

"Acquired Owned Properties" shall have the meaning ascribed to such term in Section 2.1(b).

"Acquired Permits" shall have the meaning ascribed to such term in Section 2.1(f).

"Affiliate" shall have the meaning set forth in Section 101 of the Bankruptcy Code.

"Agreement" shall mean this Agreement (together with all schedules and exhibits referenced herein).

"Allocation Schedule" shall have the meaning ascribed to such term in Section 3.3.

"Approval Order" shall have the meaning ascribed to such term in Section 7.1(d).

"Assumed Contracts" shall have the meaning ascribed to such term in Section 2.1(g).

"Assumed Equipment Leases" shall have the meaning ascribed to such term in Section 2.1(c).

"Assumed Liabilities" shall have the meaning ascribed to such term in Section 2.3.

"Assumed Real Property Leases" shall have the meaning ascribed to such term in Section 2.1(a).

"Assumption Agreement" shall mean the Assumption Agreement entered into by and between Buyer and Seller, substantially in the form of Exhibit C.

"Auction" shall mean the auction for the Purchased Assets to be conducted on the Auction Date in the event of the submission of a Qualified Bid in accordance with the Procedures Order and as defined in the Bidding Procedures.

"Auction Date" shall mean the date of the Auction scheduled by the Bankruptcy Court and set forth in the Procedures Order.

"Avoidance Actions" shall have the meaning ascribed to such term in Section 2.2(c).

"Bankruptcy Code" shall have the meaning ascribed to such term in the Recitals.

"Bankruptcy Court" shall have the meaning ascribed to such term in the Recitals.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

"Benefit Plan" shall mean any "employee benefit plan" (within the meaning of Section 3(3) of ERISA, including multiemployer plans within the meaning of Section 3(37) of ERISA), and all severance, employment, change in control, fringe benefit, bonus, incentive, deferred compensation, and all other employee benefit plans, programs, policies, agreements and other arrangements, whether or not subject to ERISA, including any funding vehicle therefor now in effect or required in the future to be established as a result of the transactions contemplated by this Agreement, whether formal or informal, written or oral, binding or not, under which any present or former employee of Seller or any beneficiary or dependent of such employee, has any present or future right to benefits, contingent or otherwise.

"Bidding Procedures" shall mean the Bidding Procedures for Auction of the Stores and Related Assets attached to the Procedures Motion.

"Bill of Sale and Assignment" shall mean the Bill of Sale and Assignment from Seller for the benefit of Buyer, substantially in the form of Exhibit A.

"Business" shall have the meaning ascribed to such term in the Recitals.

"Business Day" shall mean any day other than a Saturday, Sunday or a legal holiday on which banking institutions in the state of New York are authorized or obligated by law or executive order to close.

"Buyer" shall have the meaning ascribed to such term in the preamble.

"Buyer Cure Amounts" shall have the meaning ascribed to such term in Section 2.3(b).

"Buyer Real Estate Entities" shall mean DB Real Estate Assets I LLC and DB Real Estate Assets II LLC.

"Case" shall have the meaning ascribed to such term in the Recitals.

"Cash and Cash Equivalents" shall mean cash, third-party checks, wire transfers and any other funds of Seller, and commercial paper, marketable securities, certificates of deposit and other bank deposits, treasury bills and other cash equivalents of Seller calculated in accordance with GAAP.

"Claims" shall have the meaning ascribed to such term in Section 2.2(c).

"Closing" shall have the meaning ascribed to such term in Section 3.1(a).

"Closing Date" shall have the meaning ascribed to such term in Section 3.1(a).

"Closing Time" shall have the meaning ascribed to such term in Section 3.1(a).

"COBRA" shall mean Section 4980B of the Code and Part 6 of Title I of ERISA, together in each case, with applicable regulations, in each case, as amended and in effect from time to time.

"Code" shall mean the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder.

"Company" shall have the meaning ascribed to such term in the preamble.

"Competing Agreement" shall have the meaning ascribed to such term in the Procedures Motion.

"Competitive Bidding Period" shall mean the competitive bidding period for the acquisition of the Purchased Assets, which period shall commence on the date on which the Bankruptcy Court enters the Procedures Order and end on the Auction Date upon the conclusion of the Auction.

"Confidential Information" shall mean all information in any form or medium that relates to the Business, the Purchased Assets or the Assumed Liabilities, including, without limitation, financial information, projections, pricing structures, technical data, trade secrets, know-how, ideas, inventions, designs, research, development plans, identities of, and arrangements with, customers and suppliers, software and data bases, but shall not include any information that (i) is generally available to, or known by, the public (other than as a result of disclosure in violation of this Agreement), (ii) is already in the recipient's possession or comes into recipient's possession on a non-confidential basis (other than as a result of disclosure in violation of this Agreement), or (iii) is independently developed by the receiving party without reliance in any way on any Confidential Information.

"Contract" shall mean any lease, license, agreement, contract, contract right, purchase order, obligation, trust, instrument and other similar arrangements, whether or not in written form, that is binding upon a Person or its property.

"Dunkin' Master Equipment Lease" shall mean that certain Master Equipment Lease dated December 24, 2008, by and between Dunkin' Brands, Inc. and Kainos Partners Holding Company, LLC.

"Employee Obligations" shall mean salary, wages, sick pay, accrued bonuses, severance, deferred compensation, Liabilities relating to any Benefit Plan, Liabilities of Seller arising under COBRA, and all other Liabilities of Seller to its present

or former employees (including any such employees who become employees of Buyer) or retirees or spouses, dependents or other beneficiaries of such present or former employees or retirees, whether pursuant to agreements, plans or otherwise.

"Environmental Laws" shall mean all Laws relating to protection of human health and the environment, including the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. (S)(S) 9601 et seq., the Resource Conservation and Recovery Act, 42 U.S.C. (S)(S) 6901 et seq. (the "Resource Conservation and Recovery Act"), the Toxic Substances Control Act, 15 U.S.C. (S)(S) 2601, et seq., the Clean Water Act, 33 U.S.C. (S)(S) 51 et seq., the Oil Pollution Act, 33 U.S.C. (S)(S) 2701 et seq., the Clean Air Act, 42 U.S.C. (S)(S) 7401 et seq. and the Occupational Safety and Health Act, 29 U.S.C. (S)(S) 651 et seq., and state and local equivalents of all of the foregoing.

"Equipment" shall have the meaning ascribed to such term in Section 2.1(d).

"Equipment Lease" shall have the meaning ascribed to such term in Section 2.1(c).

"ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended, and the regulations promulgated thereunder.

"Excluded Assets" shall have the meaning ascribed to such term in Section 2.2.

"Excluded Equipment" shall mean the Equipment listed in Schedule 2.1(d) or any Equipment located at any Non-Acquired Real Property (other than any such Equipment leased to a Seller pursuant to the Dunkin' Master Equipment Lease).

"Excluded Inventory" shall have the meaning ascribed to such term in Section 2.2(n).

"Excluded Liabilities" shall have the meaning ascribed to such term in Section 2.4.

"Excluded Permits" shall have the meaning ascribed to such term in Section 2.2(r).

"Final Order" shall mean an Order of the Bankruptcy Court or other court of competent jurisdiction (i) that is not the subject of a pending appeal, petition for certiorari, motion for reconsideration or other proceeding for review, rehearing or reargument, (ii) that has not been reversed, vacated, modified or amended, is not stayed and remains in full force and effect, and (iii) respecting which the time to appeal, to petition for certiorari, to move for reconsideration or to seek review, rehearing or reargument shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure and other applicable Laws.

"GAAP" shall mean United States generally accepted accounting principles.

"Governmental Entity" shall mean any (i) federal, state, local, municipal, foreign or other government; (ii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court, arbitrator or other tribunal); or (iii) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature, including any arbitral tribunal.

"Hazardous Substance" shall have the meaning ascribed to such term in Section 4.18.

"Hired Employees" shall have the meaning ascribed to such term in Section 6.9.

"Identified Employees" shall mean all of Seller's employees as of the Closing Time who work at the Acquired Leased Properties and the Acquired Owned Properties.

"Initial Agreement Date" shall mean the date first written above.

"Intellectual Property" shall mean, as related to the Business and the operation thereof: (i) all intangible proprietary rights and interests, however denominated, throughout the world, whether express or implied, whether or not registered or recorded, including all patents, all inventions, technology, processes, algorithms and formulae (whether patentable or not) and Trademarks, all proprietary data, databases, research and development data and customer data, all domain names, rights of privacy and publicity, moral rights, shop rights, all trade secrets and know-how, all published and unpublished works of authorship (whether copyrightable or not) and any copyrights therein and thereto, all computer software (including process control software), source code and object code, and all documentation related thereto, and licenses received from manufacturers and sellers of the Equipment; (ii) all filings, recordations and governmental awards or registrations pertaining to the above, including patents and applications therefor, trademark registrations and applications therefor, copyright registrations and applications therefor, domain name registrations and applications therefor, and all licenses and Contracts relating to any and all of the above, including employee or consultant agreements or other agreements to transfer rights in Intellectual Property to Seller; (iii) all choses in action and other rights arising from or relating to the above, including maintenance rights or rights to upgrades, rights to sue and collect remedies against past, present and future infringements or misappropriations thereof, and rights of priority and protection of interests therein under the laws of any jurisdiction worldwide, including rights to obtain renewals, continuations, divisions or other extensions of legal protections pertaining thereto; (iv) all rights under section 365(a) of the Bankruptcy Code arising from or relating to the above; and (v) all tangible embodiments of the above, including, without limitation, all filings and correspondence with governmental authorities, all original governmental certificates for such patents and

trademark and copyright registrations, and all files and filings pertaining to any litigation, opposition proceeding, cancellation proceeding, arbitration, mediation, or negotiation arising from or relating to the above.

"Inventory" shall mean (i) all merchandise (complete or incomplete) and other goods sold, or intended to be sold, and (ii) all raw materials, that are related to the Business and are located at the Acquired Leased Properties and the Acquired Owned Properties.

"Knowledge" with respect to any individual, shall mean the actual knowledge of such individual. The "Knowledge of Seller" shall mean the Knowledge of Jim Bailis and Mike Colonna.

"Law" means any federal, state, local or foreign statute, law, ordinance, regulation, rule, code, order, principle of common law, judgment enacted, promulgated, issued, enforced or entered by any Governmental Entity, or other requirement or rule of law.

"Lenders" shall mean The CIT Group/Equipment Financing, Inc., Dunkin' Brands, Inc. and Kainos Investment Partners II, LLC and their respective predecessors, successors and assigns.

"Liabilities" shall mean, as to any Person, all debts, adverse claims, liabilities, commitments, responsibilities, and obligations of any kind or nature whatsoever, direct, indirect, absolute or contingent, of such Person, whether accrued, vested or otherwise, whether known or unknown, and whether or not actually reflected, or required to be reflected, in such Person's balance sheets or other books and records.

"Lien" shall mean any claim, lien, pledge, option, charge, hypothecation, easement, security interest, mechanic's lien, right-of-way, encroachment, mortgage, deed of trust, transfer restriction, lease, sublease, covenants, declarations, restrictions, claim or right of first refusal or other encumbrance.

"Material Adverse Effect" shall mean any event, change, condition or effect which, when considered either individually or in the aggregate together with other events, changes, conditions or effects, is or is reasonably likely to be, materially adverse to the Purchased Assets or the Business taken as a whole, but excluding (i) any change in general economic conditions that does not have a disproportionate effect on the Seller relative to other similar businesses and (ii) any event, change, condition or effect that is the result of the control or influence of Dunkin' Brands, Inc. over the operations of the Seller as a franchisee thereof.

"Material Contract" shall mean any Contract (together with all amendments thereto) with respect to the Business to which the Seller is a party or by which any of the Purchased Assets are bound and (i) which is outside of the ordinary course of business; (ii) pursuant to which Seller would be required to make annual payments in excess of $5,000 from and after the Initial Agreement Date and that is not terminable by Seller within thirty (30) days without penalty; (iii) which creates a joint

venture or partnership or which otherwise involves the sharing of profits, losses, costs or Liabilities with any other Person; (iv) which concerns non-competition or otherwise contains or purports to contain any restrictions on the ability of Seller to engage in any business or to operate in any geographic area; (v) which is a lease, sublease or license (or other type of occupancy agreement) for any real property or any material equipment used or held for use in the Business; or (vi) which is an agreement with any employee working at any of the Acquired Leased Properties or Acquired Owned Properties, which agreement contains any restrictive covenants, including, without limitation, any non-compete or no solicitation provision.

"Mutual Release" shall have the meaning ascribed to such term in Section 6.23.

"NDA" means a commercially reasonable non-disturbance and recognition agreement, that (i) provides that (a) all of the rights and remedies of the tenant or subtenant under the applicable Assumed Real Property Lease will remain in effect following the foreclosure of the applicable mortgage (or the like), or the termination of any leasehold interest, having priority over the applicable Assumed Real Property Lease, and (b) all of the terms and provisions of such Assumed Real Property Lease will be binding on the successor owner or prime landlord (as applicable) as if it were the original landlord or sublandlord under the applicable Assumed Real Property Lease, and (ii) will survive the Closing and run to the benefit of Buyer or its designee as the successor-in-interest to Seller as the tenant or subtenant under the applicable Assumed Real Property Lease.

"Non-Acquired Real Property" shall mean all right, title and interest of Seller in, to and under (i) the real property leases or subleases and related agreements, consents and amendments thereto which are not Assumed Real Property Leases, and the premises leased thereunder and (ii) any real property owned by the Seller that is not an Acquired Owned Property.

"Notice" shall have the meaning ascribed to such term in Section 10.5.

"Order" shall mean any judgment, order, injunction, writ, ruling, verdict, decree, stipulation or award of any Governmental Entity or private arbitration tribunal.

"OSHA" shall have the meaning ascribed to such term in Section 4.18.

"PCBs" shall have the meaning ascribed to such term in Section 4.18.

"Permits" shall have the meaning ascribed to such term in Section 2.1(f).

"Permitted Liens" shall mean the mechanics' liens on the Acquired Owned Properties in the amounts set forth on Schedule 1.1(a) plus interest and fees payable as part of such mechanics' liens, and shall not include any mechanic's lien on the Non-Acquired Real Property or any other Lien.

"Person" shall mean an individual, partnership, joint venture, corporation, business trust, limited liability company, trust, unincorporated organization, joint stock company, labor union, estate, Governmental Entity or other entity.

"Petition Date" shall have the meaning ascribed to such term in the Recitals hereto.

"Procedures Motion" shall mean the Debtors' Motion For An Order (I) Approving Bidding Procedures For The Sale Of Substantially All Of Their Assets, (II) Approving The Form And Manner Of Notice Of The Sale And Assumption And Assignment Of Executory Contracts And Leases, (III) Approving The Form Of Asset Purchase Agreement, (IV) Approving And Authorizing Sale Of Substantially All Of The Debtors' Assets To The Highest And Best Bidder(s) Free And Clear Of All Liens, Interests, Claims And Encumbrances Pursuant To Sections 105, 363, And 365 Of The Bankruptcy Cody, (V) Waiving The Requirements Of Federal Rules Of Bankruptcy Procedure 6004(g) And 6006(d), (VI) Setting Auction And Hearing Dates; And (VIII) Granting Related Relief filed as docket number 455 in the Case.

"Procedures Order" shall have the meaning ascribed to such term in Section 6.2(a).

"Proceeding" shall mean any action, arbitration, audit, hearing, investigation, litigation, or suit (whether civil, criminal, administrative, investigative, or informal) commenced, brought, conducted, or heard by or before, or otherwise involving, any Governmental Entity or arbitrator.

"Professional Expenses" shall mean the legal and other professional fees of Seller's estate in connection with the Case, including without limitation the fees and expenses of the Lenders and the Official Committee of Unsecured Creditors.

"Property Leases" shall have the meaning ascribed to such term in Section 2.1(a).

"Purchase Price" shall have the meaning ascribed to such term in Section 3.2(a).

"Purchased Assets" shall have the meaning ascribed to such term in Section 2.1.

"Qualified Bid" shall have the meaning ascribed to such term in the Bidding Procedures.

"Qualified Franchisee" means any franchisee of Dunkin' Brands, Inc. that is in good standing and currently approved by Dunkin' Brands, Inc. for expansion.

"Real Property Lease Assumption and Assignment Agreements" shall have the meaning ascribed to such term in Section 3.1(b)(ii).

"Register Cash" shall have the meaning ascribed to such term in Section 2.1(p).

"Release Adjustment" shall have the meaning ascribed to such term in Section 3.2(b).

"Release Prices" shall have the meaning ascribed to such term in Section 6.3(a).

"Released Locations" shall have the meaning ascribed to such term in Section 6.3(a).

"Removed Contracts" shall have the meaning ascribed to such term in Section 2.5(a).

"Removed Equipment Leases" shall have the meaning ascribed to such term in Section 2.5(a).

"Removed Real Property Leases" shall have the meaning ascribed to such term in Section 2.5(a).

"Representative" shall mean, with respect to any Person, such Person's officers, directors, employees, agents and representatives (including any investment banker, financial advisor, accountant, legal counsel, agent, representative or expert retained by or acting on behalf of such Person or its Subsidiaries).

"Resource Conservation and Recovery Act" shall have the meaning ascribed to such term in the definition of Environmental Laws.

"Sale Motion" shall have the meaning ascribed to such term in Section 6.2(c).

"Sale Notice" shall have the meaning ascribed to such term in the Bidding Procedures.

"Seller" shall have the meaning ascribed to such term in the preamble.

"Seller Cure Amounts" shall have the meaning ascribed to such term in Section 2.4(m).

"Seller's Disclosure Schedule" shall have the meaning ascribed to such term in the opening paragraph of ARTICLE IV.

"Subsidiary" shall mean, with respect to any Person at any time, any corporation, partnership, limited liability company or other legal entity of which such Person owns, directly or indirectly, 50% or more of the economic interests in, or voting rights with respect to the election of the board of directors or other governing body of, such corporation or other legal entity.

"Tax" or "Taxes" shall mean any current, deferred, federal, state, county, local, foreign and other taxes, assessments, duties or charges of any kind whatsoever, including, without limitation, income, profits, gains, net worth, sales and use, *ad valorem*, gross receipts, business and occupation, license, minimum, alternative minimum, environmental, estimated, stamp, custom duties, occupation, property (real or personal), franchise, capital stock, license, excise, value added, payroll, employees, income withholding, social security, unemployment or other tax, together with any penalty, addition to tax or interest on the foregoing.

"Tax Return" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

"Territory" means all stores and store development agreements located in each of the following markets: (i) Buffalo, New York; (ii) Las Vegas, Nevada and (iii) South Carolina; such stores are set forth on Schedule 1.1(b).

"Trademarks" shall mean all foreign and domestic trademarks, service marks, trade names, trade dress, logomarks, domain names, and other brand identifiers or indicia of origin, along with all goodwill associated therewith and symbolized thereby, and all registrations, applications to register, recordations and governmental filings, arising therefrom or pertaining thereto, in all territories throughout the world and arising under any applicable legal regime, whether common law, statutory, administrative, or other applicable regulation, grant, or order.

"Transfer Tax" or "Transfer Taxes" shall mean any federal, state, county, local, foreign and other sales, excise, use, transfer, conveyance, documentary transfer, recording or other similar Tax, fee or charge imposed upon the sale, transfer or assignment of property or any interest therein or the recording thereof, and any penalty, addition to Tax or interest with respect thereto, but such term shall not include any Tax on, based upon or measured by, the net income, gains or profits from such sale, transfer or assignment of the property or any interest therein.

"WARN Act" shall mean the Worker Adjustment and Retraining Notification Act of 1988, as amended, and any successor Law, and the rules and regulations thereunder and under any successor Law, and any comparable law under the laws of any state.

Section 1.2    Other Definitional Provisions.

(a)    The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section, Schedule and Exhibit references are to this Agreement unless otherwise specified.

(b)    The meanings given to terms defined herein shall be equally applicable to both singular and plural forms of such terms.

(c)     Whenever the words "include," "includes" or "including" are used in this Agreement they shall be deemed to be followed by the words "without limitation."

(d)     Words denoting any gender shall include all genders. Where a word or phrase is defined herein, each of its other grammatical forms shall have a corresponding meaning.

(e)     A reference to any party to this Agreement or any other agreement or document shall include such party's successors and permitted assigns.

(f)     A reference to any legislation or to any provision of any legislation shall include any modification or re-enactment thereof, any legislative provision substituted therefor and all regulations and statutory instruments issued thereunder or pursuant thereto.

(g)     All references to "$" and dollars shall be deemed to refer to the United States currency.

(h)     All references to any financial or accounting terms shall be defined in accordance with GAAP except as otherwise specifically defined herein.

## ARTICLE II

## TRANSFER OF ASSETS AND LIABILITIES

Section 2.1     Assets to be Acquired.  At the Closing, and upon the terms and conditions set forth herein and subject to the approval of the Bankruptcy Court pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, Seller shall sell, convey, assign, transfer and deliver to Buyer (or, in the case of Acquired Owned Properties and Property Leases, a Buyer Real Estate Entity chosen by Buyer), and Buyer (or such Buyer Real Estate Entity) shall purchase, acquire and accept, all of the right, title and interest of Seller, free and clear of all Liens (other than Permitted Liens), claims and interests, in, to and under each and all of the assets used in the Seller's operation of the Business (the "Purchased Assets") other than the Excluded Assets, including without limitation the following Purchased Assets:

(a)     All real property leases (together with all buildings, structures, fixtures and improvements erected thereon, and any and all rights, privileges, easements, licenses, profits, proceeds, hereditaments and other appurtenances relating thereto collectively, the "Property Leases") set forth in Schedule 2.1(a), but specifically excluding any Removed Real Property Leases under Section 2.5 (the "Assumed Real Property Leases," and the real property leased thereunder, the "Acquired Leased Properties");

(b)     All real property set forth in Schedule 2.1(b) (collectively, together with all buildings, structures, fixtures and improvements erected thereon, and any and all rights, privileges, easements, licenses, profits, proceeds, hereditaments and other appurtenances relating thereto the "Acquired Owned Properties");

(c)     All leases for equipment leased by the Seller, but specifically excluding any Removed Equipment Leases under Section 2.5 (the "Equipment Leases") and that is located at the Acquired Leased Properties or Acquired Owned Properties, as set forth in Schedule 2.1(c) (the "Assumed Equipment Leases");

(d)     All leasehold improvements, furniture, fixtures, equipment, supplies and other tangible personal property and all warranties, licenses, releases, service agreements and contractual commitments, if any, express or implied, existing for the benefit of Seller in connection therewith (collectively, the "Equipment") owned by Seller that is located at or relates to the Acquired Leased Properties or Acquired Owned Properties or leased to Seller pursuant to the Dunkin' Master Equipment Lease, but specifically excluding any Excluded Equipment located in storage, at any Non-Acquired Real Property, or listed in Schedule 2.1(d) (the "Acquired Equipment");

(e)     All of Seller's right, title and interest in or to the software used or held for use in the Business, which software is listed on Schedule 2.1(e) (the "Acquired Intellectual Property");

(f)     All licenses, permits and other authorizations of any Governmental Entity relating to all other Purchased Assets and to the operation of the Business, and all pending applications therefor, including those listed on Schedule 2.1(f) (collectively, the "Permits"), but specifically excluding any Excluded Permits (the "Acquired Permits"), to the full extent, if any, such Acquired Permits are transferable or assignable;

(g)     All Contracts and rights thereunder of Seller that are necessary for the operation of the Business that are listed on Schedule 2.1 (g)[1], but specifically excluding any (i) Removed Contracts pursuant to Section 2.5, (ii) franchise agreements for stores at the Released Locations and (iii) store development agreements for or within a Territory acquired by a Qualified Franchisee pursuant to a Competing Agreement in accordance with the Bidding Procedures and the Procedures Order (the "Assumed Contracts");

(h)     All Inventory of Seller as of the Closing Date and all warranties, licenses, releases and agreements, if any, express or implied, existing for the benefit of Seller in connection therewith, but specifically excluding Excluded Inventory (the "Acquired Inventory");

(i)     Copies or originals of all books, samples, records, files or papers of Seller, whether in hard copy or electronic format, relating to the Purchased Assets and/or to the on-going operation of the Business, including, without limitation, sales and

---

[1] Schedule to List all executory contracts, franchise agreements, store development agreements (including store development agreements in or outside of the geographic scope of the Territories) and license rights designated by Buyer, including, but not be limited to, all franchise agreements for franchises at the Acquired Leased Properties and the Acquired Owned Properties.

promotional literature, manuals and data, sales and purchase correspondence, customer lists, vendor lists, mailing lists, catalogues, research material, know-how and any other related documentation, or any other intangible property and applications for the same, plans, personnel and employment records (other than records with respect to former employees or employees who do not become employees of Buyer as of or after the Closing Time), maintenance schedules, operating and production records, safety and environmental reports, data, studies and documents, fixed asset ledgers, Tax Returns (other than income Tax Returns) regarding real property, personal property and *ad valorem* taxes with respect to the Purchased Assets, including any exemption or abatement agreements or certifications and supporting documentation for such Tax Returns;

(j) All vehicles owned by Seller that are utilized in and necessary for the operation of the Business, as set forth on Schedule 2.1(j);

(k) The amount of and all rights to any insurance proceeds received or entitled to be received by Seller after the Initial Agreement Date in respect of the loss or destruction or condemnation of any Purchased Asset occurring after February 24, 2010 and prior to the Closing Time;

(l) Any security, vendor or other deposits (other than utility deposits) relating to the Business, including (i) any security deposits (not including bank letters of credit) given in favor of lessors of real property, (ii) any rights to receive from such lessors unpaid construction allowances, (iii) any prepaid expenses in excess of actual expenses from whatever source, including deposits on bonds for sales taxes, customs and utilities, and (iv) any other cash due and owing Seller in respect of such leases owed to Seller by such lessor prior to the Closing Time; provided, however, that the foregoing shall not apply to any deposits with respect to any Non-Acquired Real Property, Excluded Contracts (including insurance contracts), Removed Equipment Leases, Excluded Inventory, Excluded Permits, and Excluded Equipment Leases that are not acquired by Buyer hereunder;

(m) All rights of Seller under all warranties (expressed or implied), representations, indemnities, or guaranties made by third parties to or for the benefit of Seller with respect to the Purchased Assets;

(n) Other than Excluded Assets, all other properties, assets and rights that are not expressly excluded herein of every nature, tangible and intangible, real or personal, now existing or hereafter acquired, owned by Seller and located at the Acquired Leased Properties or Acquired Owned Properties, whether or not reflected on the books or financial statements of the Seller, as the same shall exist at the Closing Time; and

(o) All rights, demands, claims, actions and causes of action (collectively, "Claims") that Seller may have against any Person related to the Purchased Assets;

(p)     All cash in the cash registers (the "Register Cash") at each of the stores operating at the Acquired Owned Properties and Acquired Leased Properties conveyed to Buyer (or the Buyer Real Estate Entities) hereunder; and

(q)     All goodwill, if any, that Seller owns and has the right to transfer related to the foregoing.

Section 2.2     Excluded Assets. Seller shall retain, and Buyer shall not purchase, Seller's right, title and interest in or to any of the following assets and properties of Seller (collectively, the "Excluded Assets"), all of which shall remain the exclusive property of Seller, free and clear of any Claim of Buyer:

(a)     All Cash and Cash Equivalents as of the Closing Time (other than the Register Cash);

(b)     Any Contracts other than the Assumed Contracts, the Assumed Equipment Leases or the Assumed Real Property Leases;

(c)     All Claims that Seller or any of its Affiliates may have (i) under Chapter 5 of the Bankruptcy Code (collectively, the "Avoidance Actions") and (ii) against former officers and directors of the Seller or otherwise related to directors and officers liability insurance policy recoveries (including specifically any recoveries from Christopher Cortese);

(d)     All Claims that Seller or any of its Affiliates may have against any Person (including Governmental Entities) for refund or credit of any type with respect to Taxes accrued with respect to periods ending on or prior to the Closing Time;

(e)     Except as provided in Section 2.1(k), all insurance policies, insurance claims and proceeds of insurance policies owned by Seller;

(f)     All rights of Seller under this Agreement and the agreements and instruments delivered to Seller by Buyer pursuant to this Agreement or the transactions contemplated hereby;

(g)     The company seal, minute books, charter documents, stock or equity record books and such other books and records as pertain to the organization, existence or capitalization of Seller;

(h)     Seller's directors and officers liability insurance policy, executive or incentive compensation, bonus, deferred compensation, pension, profit sharing, savings, retirement, stock option, stock purchase, group life, health or accident insurance or other Benefit Plan;

(i)     Assets owned or used by Seller not related to the Business or located at any Non-Acquired Real Property;

(j)     Any other assets that Buyer elects in writing to exclude from Purchased Assets;

(k)     All capital stock of Seller or any entity included within the defined term "Seller", including any options, warrants or other securities exchangeable or convertible into capital stock of Seller or any such entity;

(l)     Seller's bank accounts;

(m)     any intercompany receivables of Seller and accounts receivables;

(n)     any Inventory that is specifically identified on Schedule 2.2(n) (the "Excluded Inventory") or located at any Non-Acquired Real Property;

(o)     any Non-Acquired Real Property;

(p)     any Excluded Equipment;

(q)     any interest in, or the proceeds available from the sale of, the leases, assets or equipment of the Seller located at (x) Store No. 343434 Flix Transit; and (ii) Store No. 343875 Transit Genesee; and

(r)     any Permit other than the Acquired Permits (the "Excluded Permits").

Section 2.3     Liabilities to be Assumed by Buyer.   At the Closing, Buyer (or, with respect to Assumed Real Property Leases, the applicable Buyer Real Estate Entity executing the applicable Real Property Lease Assumption and Assignment Agreement) will assume only the following Liabilities of Seller (the "Assumed Liabilities") and no others:

(a)     all Liabilities of Seller which arise after the Closing Time to the counter-parties under the Assumed Contracts, the Assumed Real Property Leases and the Assumed Equipment Leases;

(b)     all amounts payable pursuant to Section 365(b)(1)(A) or (B) of the Bankruptcy Code in order to effectuate, pursuant to the Bankruptcy Code, the assumption by Seller and assignment to Buyer of Assumed Contracts and Assumed Equipment Leases under the Approval Order (the "Buyer Cure Amounts");

(c)     all Liabilities under the Permitted Liens; and

(d)     all property Taxes and utility obligations assumed by Buyer pursuant to Section 6.12 and Section 6.13;

provided, however, that Buyer does not assume and does not agree to pay, discharge or perform any Excluded Liabilities as described in Section 2.4 below.

The transactions contemplated by this Agreement shall in no way expand the rights or remedies of any third party against Buyer or Seller as compared to the rights and remedies which such third party would have had against Seller absent the Case, had Buyer not assumed such Assumed Liabilities.

Section 2.4    Excluded Liabilities.  Other than the Assumed Liabilities, Buyer shall not (nor shall any Buyer Real Estate Entity) and does not assume any other Liability whatsoever (including Liabilities relating to the conduct of the Business or to the Purchased Assets (and the use thereof) at any time on or prior to the Closing Time), whether relating to or arising out of the Business or Purchased Assets or otherwise, fixed or contingent, disclosed or undisclosed (collectively, the "Excluded Liabilities"). Without limiting the foregoing, Buyer shall not and does not (nor shall any Buyer Real Estate Entity) assume any of the following (each of which shall be included within the definition of "Excluded Liabilities"):

(a)    All Liabilities of Seller which are based on any Liabilities arising out of any breach by Seller of any provision of any Assumed Contracts, Assumed Real Property Leases, Assumed Equipment Leases, purchase orders or sales orders including any Liabilities for non-payment, non-delivery, breach of warranty or other breach of contract, relating to the conduct of the Business or to the Purchased Assets (and the use thereof) at any time on or prior to the Closing Time.

(b)    All Liabilities relating to or arising, whether before, on or after the Closing, out of or in connection with, any of the Excluded Assets, including all Liabilities relating to or arising out of any Contract that is not an Assumed Contract, Assumed Equipment Lease or Assumed Real Property Lease;

(c)    All Liabilities, other than the Assumed Liabilities, that arise (whether under the Assumed Contracts, the Assumed Real Property Leases or the Assumed Equipment Leases), in relation to the Acquired Owned Property (including, without limitation, any unpaid utility and property Tax obligations that arose or accrued prior to the Closing Time) or otherwise with respect to the Purchased Assets or the use thereof on or prior to the Closing Time or relate to periods ending on or prior to the Closing Time or are to be observed, paid, discharged or performed on or prior to the Closing Time (in each case, including any Liabilities that result from, relate to or arise out of tort or other product liability claim);

(d)    All litigation and related claims and Liabilities or any other claims against Seller of any kind or nature whatsoever, no matter when raised (including Liability for breach, misfeasance or under any other theory relating to Seller's conduct, performance or non-performance);

(e)    All Employee Obligations arising at any time prior to the Closing Time (including any COBRA obligations with respect to employees who are not Hired Employees);

(f)     All Liabilities relating to any environmental, health or safety matter (including any Liability or obligation arising under any Environmental Law) arising out of or relating to Seller's operation of the Business or other of the Seller's respective businesses or Seller's leasing, ownership or operation of real property, including the Acquired Leased Properties and Acquired Owned Properties arising at any time prior to the Closing Time;

(g)     All Liabilities for damages to persons or property arising out of Seller's conduct of the Business, or arising under warranties, express or implied, issued by Seller arising at any time prior to the Closing Time;

(h)     All Liabilities of Seller under any collective bargaining agreement, agreement with any labor union, employment agreement or severance agreement arising at any time prior to the Closing Time;

(i)     All Liabilities of Seller attributable to, incurred in connection with, arising from, or relating to, a violation of any Laws governing employee relations, including anti-discrimination Laws, wage and hour Laws, labor relations Laws and occupational safety and health Laws and the WARN Act arising at any time prior to the Closing Time;

(j)     All Liabilities of Seller related to the termination by Seller of employment of any employees of Seller, including all Liabilities for severance or arising under the WARN Act arising at any time prior to the Closing Time or in connection with the Closing;

(k)     Except as set forth in Section 6.11, all Liabilities for any and all Transfer Taxes due as a result of the transactions contemplated by this Agreement;

(l)     Subject to Section 6.13, all Liabilities for any and all Taxes of Seller for any period, including deferred Taxes and any other Taxes relating to the operation of the Business or the ownership of the Purchased Assets on or before the Closing Time, whether assessed prior to, or following, the Closing, and whether the amount is determined by audit, reassessment or otherwise;

(m)     All amounts payable pursuant to Section 365(b)(1)(A) or (B) of the Bankruptcy Code in order to effectuate, pursuant to the Bankruptcy Code, the assumption by Seller and assignment to Buyer of Assumed Real Property Leases under the Approval Order (the "Seller Cure Amounts");

(n)     All Liabilities of Seller to the Lenders;

(o)     All Liabilities of Seller in respect of any indebtedness for borrowed money, intercompany indebtedness or any notes provided by Seller;

(p)     All Liabilities of Seller arising out of guarantees or indemnities by Seller or any Affiliates of Seller;

(q)     All Professional Expenses;

(r)     All Liabilities for fraud, breach, misfeasance, negligence, strict liability in tort, injury to persons or property or under any other theory relating to the Business, the Purchased Assets or the conduct, performance or non-performance of Seller; and

(s)     All other Liabilities of Seller, the equity holders of Seller or any of their respective Affiliates.

Section 2.5     Changes in Lists of Assumed Real Property Leases, Assumed Equipment Leases and Assumed Contracts.

(a)     From time to time after the Initial Agreement Date and through and until March 11, 2010, Buyer may by Notice to Seller: (i) remove Contracts (the "Removed Contracts") from Schedule 2.1(g); (ii) remove Equipment Leases (the "Removed Equipment Leases") from Schedule 2.1(b); and (iii) remove Property Leases from Schedule 2.1(a) (the "Removed Real Property Leases"); provided, however, that notwithstanding the foregoing, from any time after the Initial Agreement Date and through and until the day prior to the Closing Date, Buyer may by Notice to Seller remove any of the following Property Leases from Schedule 2.1(a): (A) 55 Cross Point Pkwy, Amherst, NY 14068; (B) 1807 E. Greenville St, Anderson, SC 29621; (C) 11710 W. Charleston Blvd, Las Vegas, NV 89135; (D) 409 E Silverado Ranch Blvd, Las Vegas, NV 89123; (E) 7400 Las Vegas Blvd S., Las Vegas, NV 89183; (F) 7430 Las Vegas Blvd, Las Vegas, NV 89123; (G) 5073 Camp Rd, Hamburg, NY 14075; (H) 3501 Union Rd, Cheektowaga, NY 14225; (I) 520 N. Highway 25, Travelers Rest, SC 29690; (J) 1520 E. Main St, Duncan, SC 29334; and (K) 697 Fairview Rd, Simpsonville, SC 29680.

(b)     (i) Except as provided below, Buyer and Seller, by mutual agreement, may, as each may be necessary to the operation of the Business, add Contracts to the list of Assumed Contracts, add Property Leases to the list of Assumed Real Property Leases, add Equipment Leases to the list of Assumed Equipment Leases and add Intellectual Property to the list of Acquired Intellectual Property; and (ii) Buyer may, in its sole discretion, add to the list of Assumed Contracts, Assumed Real Property Leases, Assumed Equipment Leases and Acquired Intellectual Property any Contract, Property Lease, Equipment Lease or Intellectual Property, as the case may be, at any time if the existence and terms of such Contract, Property Lease, Equipment Lease or Intellectual Property were not disclosed in reasonable detail or specifically identified and made available to Buyer prior to the Initial Agreement Date and such Contract, Property Lease, Equipment Lease or Intellectual Property is necessary to the operation of the Business. If any Contract, Property Lease, Equipment Lease or Intellectual Property is added to the list of Assumed Contracts, Assumed Real Property Leases, Assumed Equipment Leases or Acquired Intellectual Property, as the case may be, pursuant to either (i) or (ii) of this Subsection (b), Seller shall take such steps as are reasonably necessary to cause such Contract, Property Lease, Equipment Lease or Intellectual Property to be assumed by, and assigned to, Buyer at Closing which, in the case of any

Contract, Property Lease, Equipment Lease or Intellectual Property added pursuant to (ii), above, shall include Buyer's payment of Buyer Cure Amounts relating to such Contract or Equipment Lease and Seller's payment of Seller Cure Amounts relating to such Property Lease.

## ARTICLE III

## CLOSING AND PURCHASE PRICE

Section 3.1    Closing; Transfer of Possession; Certain Deliveries.

(a)    Unless this Agreement shall have been terminated and the transactions herein contemplated shall have been abandoned pursuant to Article VIII hereof, the closing of the transactions contemplated herein (the "Closing") shall take place at 12:01 a.m. (eastern standard time) on April 1, 2010 unless otherwise extended by Buyer in its sole discretion (the "Closing Date"), subject to the satisfaction or waiver of the conditions set forth in Article VII hereof and conditions that, by their nature, are to be satisfied at the Closing. The Closing shall be held at the offices of Ropes & Gray LLP, One International Place, Boston, MA 02110-2624, unless otherwise mutually agreed to by the parties. The Closing shall be effective as of 12:01 a.m. (New York time) on the Closing Date (the "Closing Time").

(b)    At the Closing, the Seller shall deliver, or shall cause to be delivered, to Buyer the following:

(i)    a duly executed Bill of Sale and Assignment, substantially in the form of Exhibit A attached hereto, transferring the Purchased Assets (other than the Acquired Leased Properties and the Acquired Owned Properties) to Buyer;

(ii)    duly executed lease assumption and assignment agreements in recordable form, substantially in the form of Exhibit B hereto (the "Real Property Lease Assumption and Assignment Agreements"), separately for each Assumed Real Property Lease assigning each of the Assumed Real Property Leases to Buyer (or the applicable Buyer Real Estate Entity) together with such other transfer and recordation memoranda and forms and other statements, (including, without limitation, any applicable Transfer Tax or sales disclosures forms) relating to the transfer of the Assumed Real Property Leases pursuant to the terms hereof in the applicable jurisdiction;

(iii)    an Assumption Agreement, substantially in the form of Exhibit C hereto, duly executed by Seller;

(iv)    an incumbency and specimen signature certificate, dated as of the Closing Date, from Seller with respect to the officer or officers of Seller executing this Agreement and any other documents delivered hereunder by or on behalf of Seller;

(v)     a certificate of Seller, dated as of the Closing Date, signed by the highest ranking officer of Seller, certifying that conditions specified in Section 7.1(a) and Section 7.1(b) hereof have been fulfilled;

(vi)     a copy of the resolutions adopted by the Board of Directors of Seller authorizing the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated hereby, certified by the Secretary or an Assistant Secretary, or the Clerk or an Assistant Clerk, as the case may be, of Seller as of the Closing Date;

(vii)     the executed consents listed on Schedule 4.3 and Schedule 4.4 and all other instruments reasonably requested by Buyer of conveyance and transfer, in form and substance reasonably acceptable to Buyer, as are desirable or necessary to convey the Purchased Assets to Buyer; and

(viii)     a duly executed non foreign person affidavit of Seller dated as of the Closing Date, sworn under penalty of perjury and in form and substance required under the Treasury Regulations issued pursuant to Section 1445 of the Code, stating that Seller is not a "foreign person" as defined in Section 1445 of the Code;

(ix)     a duly executed title company ALTA affidavit and gap indemnity, and such other certifications and agreements, in each case in a form reasonably acceptable to Seller and reasonably required by the title company issuing Buyer's (or the applicable Buyer Real Estate Entity's) title insurance policies for the Acquired Owned Properties, together with any endorsements to said title insurance policies as Buyer and/or its lender may reasonable require;

(x)     duly executed special warranty deeds (or general or other warranty if customary for commercial real estate conveyancing in the jurisdiction of the applicable Acquired Owned Property) in proper form for recording in the applicable jurisdiction and otherwise in form and substance reasonably acceptable to Buyer (or a Buyer Real Estate Entity), pursuant to which the Seller transfers all of its respective rights, title and interest in and to each of the Acquired Owned Properties to Buyer (or, if the applicable Buyer Real Estate Entity) and sufficient to vest in Buyer (or the applicable Buyer Real Estate Entity) fee simple ownership of such Acquired Owned Property, along with such other transfer, recordation and deed intake forms and other statements, disclosures, documents and certifications reasonably and customarily required to convey real property in the jurisdiction in which the applicable Acquired Owned Property is located (including, without limitation, any applicable Transfer Tax or sales disclosures forms relating to the transfer of the Acquired Owned Property pursuant to the terms hereof); and

(xi)     such other closing instruments and certificates as may be reasonably requested by Buyer.

(c)     At the Closing, Buyer shall deliver, or shall cause to be delivered to Seller, the following:

(i)     a wire transfer of federal funds to the account or accounts designated by Seller (which account or accounts shall be designated at least two (2) Business Days prior to the Closing Date) in an amount equal to the Purchase Price;

(ii)     the Assumption Agreement, duly executed by Buyer;

(iii)     an incumbency and specimen signature certificate, dated as of the Closing Date, from Buyer with respect to the officer or officers of Buyer executing this Agreement and any other documents delivered hereunder by or on behalf of Buyer;

(iv)     a certificate of Buyer, dated as of the Closing Date, signed by the President or Chief Financial Officer of Buyer, certifying that conditions specified in Section 8.1(a) and Section 8.1(b) hereof have been fulfilled; and

(v)     such other closing instruments and certificates as may be reasonably requested by Seller.

Section 3.2     Calculation of Purchase Price; Adjustment for Released Locations.

(a)     The purchase price hereunder (the "Purchase Price") shall be an amount in cash equal to: (i) Three Million Five Hundred Thousand Dollars ($3,500,000), plus (ii) the amount of Register Cash as of the Closing as estimated in good faith by Buyer and Seller and less (iii) the Release Adjustment.  Buyer shall also pay Seller at the Closing an amount equal to the sum of (A) fifty percent (50%) of the aggregate amount of security deposits acquired by Buyer hereunder that relates to Assumed Leased Real Property assumed by Buyer at the Closing and (B) fifty percent (50%) of the Seller Cure Amounts that relate to Assumed Leased Real Property assumed by Buyer at the Closing, provided that the amount payable pursuant to this clause (B) shall not exceed the amount payable pursuant to the preceding clause (A).

(b)     The "Release Adjustment" shall be the aggregate sum of the Release Prices for each of the Released Locations, but shall in no event exceed $3,500,000.

Section 3.3     Allocation of Purchase Price.  Buyer shall prepare and deliver to Seller a schedule (the "Allocation Schedule") allocating the Purchase Price and the Assumed Liabilities (and all other capitalized costs) among the Purchased Assets in accordance with Section 1060 of the Code and any corresponding requirements of any state or local Tax Laws as soon as practicable after the Closing Time, and in no case later than forty-five (45) days before the due date, including available extensions, for filing any Tax Returns with respect to the Allocation Schedule.  Seller will have the right to raise reasonable objections to the Allocation Schedule within ten (10) days after their

receipt thereof, in which event Buyer and Seller will negotiate in good faith to resolve such objections. If Buyer and Seller cannot mutually resolve Seller's reasonable objections to the Allocation Schedule within ten (10) days after Buyer's receipt of such objections, such dispute with respect to the Allocation Schedule shall be presented to an independent accounting firm selected by Buyer (and acceptable to Seller, such consent not to be unreasonably withheld), on the next day for a decision that shall be rendered by such accounting firm within ten (10) days thereafter and shall be final and binding upon each of the parties. The fees, costs and expenses incurred in connection therewith shall be shared in equal amounts by Buyer, on the one hand, and Seller, on the other. Buyer and Seller each shall report and file all Tax Returns (including amended Tax Returns and claims for refund) and shall cooperate in the filing of any forms (including Internal Revenue Service Form 8594) consistent with the Allocation Schedule, and shall take no position contrary thereto or inconsistent therewith (including, without limitation, in any audits or examinations by any taxing authority or any other proceedings).

## ARTICLE IV

### REPRESENTATIONS AND WARRANTIES OF SELLER

Except as set forth in Seller's disclosure schedule delivered to Buyer concurrently herewith ("Seller's Disclosure Schedule"), Seller hereby represents and warrants to Buyer as follows (Seller's Disclosure Schedule shall be arranged in paragraphs corresponding to the section numbers contained in this Article IV, and the disclosure in any paragraph shall qualify only the corresponding section of this Article IV, unless the disclosure contained in such paragraph contains such information so as to enable a reasonable person to determine that such disclosure qualifies or otherwise applies to other sections of this Article IV):

Section 4.1    Organization and Good Standing.  Other than as a result of the Case of Seller, Seller (a) is an entity duly organized, validly existing and in good standing under the laws of its jurisdiction of organization, and (b) subject to any necessary authorizations from the Bankruptcy Court, has full corporate power and authority to own, lease and operate its properties, to perform all of its obligations under the Assumed Contracts, the Assumed Real Property Leases and the Assumed Equipment Leases and carry on the Business as it is now being conducted, except such jurisdictions where the failure to be so qualified or in good standing, individually or in the aggregate, would not have a Material Adverse Effect.

Section 4.2    Execution and Effect of Agreement.  Subject to obtaining Bankruptcy Court approval pursuant to the Approval Order, Seller has the requisite corporate power and authority to enter into this Agreement and to perform its obligations hereunder, and the execution and delivery of this Agreement by Seller and the consummation by Seller of the transactions contemplated hereby and the performance of Seller's obligations hereunder have been duly authorized by all necessary action on the part of Seller. This Agreement has been duly executed and delivered by Seller and (assuming the due and valid authorization, execution and delivery thereof by the other parties thereto), following the approval of this Agreement and the transactions

contemplated hereby by the Bankruptcy Court pursuant to the Approval Order, will constitute the legal, valid and binding obligation of Seller, enforceable against Seller in accordance with its terms.

Section 4.3    No Contravention. Except as set forth on Schedule 4.3, subject to obtaining the approval of the Bankruptcy Court pursuant to the Approval Order, neither the execution and delivery of this Agreement nor the consummation of the transactions contemplated hereby will (a) violate or conflict with any provision of Seller's certificate of formation or operating agreement (or similar organizational documents), (b) (with or without the giving of notice or the lapse of time or both) violate, or result in a breach of, or constitute a default under, or conflict with, or accelerate the performance required by, any of the terms of any Assumed Contract, Assumed Real Property Lease or Assumed Equipment Lease, (c) violate or conflict with any Order of any court, Governmental Entity or arbitrator, or any Law applicable to Seller, or (d) result in the creation of any Lien upon any of the Purchased Assets.

Section 4.4    Third Party Approvals. Except for (a) the Approval Order, (b) obtaining the approval of the Bankruptcy Court pursuant to the Approval Order, and (c) any other third-party approvals as are reflected on Schedule 4.4 hereto, the execution, delivery and performance by Seller of this Agreement and the transactions contemplated hereby do not require any consents, waivers, authorizations or approvals of, or filings with, any third Persons which will not be obtained by Seller prior to Closing.

Section 4.5    Subsidiaries. Seller has no Subsidiaries (other than the other entities included within the definition of "Seller") and does not own, directly or indirectly, any capital stock or subordinated debt of, or other equity interests in, any Person, or is a member of or participant in any Person.

Section 4.6    Title to Purchased Assets. Seller has, and at Closing will have, good and marketable title to each of the Purchased Assets, except for those Purchased Assets leased or licensed by Seller (including the Assumed Real Property Leases), as to which Seller has, and at the Closing will have, valid and unencumbered licensed or leasehold interests. Except as set forth on Schedule 4.6, the Purchased Assets and Excluded Assets constitute all of the assets used in, or necessary to conduct, the Business as presently conducted by Seller.

Section 4.7    Inventory. The Acquired Inventory is in good and merchantable condition and saleable in the ordinary course of business. The Acquired Inventory may be used and sold without infringement of proprietary interest or violation of applicable law or regulation.

Section 4.8    Compliance with Law. Seller (a) has complied with all Laws applicable to the Business and/or the Purchased Assets, in all material respects and (b) has complied, in all material respects, with any Order applicable to it.

Section 4.9    Governmental Permits.  Except for the Excluded Permits, Schedule 2.1(f) lists each Permit of Seller that is material to Seller's operation of the Business.

Section 4.10    Litigation.  Other than the Case and those Proceedings listed on Schedule 4.10, there are no Proceedings by any current or previous customer, supplier, Governmental Entity or other Person that is pending, or to the Knowledge of Seller, threatened, against Seller at law or in equity before any court, arbitrator or other Governmental Entity.

Section 4.11    Real Estate; Real Property Leases.

(a)    Schedule 2.1(a) lists each of the Assumed Real Property Leases in which Seller has an interest as tenant, subtenant, assignee thereof or otherwise for the Acquired Leased Properties and related to the Business.  True and complete copies of all such Assumed Real Property Leases have been delivered by Seller to Buyer, including all amendments, assignments, master leases, prime leases, subordination, nondisturbance and attornment agreements, estoppel certificates, and notices or memoranda of lease related thereto.  Seller has a valid leasehold interest in the Acquired Leased Properties, free and clear of any Liens on such leasehold interest other than Permitted Liens.  None of Seller or, to the Knowledge of Seller, the other parties to any such Property Leases is in default thereunder beyond any applicable cure or grace period, and all of such Assumed Real Property Leases have not been terminated and remain in full force and effect.  Upon entry of the Approval Order and payment of the Seller Cure Amounts and immediately after the consummation of the transaction contemplated by this Agreement (i) Seller will not be in breach or default of its obligations under the Assumed Real Property Leases, (ii) no conditions of Seller will exist that with notice or lapse of time or both would constitute a default under the Assumed Real Property Leases, and (iii) to the Knowledge of Seller, no other party to any Assumed Real Property Lease will be in material breach or material default under such leases.  No leasing commissions are owed by Seller with respect to such Assumed Real Property Leases.

(b)    Seller has not received any written notice of, nor does Seller have Knowledge of the following that would that affect the Acquired Leased Properties or the Acquired Owned Properties or the use thereof or access thereto: (i) condemnation or eminent domain proceedings pending or threatened, (ii) except for those disclosed on the commitments provided pursuant to Section 7.1(k) herein, there are no other material pending or proposed special or other assessments for public improvements related to the Acquired Owned Properties or that are payable by Seller pursuant to the Property Leases, or (iii) relocation of roadways that would restrict or eliminate reasonable access to and from any Acquired Leased Properties or any Acquired Owned Property.  Except where any the following violations would not, individually or in the aggregate, have a material adverse effect on Seller's ability to operate the Business at the Acquired Leased Property or the Acquired Owned Property that is the subject of such violation, Seller has not received any written notice of, and Seller does not have any Knowledge of, any zoning, ordinance, building, fire, access or health code or other legal violation affecting any Acquired Leased Properties or Acquired Owned Properties.  Seller has no Knowledge

that any material certifications, permits, licenses and approvals, including without limitation, certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Acquired Owned Properties and Acquired Leased Properties for the Business have not been obtained or are not in full force and effect.

(c)     As of the Closing no Assumed Real Property Lease shall have been rejected by Seller or deemed rejected under Section 365(d)(4) of the Bankruptcy Code.

(d)     Schedule 4.11(d) contains a complete and correct list of all Acquired Owned Property setting forth any common address and legal description reasonably required to identify such Acquired Owned Property. Seller has good and marketable fee simple title to the Acquired Owned Property, free and clear of any encumbrances other than Permitted Liens. None of Seller or, to the Knowledge of Seller, the other parties to any such Permitted Liens is in default thereunder. To Seller's Knowledge, the tax lots of the Acquired Owned Property do not include, in whole or in part, parcels which constitute land that is not a part of such Acquired Owned Property. Seller has heretofore made available to Buyer true, correct and complete copies of all contracts of sale, deeds and other conveyance agreements (including all modifications thereof and all amendments and supplements thereto) title policies and land/as-built surveys or plot plans with respect to the Acquired Owned Property that are in Seller's possession or control.

(e)     Except as set forth on Schedule 4.11(e), no Person other than Seller has, the right to access, enter upon, use, occupy, lease, manage, operate or maintain any portion of any Acquired Owned Properties or Seller's interest in any portion of any Acquired Leased Properties other than those Persons that are invitees, suppliers, customers, employees, contractors, agents, or guests of Seller. No Person other than Seller has the right to purchase or broker any portion of any Acquired Owned Property or Seller's interest in any portion of any Acquired Leased Property.

(f)     To Seller's Knowledge, there are no encroachments affecting any of the Acquired Owned Property or the Acquired Leased Property that would be revealed by an accurate survey or inspection thereof, which encroachments, facts or conditions would have, individually or in the aggregate, a material adverse effect on the ability of Seller to operate the Business in the ordinary course at the applicable Acquired Owned Property or Acquired Leased Property. None of the buildings and structures on such Acquired Owned Property or Acquired Leased Property encroaches, in any material respect, upon real property of another Person or upon the area of any easement affecting the applicable Acquired Owned Property or Acquired Leased Property.

Section 4.12   Contracts. Schedule 4.12(a) sets forth a true and complete list of all Material Contracts. Copies of all Material Contracts in effect as of the Initial Agreement Date in Seller's possession have been provided or made available to Buyer, and accurate and reasonably detailed descriptions of any Material Contracts in effect as of the Initial Agreement Date not in Seller's possession have been provided or made available to Buyer. All of the Assumed Contracts and Assumed Equipment Leases are in

full force and effect and constitute valid and binding agreements of Seller and the other parties thereto, enforceable in accordance with their respective terms, subject, as to enforceability against each such other party, to bankruptcy, moratorium or other insolvency laws and to equitable principles of general application (regardless if enforcement is sought at law or in equity). With respect to the Assumed Contracts and Assumed Equipment Leases, except as set forth in Schedule 4.12(b), upon entry of the Approval Order and payment of the Cure Amounts, (i) Seller will not be in breach or default of its obligations thereunder, (ii) to the Knowledge of Seller, no conditions will exist that with notice or lapse of time or both would constitute a default thereunder, and (iii) to the Knowledge of Seller, no other party to any of the Assumed Contracts will be in material breach or material default thereunder.

Section 4.13    Intellectual Property.  Seller has no Intellectual Property other than Intellectual Property that is licensed to Seller by the Buyer and its Affiliates and the Acquired Intellectual Property.

Section 4.14    Labor Matters.

(a)    Except as disclosed to Buyer and set forth on Schedule 4.14 hereto, Seller is not a party to any labor or collective bargaining agreement with respect to the employees working at the Acquired Leased Properties or Acquired Owned Properties. Except as disclosed to Buyer and set forth on Schedule 4.14 hereto, none of the Identified Employees is represented by a union or other labor organization and, to the Knowledge of Seller, there is not presently and has not been at any time during the preceding six months any union organizing activity or demand or petition for recognition by or on behalf of any union or other labor organization, with respect to any of the Identified Employees.

(b)    Prior to the Initial Agreement Date, Seller has not taken any action relating to employees presently or formerly employed at the Acquired Leased Properties or Acquired Owned Properties in the 90-day period prior to the Closing Time that would constitute a "mass layoff" or "plant closing" within the meaning of the WARN Act, or any similar state or local Law, or otherwise trigger notice requirements or liability under any local or state plant closing notice Law.

(c)    Seller has delivered to Buyer a true, complete and correct list, as of March 1, 2010, of each employee of Seller working at the Acquired Leased Properties and Acquired Owned Properties, together with each employee's (i) starting date of employment, (ii) job title, (iii) present hourly or, if salaried, annual compensation rate, (iv) location of employment, and a true, complete and correct list, as of March 1, 2010 with respect to such employees without reference to compensation rate.

Section 4.15    Brokers and Finders.  No broker, investment banker, financial advisor or other Person is entitled to any broker's, finder's, financial advisor's or other similar fee or commission from Buyer in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of any Seller Entity.

Section 4.16   No Material Adverse Effect; Ordinary Course. Other than the filing of the Case, since February 24, 2010, there has been no Material Adverse Effect, the Seller has conducted the Business only in the ordinary course and the Seller has not ceased the operation of any store, other than stores that constitute Excluded Assets hereunder.

Section 4.17   Affiliated Transactions. Except as set forth in Schedule 4.17, Seller is not a party to or bound by any Contract, commitment or understanding with any Affiliate, no Affiliate is an officer, director, employee, consultant, distributor, supplier or vendor to Seller, and no Affiliate owns or otherwise has any rights to or interest in any Purchased Assets.

Section 4.18   Environmental and Health and Safety Matters. Except as set forth in Schedule 4.18, (a) Seller and operation of the Business are and have been in compliance with rules and regulations set forth by the Occupational Health and Safety Administration ("OSHA") and are not and have not received state or OSHA citations for health and safety violations; (b) Seller and operation of the Business are and have been in compliance with all Environmental Laws; (c) there has been no release or threatened release of any pollutant, contaminant, petroleum product or any fraction thereof, or toxic or hazardous material, substance or waste (each a "Hazardous Substance") on, upon, into or from any Acquired Leased Property or Acquired Owned Property; (d) there are no asbestos-containing materials or lead paint present at any Acquired Leased Property or Acquired Owned Property; (e) there are no underground storage tanks located on, no polychlorinated biphenyls ("PCBs") or PCB-containing equipment used or stored on, and no hazardous waste as defined by the Resource Conservation and Recovery Act, as amended, stored on, any Acquired Leased Property or Acquired Owned Property; and (f) Seller has made available to Buyer true, correct and complete copies of all environmental records, reports, notifications, certificates of need, Permits, pending Permit applications, correspondence, engineering studies, and environmental studies or assessments.

Section 4.19   Transfer of Assets. Since February 24, 2010, no Seller has moved any Equipment or Inventory that is located at or relates to the Acquired Leased Properties or Acquired Owned Properties to Non-Acquired Real Property

## ARTICLE V

### REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby represents and warrants to Seller as follows:

Section 5.1   Organization and Good Standing. Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of its jurisdiction of formation, and has full corporate power and authority to own, lease and operate its properties and carry on its business as it is now being conducted. Buyer is a wholly-owned subsidiary of Dunkin' Brands, Inc.